**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Juno Turner
Michael N. Litrownik
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

RECEIVED
AUG 07 2013
U.S.D.C. S.D. N.Y.
CASHIERS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE KOELTL

JOHN CHEN, on behalf of himself and all
others similarly situated,

        Plaintiff,

        v.

MAJOR LEAGUE BASEBALL; MAJOR
LEAGUE BASEBALL PROPERTIES, INC.;
THE OFFICE OF THE COMMISSIONER OF
BASEBALL, d/b/a/ MAJOR LEAGUE
BASEBALL; and MAJOR LEAGUE
BASEBALL ENTERPRISES, INC.

        Defendants.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## 13  CV  5494

Plaintiff John Chen ("Plaintiff"), individually and as a class representative on behalf of

all others similarly situated, by his attorneys Outten & Golden LLP, makes the following

allegations against Defendants Major League Baseball; Major League Baseball Properties, Inc.;

The Office of the Commissioner of Baseball, d/b/a/ Major League Baseball; and Major League

Baseball Enterprises, Inc. (collectively, "MLB"):

### INTRODUCTION

1.      MLB staffed its 2013 All-Star FanFest ("FanFest"), a lucrative, for-profit

commercial operation that MLB promoted as "the largest interactive baseball theme park in the

world," and described as "baseball heaven on earth,"[1] almost entirely with "volunteers," and did not pay them any wages.

2.      Through its website, MLB recruited approximately 2000 volunteers to "represent New York by welcoming . . . guests [in other words, paying customers] from around the world and assisting in the smooth operations of all of the [All-Star] events."[2]

3.      Instead of paying them for their work, MLB, the world's preeminent professional baseball league with annual revenue of more than seven billion dollars, provided volunteers with "a shirt, a cap and a cinch drawstring backpack," free admission for the volunteer and one guest to FanFest, a water bottle, and a baseball.  MLB allowed volunteers to "wear sneakers during working hours and khaki shorts or pants."[3]

4.      Through this action, Plaintiff seeks to (1) force MLB to stop soliciting and accepting work from unpaid volunteers, (2) allow those who cannot afford to work for free to work at FanFest and other events related to the All-Star Game, and (3) recover unpaid wages for all unpaid volunteers who performed work for MLB during the relevant period.

5.      MLB's failure to pay its volunteers any wages violated federal and state minimum wage laws, which require employers to pay at least the minimum wage for all work that they "suffer or permit," and which exist to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of

---

[1]      See "*MLB FanFest Touted As 'Baseball Heaven on Earth,'*" CBS New York, July 10, 2013, available at http://newyork.cbslocal.com/2013/07/10/mlb-fanfest-touted-as-baseball-heaven-on-earth (last visited August 6, 2013).

[2]      See http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).

[3]      See http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).

workers."[4]

6.      By failing to pay Plaintiff and thousands of others for their productive work, MLB

denied federal, state, and local governments significant tax revenue and denied the volunteers

important benefits of working, including workers' compensation insurance, social security

contributions, and, most importantly, the ability to earn a fair day's wage for a fair day's work.

7.      MLB also excluded New Yorkers and many others who could not afford to work

for free.

8.      Unpaid private-sector jobs damage the labor market and are a detriment to

society.[5] As for-profit companies hire more unpaid workers, they hire fewer paid workers,

especially entry-level workers.[6] Reliance on unpaid labor leads to "an ideal system for

perpetuating and increasing inequality" among the economically advantaged and disadvantaged

jobseekers.[7]

9.      Unpaid jobs "depress[] wages by creating an oversupply of people willing to work

not just for low wages, but literally for nothing." They also "undermine the meritocracy that

---

[4]      *See* 29 U.S.C. § 202, 203(g); N.Y. Lab. Law § 2(7); *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, 2013 WL 2495140 (S.D.N.Y. June 11, 2013) (unpaid interns are "employees" and entitled to minimum wage under the Fair Labor Standards Act where they provide an immediate advantage to their employer performing low-level tasks that do not require specialized training and they receive nothing approximating the education they would receive in an academic setting).

[5]      *See, e.g.*, Ross Perlin, INTERN NATION: HOW TO EARN NOTHING AND LEARN LITTLE IN THE BRAVE NEW ECONOMY, Verso Publishers (2012).

[6]      *See* David L. Gregory, *The Problematic Employment Dynamics of Student Internships*, 12 Notre Dame J.L. Ethics & Pub. Pol'y 227, 242 (1998).

[7]      Daniel Akst, Op-Ed., *Unpaid Internships? File Under "Hypocrisy,"* L.A. Times, Jun. 15, 2010, at A15, available at http://articles.latimes.com/2010/jun/15/opinion/la-oe-akst-internships-20100615.

allocates jobs and rewards people for their skills and gumption."[8]

10.     MLB could have easily afforded to pay its FanFest workers.

11.     MLB charged adults $35.00 and children two years and older $30.00 to enter FanFest.[9]

12.     Upon entering FanFest, paying customers could purchase a small bag of potato chips for $5.00 and a cup of lemonade for $7.50.[10]

13.     Thousands of adults and children attended FanFest between July 12 and July 16, 2013, and, upon information and belief, spent hundreds of thousands of dollars there.

14.     Major League Baseball Properties' Corporate Sales & Marketing department solicited lucrative corporate sponsorships by claiming that "Baseball fans of all ages are expected to attend 2013 MLB All-Star FanFest, and your organization will have the ideal venue to leverage the most eagerly awaited fan experience of the summer."[11]

15.     Events during the five-day 2013 All-Star Weekend were sponsored by large corporations including T-Mobile, Taco Bell, SiriusXM, Gatorade, Majestic, Blockbuster, Kellogg's, Gillette, Head & Shoulders, One A Day, Firestone, Scotts, Chevy, Duane Reade, New Era, Budweiser, Party City, and Under Armour, among others.

16.     These corporate sponsorships earned MLB significant revenue.

17.     According to MLB, the 2013 All-Star Game and related events, including

---

[8]     *See* Ross Eisenbrey, Economic Policy Institute, http://www.epi.org/blog/unpaid-internships-scourge-labor-market/ (last visited August 6, 2013).
[9]     *See* http://mlb.mlb.com/mlb/downloads/y2013/fanfest_brochure.pdf (last visited August 6, 2013).
[10]     *See "All-Star Festival Fleeces Fans,"* New York Post, July 21, 2013, available at http://www.nypost.com/p/sports/more_sports/pay_to_play_U5lJnqtgFCPx9dvH2WJRyJ (last visited August 6, 2013).
[11]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/fanfest_sponsorship.jsp (last visited August 6, 2013).

FanFest, brought approximately $191.5 million into the New York City economy.[12]

18.     None of these millions of dollars, however, ended up in the pockets of the New Yorkers whom MLB recruited to provide the labor necessary to prepare for and run FanFest and other All-Star Game events.

19.     MLB used unpaid volunteers to assist with "hospitality, event logistics, community events, and transportation."[13]

20.     At FanFest, MLB used volunteers to operate the 40 attractions[14] that were "included with the price of admission."[15]

21.     Prior to FanFest, MLB required volunteers to attend an unpaid mandatory information session and an unpaid mandatory orientation session.

22.     In an email to Plaintiff and other volunteers, MLB told volunteers that they were "cordially invited to attend our mandatory orientation."

23.     If volunteers were unable to attend the unpaid mandatory orientation, they were not allowed to work at FanFest or other events.[16]

24.     MLB did not provide All-Star Game tickets to FanFest volunteers, although it gave its more than 2000 volunteers the chance to win *one pair* of All-Star Game tickets, but only

---

[12]     *See* http://minnesota.twins.mlb.com/news/article.jsp?ymd=20130730&content_id=55250430&vkey=news_min&c_id=min (last visited August 6, 2013).

[13]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).

[14]     *See* http://newyork.cbslocal.com/2013/07/10/mlb-fanfest-touted-as-baseball-heaven-on-earth/ (last visited August 6, 2013); http://mlb.mlb.com/mlb/downloads/y2013/fanfest_map.pdf (last visited August 6, 2013).

[15]     *See* http://mlb.mlb.com/mlb/downloads/y2013/fanfest_brochure.pdf (last visited August 6, 2013).

[16]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).

if they worked "three shifts at any of the All-Star events."[17]

25.     Instead, MLB also allowed volunteers the opportunity to "experience All-Star Week" at FanFest at times that they were "not required to work."[18]

26.     MLB refused to pay for volunteers' parking or transportation.[19]

27.     In addition to FanFest, MLB recruited volunteers to work at other All-Star Game-related events around New York City.[20]

28.     MLB also held its All-Star FanFest and related All-Star Game events in New York, New York in 2008 and staffed them with unpaid volunteers.[21]

29.     2008 volunteers were required to "attend at least one orientation session pertaining to the event(s) for which they were assigned to (sic.)."[22]

30.     The work that 2008 volunteers performed included work at the DHL All-Star FanFest, greeters, hospitality, office/clerical, information booth, event logistics and transportation."[23]

31.     MLB required volunteers at the 2008 FanFest to work "a minimum of three shifts

---

[17]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).
[18]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).
[19]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).
[20]     *See* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited August 6, 2013).
[21]     *See* http://newyork.yankees.mlb.com/nyy/fan_forum/asg/volunteers_form.jsp (last visited August 6, 2013).
[22]     *See* http://newyork.yankees.mlb.com/nyy/fan_forum/asg/volunteers_form.jsp (last visited August 6, 2013).
[23]     *See* http://newyork.yankees.mlb.com/nyy/fan_forum/asg/volunteers_form.jsp (last visited August 6, 2013).

(approximately 4 hours each)."[24]

32.   MLB held its All-Star Game and related events in Phoenix, Arizona in 2011,[25] and in Kansas City, Missouri in 2012.

33.   MLB staffed each of these All-Star FanFests and related events with unpaid volunteers.[26]

34.   MLB required all of its unpaid volunteers between 2008 and 2013 to pass background checks.

35.   MLB intends to repeat its unlawful practice by staffing future FanFests and related All-Star Game events with unpaid volunteers.

36.   MLB plans to hold its 2014 All-Star Game in Minneapolis, MN.

37.   Having identified a free workforce, MLB has invited 2013 unpaid volunteers to work for free at the 2014 All-Star events, including the 2014 All-Star FanFest.[27]

38.   Plaintiff brings this action on behalf of himself and those similarly situated who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy MLB's violations of the wage-and-hour provisions of the FLSA that have deprived Plaintiff and

---

[24]   *See* http://newyork.yankees.mlb.com/nyy/fan_forum/asg/volunteers_form.jsp (last visited August 6, 2013).
[25]   *See* http://mlb.mlb.com/mlb/events/all_star/y2011/fanfest_tickets.jsp (last visited August 6, 2013).
[26]   *See* http://newyork.yankees.mlb.com/nyy/fan_forum/asg/volunteers_form.jsp (2008, New York, NY) (last visited August 6, 2013); https://secure.mlb.com/mlb/events/all_star/y2011/volunteer_form.jsp (2012, Kansas City, MO) (last visited August 6, 2013).
[27]   *See* http://mlb.mlb.com/news/article.jsp?ymd=20130730&content_id=55250430&vkey=news_mlb&c_id=mlb (last visited August 6, 2013); http://mlb.mlb.com/min/ticketing/sth/gen/allstar_faq.jsp (last visited August 6, 2013).

others similarly situated of their lawfully earned wages.

39.     Plaintiff also brings individual and representative wage claims under the New York Labor Law Art. 6, §§ 190 *et seq.*, Art. 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, Part 142 *et seq.* (collectively, "NYLL") as a class action pursuant to Fed. R. Civ. P. 23.

## THE PARTIES

**Plaintiff John Chen**

40.     Plaintiff John Chen is an adult individual who resides in Rego Park, New York.

41.     Plaintiff worked for MLB at FanFest as an unpaid volunteer on June 1, 2013 and July 10, 12, 13, and 16, 2013.

42.     MLB did not pay Chen any wages.

43.     Chen is a covered employee within the meaning of the FLSA and the NYLL.

44.     Chen has consented to join this action by filing a written Consent to Join form, attached hereto as Exhibit A.

**Defendants**

45.     MLB is a single integrated enterprise that operates a professional baseball league.

46.     MLB employed Plaintiff and similarly situated volunteers.

47.     MLB consists of 30 teams that play in the American League and the National League as well as agent corporations including Major League Baseball Properties, Inc. and Major League Baseball Enterprises, Inc.

48.     Each year, MLB organizes and puts on an All-Star Game that includes the top players in each league.

49.     The All-Star Game is preceded by four days of events, including FanFest, staffed largely by unpaid volunteers.

50.     Events during the 2013 All-Star Weekend included the All-Star 5K & Fun Run, the All-Star Charity Concert, the Futures Game, the Legends & Celebrities Softball Game, the All-Star Workout Day, the Home Run Derby, and the All-Star FanFest at the Javits Center in Manhattan.

51.     Throughout the relevant period, MLB maintained control, oversight, and direction over Plaintiff and similarly situated employees, including with respect to hiring and other employment practices that applied to unpaid volunteers.

52.     The Office of the Commissioner of Baseball is an unincorporated association also doing business as Major League Baseball and has as its members the Major League Baseball Clubs.

53.     The All-Star Game and surrounding events, including FanFest, were under the supervision, control, and direction of the Commissioner of Baseball and MLB.

54.     MLB has applied the same employment policies, practices, and procedures, including hiring criteria and failure to pay wages, to all unpaid volunteers who work for MLB over All-Star Weekend.

55.     MLB is a covered employer within the meaning of the FLSA and the NYLL and, at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

56.     This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

57.     Plaintiff's state law claims are so closely related to Plaintiff's claims under the

Fair Labor Standards Act that they form part of the same case or controversy under Article III of the United States Constitution.

58.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

59.     Upon information and belief, there are more than 100 members of the proposed class in the aggregate.

60.     MLB is subject to personal jurisdiction in New York.

61.     MLB maintains an office at 245 Park Avenue, New York, New York.

62.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

63.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because MLB is subject to personal jurisdiction in the Southern District of New York and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring the Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all persons who have worked as unpaid volunteers for MLB in New York between August 7, 2007 and the date of final judgment in this matter (the "Volunteer Class"). The Volunteer Class includes all unpaid volunteers who worked at the 2008 FanFest and other 2008 All-Star Game events, the 2013 FanFest and other 2013 All-Star Game events, and all other MLB activities, including events run by the New York Yankees and the New York Mets since August 7, 2007.

65.     Excluded from the Volunteer Class are MLB, MLB's legal representatives,

officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in MLB; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Volunteer Class.

66.     The members of the Volunteer Class are so numerous that joinder of all members is impracticable.

67.     Upon information and belief, the size of the Volunteer Class is more than 2,000 individuals.

68.     MLB has acted or has refused to act on grounds generally applicable to the Volunteer Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

69.     Common questions of law and fact exist as to the Volunteer Class and predominate over any questions affecting only individual members of the Volunteer Class, and include, but are not limited to, the following:

(a)     Whether MLB has a policy or practice of failing to pay Plaintiff and the members of the Volunteer Class the minimum wage for all hours worked in violation of NYLL Art. 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, N.Y. Comp. Codes R. & Regs. tit. 12, § 142 *et seq.*, as alleged herein;

(b)     Whether MLB failed to comply with the notice and recordkeeping requirements of the NYLL;

(c)     Whether MLB's unlawful wage and hour policies or practices as alleged herein were instituted willfully or with reckless disregard for the law; and

(d)     The nature and extent of class-wide injury and the measure of damages for those injuries.

70.     Plaintiff's claims are typical of the claims of the Volunteer Class he seeks to represent.

71.     Plaintiff and all Volunteer Class members were subject to the same or similar compensation policies and practices of MLB.  Plaintiff and the Volunteer Class have all sustained similar types of damages as a result of MLB's failure to comply with the NYLL.

72.     Plaintiff will fairly and adequately represent and protect the interests of the Volunteer Class.  Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between the Plaintiff and members of the Volunteer Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Volunteer Class have been damaged and are entitled to recovery as a result of MLB's common and uniform policies, practices, and procedures and as a result of MLB's violation of the NYLL.  Although the relative damages suffered by individual Volunteer Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources to conduct a thorough examination of MLB's compensation practices and to prosecute vigorously a lawsuit against MLB to recover damages stemming from such practices.  In addition, class litigation is superior because it will prevent unduly duplicative litigation that might result in inconsistent judgments about MLB's practices.

74.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## COLLECTIVE ACTION ALLEGATIONS

75.     Plaintiff brings the First and Second Causes of Action, the FLSA claims, on behalf of himself and all persons who have worked as unpaid volunteers for MLB between August 7, 2010 and the date of final judgment in this matter (the "Volunteer Collective").

76.    MLB is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the members of the Volunteer Collective.  Upon information and belief, the Volunteer Collective consists of many similarly situated individuals who have not been paid at all by MLB in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.  Those similarly situated collective members are known to MLB, are readily identifiable, and can be located through MLB's records.  Notice should be sent to the members of the Volunteer Collective pursuant to 29 U.S.C. § 216(b).

## CLASS-WIDE FACTUAL ALLEGATIONS

77.    Plaintiff and the members of the Volunteer Class and Collective defined above (collectively, "Volunteer Class Members") have been victims of a common policy and plan perpetrated by MLB that has violated their rights under the FLSA and the NYLL by denying them minimum wages.

78.    MLB assigned Volunteer Class Members work that benefitted MLB.

79.    Volunteer Class Members received no educational benefits from their work form MLB.

80.    The work that Volunteer Class Members performed would have been performed by paid workers had MLB not solicited and accepted free labor from the Volunteer Class Members.

81.    At all times relevant, MLB's unlawful conduct, policies, and patterns or practices described in this Class Action Complaint have been willful.

82.    MLB has intentionally, willfully, and repeatedly harmed Plaintiff and the Volunteer Class Members by engaging in a pattern, practice, and/or policy of violating the FLSA

and/or the NYLL as described in this Class Action Complaint.

83. MLB has failed to pay wages for all hours worked to Plaintiff and the Volunteer Class Members.

84. MLB failed to pay Plaintiff and the Volunteer Class Members minimum wages for all hours worked.

85. MLB failed to keep accurate or adequate records of hours worked by Plaintiff and the Volunteer Class Members as required by the FLSA and the NYLL.

86. MLB's unlawful conduct described in this Class Action Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and maximizing profits by denying Plaintiff and the Volunteer Class Members compensation in violation of the FLSA and NYLL.

87. MLB's unlawful conduct has been widespread, repeated, and consistent.

88. MLB's unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the Volunteer Class Members.

89. MLB's deceptive conduct prevented Plaintiff and the Volunteer Class Members from discovering or asserting their claims any earlier than they did.

90. Among other duties, the Volunteer Class Members staffed the activities at FanFest that MLB's customers paid to attend. These activities included, but were not limited to: ALL-STAR CLUBHOUSE - Presented by Majestic (Visit the Clubhouse and feel like a Major Leaguer. See the official Majestic game uniforms of the 2013 MLB All-Stars and join us for Q&A sessions with MLB Legends and Hall of Fame players); ALL-STAR DUGOUT - Presented by Gatorade (Watch the events unfold on the Diamond from an All-Star's point of

view in the All-Star Dugout); ALL-STAR VIDEO GAME ZONE - Presented by Blockbuster

(Think you've got what it takes to be crowned king of the diamond?! Swing by the MLB 13®

The Show™ interactive and take a swing for a chance to play MLB 13® The Show™ on field

during the official Home Run Derby at Citi Field in New York); THE DIAMOND - Presented by

T-Mobile (Play on the mini Diamond and participate in baseball clinics hosted by coaches,

managers, MLB legends and current stars. Also, check out the daily MLB Mascot Home Run

Derby); FAMILY FIELD - Presented by Kellogg's (Take your picture on your own trading card,

participate in baseball training drills, and enjoy some Kellogg products in the snack zone);

FANFEST BATTING PRACTICE - Presented by Gillette and Head & Shoulders (Practice like

the pros, and test out your All-Star swing in these state-of-the-art batting cages); FANFEST

ENTERTAINMENT AREA (Stop by and enjoy daily themed entertainment including bands,

DJs, dance groups and more); FANFEST FIELDING PRACTICE - Presented by One A Day

(Grab a glove and get ready to field ground balls, fly balls and line drives with authentic Wilson

gloves at the fielding cages); FANFEST TIRE TRYOUT - Presented by Firestone (Strengthen

your big league bunting and throwing skills by aiming at Firestone tire targets); FAST RELIEF

PITCH (Step up to the pitcher's mound and test your arm strength while trying to throw your

fastest pitch); FIELDS OF PLAY - Presented by Scotts (Learn from Scotts experts about Major

League Baseball fields and maintenance of the greatest lawns in the game); HOME RUN

DERBY - Presented by Chevy (Ever dreamed of hitting one out of the park? Here's your chance

to step up to the plate and hit a home run over the T-Mobile All-Star FanFest outfield wall in

Home Run Derby style); HOMETOWN HEROES - Presented by Duane Reade (Visit a tribute to

baseball in New York. View a collection of memorabilia and artifacts from Mets' history. Stand

in an amazing life size team photo and give your best home team member pose);

INFORMATION CENTER (Upon entering T-Mobile All-Star FanFest, get information on all events and appearances and find out how to obtain Fast Pass Lane tickets and bracelets); LIVE RADIO AUTOGRAPH STAGES (Come and listen to your favorite local broadcasts, meet baseball Legends and obtain free autographs); MLB.COM (Watch daily live broadcasts of mlb.com on our incredible stage as broadcasters conduct live interview sessions with current and former players, coaches, managers and MLB executives); MLB NETWORK (Fans join MLB Network "on set" as part of the MLB Network photo experience); MINOR LEAGUE BASEBALL - Presented by New Era (View New Era caps from all 160 Minor League Baseball® clubs on the MLBASFF Minor League Cap Wall while locating the teams on the massive Map Wall); THE NEGRO LEAGUES - Presented by Budweiser (Learn about the incredible history of the Negro Leagues, and pay tribute to some of the game's finest and most noble players from the league including the great Jackie Robinson); POINTS OF SWEAT - Presented by Gatorade (Thirsty from testing your All-Star skills? Stop by and grab a drink at one of the many stations located around the show floor); ROOKIE LEAGUE - Presented by Party City (Younger fans can test their skills on tailgate toss, batting cages and throwing challenges. Also, our magical face painters and balloon twisters will be there to make the experience even more fun!); STEAL A BASE, STEAL A TACO - Presented by Taco Bell (Compete against your favorite MLB base runners and try to steal second base. Make sure you pick up your Taco Bell coupon after you win the race); UNDER ARMOUR PERFORMANCE CENTER (Test your skills like the pros on this mini Under Armour baseball diamond complete with workout stations including base running, fielding agility and vertical leap challenges); WORLD'S LARGEST BASEBALL (Come take a photo with the World's Largest Baseball signed by Ted Williams, Hank Aaron, Derek Jeter, Yogi Berra, Willie Mays and others).

91.    Volunteer Class Members performed similar unpaid work at the 2008, 2011, and 2012 FanFest and other All-Star Game activities.

92.    In order to participate in the 2013 FanFest, MLB required Volunteer Class Members to pass a Major League Baseball background check, which was processed by MLB, and attend an information session at Citi Field.

93.    MLB required Plaintiff and other Volunteer Class Members to attend mandatory orientation sessions.

94.    At the 2013 two-hour orientation session, Volunteer Class Members received their "Player Stat Sheets" that detailed their volunteer assignments and duties; received the "Volunteer Quick Reference Guide"; met their Team Captains; received their volunteer credentials; and trained for specific responsibilities of their assigned positions.

## PLAINTIFF'S FACTUAL ALLEGATIONS

95.    Consistent with its unlawful policies and practices, MLB subjected Plaintiff to unlawful conduct.

96.    As an unpaid volunteer, Plaintiff worked approximately 17 hours for MLB.

97.    MLB paid Plaintiff no wages.

98.    Plaintiff attended a mandatory one-hour information session at Citi Field on June 1, 2013.

99.    Plaintiff attended a mandatory two-hour orientation session at the Javits Center on July 10, 2013.

100.    Volunteers could be assigned to one of three shifts each day over the five-day All-Star Weekend: 8:00 a.m. to 1:00 p.m.; noon to 5:00 p.m.; or 4:00 p.m. to 8:00 p.m.

101.    Plaintiff worked three shifts at FanFest at the Javits Center in Manhattan.

102.    MLB required Plaintiff to report for his first shift on Friday, July 12, 2013 at 3:30 p.m. even though his shift started at 4:00 p.m.

103.    After requiring Plaintiff and other unpaid volunteers to sit and wait for approximately an hour, MLB gave Plaintiff his assignment and informed him of his responsibilities.

104.    From approximately 4:45 p.m. through 8:00 p.m. on July 12, 2013, Plaintiff stamped the wrists of FanFest customers after they had a signed a liability waiver at the Fast Pitch station.

105.    At Plaintiff's second volunteer shift, on Saturday, July 13, 2013, which began at 4:00 p.m. and ended at 8:00 p.m., Plaintiff performed three separate activities.

106.    Plaintiff handed bags of FanFest paraphernalia to customers at the FanFest entrance.

107.    Plaintiff also sat in a room placing paper flyers in bags.

108.    Plaintiff also stood at the FanFest entrance and redirected people if they attempted to exit FanFest through the entrance.

109.    Plaintiff's third volunteer shift began at 7:30 a.m. on Tuesday, July 16, 2013 and ended at 1:00 p.m.

110.    During Plaintiff's third shift, he alphabetized liability waivers signed by FanFest attendees.

111.    Plaintiff also worked at a fielding station, which consisted of five machines that shot soft baseballs at customers at different speeds and angles to test their fielding skills.

112.    Plaintiff was responsible for instructing customers to deposit the balls that they fielded into buckets before moving on to the next station.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the Volunteer Collective)**

113.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

114.   MLB has engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

115.   The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to MLB and protect Plaintiff and the members of the Volunteer Collective.

116.   At all relevant times, Plaintiff and the members of the Volunteer Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

117.   At all relevant times, Plaintiff and the members of the Volunteer Collective were employees of MLB within the meaning of 29 U.S.C. § 203(e).

118.   At all relevant times, MLB has been an enterprise engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

119.   At all relevant times, MLB employed Plaintiff and the members of the Volunteer Collective within the meaning of 29 U.S.C. § 203(g).

120.   MLB has engaged in a policy and/or practice of failing to pay Plaintiff and the Volunteer Collective the applicable minimum wage for all hours they suffered or permitted them to work.

121.    As a result of these minimum wage violations, Plaintiff and the members of the Volunteer Collective have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

122.    MLB's unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  MLB was aware or should have been aware that the practices described in this Class Action Complaint are unlawful.  MLB has not made a good-faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the Volunteer Collective.

123.    Because MLB's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

124.    Members of the Volunteer Collective are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consents to Join this action.  29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Recordkeeping Violations
### (Brought on behalf of Plaintiffs and the Volunteer Collective)

125.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

126.    MLB failed to make, keep, and preserve accurate records with respect to  Plaintiff and members of the Volunteer Collective, including hours worked each workday and total hours worked each workweek, as required by the FLSA, 29 U.S.C. § 211(c), and supporting federal regulations.

**THIRD CAUSE OF ACTION**
**New York Labor Law Article 19 – Minimum Wage**
**(Brought on behalf of Plaintiff and the Volunteer Class)**

127.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

128.    MLB failed to pay Plaintiff and the members of the Volunteer Class the minimum wages to which they are entitled under the NYLL.

129.    MLB has engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

130.    At all times relevant, Plaintiff and the members of the Volunteer Class have been employees and MLB has been an employer within the meaning of NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor Regulations.

131.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor regulations apply to MLB and protect Plaintiff and the members of the Volunteer Class.

132.    MLB was required to pay Plaintiff and the members of the Volunteer Class a minimum wage at a rate of (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; and (b) $7.25 per hour for all hours worked from July 24, 2009 through the present, under NYLL § 652 and the supporting New York State Department of Labor regulations.

133.    MLB failed to pay Plaintiff and the members of the Volunteer Class minimum hourly wages for all hours worked to which they are entitled under the NYLL and the supporting New York State Department of Labor regulations.

134.    By MLB's knowing or intentional failure to pay Plaintiff and the members of the

Volunteer Class minimum hourly wages for all of the hours they worked, MLB has willfully violated the NYLL Art. 19 §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

135.    Due to MLB's violations of the NYLL, Plaintiff and the members of the Volunteer Class are entitled to recover from MLB their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law Article 19 – Recordkeeping Violations
### (Brought on behalf of Plaintiff and the Volunteer Class)

136.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

137.    MLB failed to make, keep, and preserve accurate records with respect to Plaintiff and the Volunteer Class Members, including hours worked each workday and total hours worked each workweek, as required by NYLL § 661 and supporting regulations.

## FIFTH CAUSE OF ACTION
### New York Labor Law Article 6 – Notice and Recordkeeping Violations
### (Brought on behalf of Plaintiff and the Volunteer Class)

138.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

139.    MLB failed to make, keep, and preserve accurate records with respect to Plaintiff and the Volunteer Class Members, including hours worked each workday and total hours worked each workweek, as required by NYLL § 195(4) and supporting regulations.

140.    MLB failed to provide Plaintiff and the Volunteer Class Members a notice containing the rate or rates of pay and basis thereof, the regular pay day, and other information required by NYLL § 195(1)(a).

141.    MLB failed to provide Plaintiff and the Volunteer Class Members a statement with every payment of wages, as required by NYLL § 195(3).

142.    Due to MLB's violations of the NYLL, Plaintiff and the members of the Volunteer Class are entitled to recover from MLB statutory damages for each work week that each violation occurred, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to NYLL § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on his own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A.      That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the members of the Volunteer Collective, as defined above.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages and an additional and an equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.      Unpaid minimum wages pursuant to NYLL Art. 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, and an additional and equal amount as liquidated damages pursuant to NYLL § 663;

D.      Statutory damages for MLB's notice and recordkeeping violations pursuant to NYLL Art. 6, §§ 190 *et seq.*;

E.      Certification of the Volunteer Class set forth above pursuant to Rule 23 of the

Federal Rules of Civil Procedure;

      F.      Designation of Plaintiff as class representative of the Volunteer Class, designation of counsel of record as Class Counsel, and a reasonable incentive payment to Plaintiff;

      G.      Pre-judgment interest and post-judgment interest;

      H.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under NYLL Art. 6, §§ 190 *et seq*., NYLL Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations;

      I.      An injunction requiring MLB to pay all statutorily required wages pursuant to the NYLL and an order enjoining MLB from continuing or reinstating their unlawful policies and practices as described herein with respect to the Class and Collective set forth above;

      J.      Reasonable attorneys' fees and costs of the action;

      K.      Such other relief as this Court shall deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Class Action Complaint.

Dated: New York, New York
      August 7, 2013

                     Respectfully submitted,
                     **OUTTEN & GOLDEN LLP**

                     By:

                     Justin M. Swartz

                     **OUTTEN & GOLDEN LLP**
                     Justin M. Swartz

24

Juno Turner
Michael N. Litrownik
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
***Attorneys for Plaintiff and the Class***

# EXHIBIT A

**CONSENT TO JOIN LAWSUIT FILED UNDER THE FEDERAL**
**FAIR LABOR STANDARDS ACT**

X  I consent to become a party plaintiff in this lawsuit against Major League Baseball and related entities.

Print name:                                    Signature:

JOHN CHEN                              _John Ch____  8/2/13