PROSKAUER ROSE LLP
Elise M. Bloom
Mark W. Batten
Joshua S. Fox
Seth D. Kaufman
Eleven Times Square
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| JOHN CHEN, on behalf of himself and all others similarly situated, | : : : | Case No.:  13-CV-5494 (JGK) |
| Plaintiff, | : : : | **ECF Case** |
| v. | : : | **DEFENDANTS' MEMORANDUM** |
| MAJOR LEAGUE BASEBALL PROPERTIES, INC., and THE OFFICE OF THE COMMISSIONER OF BASEBALL, d/b/a MAJOR LEAGUE BASEBALL | : : : : | **OF LAW IN SUPPORT OF 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................i

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF RELEVANT FACTS .................................................................................2

LEGAL STANDARD...............................................................................................................5

ARGUMENT ............................................................................................................................6

    I.    Plaintiff Chen and the Volunteers He Seeks to Represent Are Not
        Employees Under the FLSA or the NYLL ...............................................................6

        A.    The Law Permits Individuals to Volunteer Their Services If They
               Had No Expectation of Receiving Wages .....................................................6

        B.    The Facts As Alleged in the Complaint and Documents Referenced
               Therein Indicate that Plaintiff and the Volunteers He Seeks to
               Represent Were Not Volunteers Because They Had No
               Expectation of Wages ...................................................................................9

    II.    The All-Star Week Events Are Exempt from the FLSA ..........................................13

        A.    The All-Star Week Events Are "Amusement or Recreational"....................14

        B.    The All-Star Week Events Constitute a Covered "Establishment" ..............15

        C.    The All-Star Week Events Did Not Operate for More Than Seven
               Months ........................................................................................................16

    CONCLUSION..............................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*Adams v. Detroit Tigers,*
  961 F. Supp. 176 (E.D. Mich. 1997) .......................................................................14, 15, 16

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ...............................................................................................................5

*Attanasio v. Cmty. Health Systems, Inc.,*
  No. 3:11-CV-582 (ARC), 2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) ................................5

*Beer v. Walbridge,*
  100 F. 465 (2d Cir. 1900) .......................................................................................................10

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................................................5

*Brennan v. Texas City Dike & Marina, Inc.,*
  492 F.2d 1115 (5th Cir. 1974) ................................................................................................14

*Cano v. DPNY, Inc.,*
  287 F.R.D. 251 (S.D.N.Y. 2012) ..............................................................................................7

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ......................................................................................................1

*Cleveland v. City of Elmendorf,*
  388 F.3d 522 (5th Cir. 2004) .....................................................................................................8

*Deluca v. AccessIT Group, Inc.,*
  695 F. Supp. 2d 54 (S.D.N.Y. 2010) .........................................................................................6

*Freeman v. Key Largo Volunteer Fire and Rescue Dep't, Inc.,*
  841 F. Supp. 2d 1274 (S.D. Fla. 2012) ......................................................................................5

*Hallissey v. AOL, Inc.,*
  No. 99-CIV-3785 (KTD), 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10,
  2006) .............................................................................................................................10, 11, 12

*Hart v. Rick's Cabaret Int'l Inc.,*
  No. 09 Civ 3043 (JGK), 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17,
  2010) .......................................................................................................................................5, 7

*Hill v. City of New York*,
   45 F.3d 653 (2d Cir. 1995)................................................................................2

*Holowecki v. Fed. Express Corp.*,
   440 F.3d 558 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008) ........................................1

*Jeffrey v. Sarasota White Sox, Inc.*,
   64 F.3d 590 (11th Cir. 1995) ................................................................14, 15, 17

*Le Hong Hung v. Lyder*,
   No. 04 Civ. 4679 (GBD), 2005 U.S. Dist. LEXIS 11832 (S.D.N.Y. June 14,
   2005) ................................................................................................................5

*Mann v. Falk*,
   523 Fed. App'x 549 (11th Cir. 2013) ................................................................14

*McLaughlin v. Lunde Truck Sales, Inc.*,
   714 F. Supp. 920 (N.D. Ill. 1989) ....................................................................16

*Okoro v. Pyramid 4 Aegis*,
   No. 11-C-267, 2012 U.S. Dist. LEXIS 56277 (E.D. Wis. Apr. 23, 2012) ............10

*Rodriguez v. Twp. of Holiday Lakes*,
   866 F. Supp. 1012 (S.D. Tex. 1994) ..................................................................8

*Rogers v. Schenkel*,
   162 F.2d 596, 598 (2d Cir. 1947)................................................................7, 8, 10

*Roman v. Maietta Constr., Inc.*,
   147 F.3d 71 (1st Cir. 1998)................................................................................8, 10

*Tasini v. AOL, Inc.*,
   851 F. Supp. 2d 734 (S.D.N.Y. 2012)................................................................11

*Tony and Susan Alamo Found. v. Sec'y of Labor*,
   471 U.S. 290 (1985) ................................................................................7, 8, 11, 13

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947)................................................................................................6

*Wang v. Hearst Corp.*,
   No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869 (S.D.N.Y. May 8, 2013)............6, 7

*Winfield v. Citibank, N.A.*,
   842 F. Supp. 2d 560 (S.D.N.Y. 2012)................................................................1

*Zamora v. Washington Home Servs., LLC*,
   No. 11-CV-00831, 2011 WL 6297941 (D. Md. Dec. 15, 2011)............................5

iii

## STATUTES AND OTHER AUTHORITIES

29 C.F.R. § 779.23 ....................................................................................15, 16

29 C.F.R. § 552.104 ....................................................................................8, 11

29 U.S.C. § 203(g) ..........................................................................................6

29 U.S.C. § 206(a) ..........................................................................................6

29 U.S.C. § 213(a)(3) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................1

H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ...................................14

N.Y. Lab. Law § 651(5)(o) .............................................................................7

The Office of the Commissioner of Baseball, d/b/a Major League Baseball ("Major League Baseball") and Major League Baseball Properties, Inc. ("MLB Properties" and collectively hereinafter "Defendants" or "MLB"), by its attorneys, Proskauer Rose LLP, move pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of the Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff John Chen elected to volunteer for a few hours on each of three days at 2013 All-Star FanFest (hereinafter "FanFest"). As he was promised and he agreed, in exchange for acting as a greeter, handing out paraphernalia, and similar tasks for a few hours on three days, Chen received free admission to the five-day event for himself and a friend; a polo shirt and cap; a baseball, water bottle, and backpack; and a chance to win tickets to the All-Star Game. He does not allege that he was coerced to provide services, that anyone misrepresented its offer to him, that he thought he would be paid, that he believed his volunteer activities would allow him to receive a paying job at MLB, or that he needed the work to support himself.

Although Chen knowingly volunteered to be a part of this festival, he now brings this action, alleging that he is entitled to be paid minimum wage pursuant to the Fair Labor Standards Act ("FLSA" or "Act") and the New York Labor Law ("NYLL") for those volunteer services. (Complaint (Dkt. No. 1) at ¶¶ 113-142.)[1] He seeks to represent a class of volunteers, including

---

[1] The facts discussed or referenced in this Motion are based on the allegations of the Complaint and documentary evidence referred to in or integral to the Complaint. *See Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012) ("[w]hen presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the documents referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken"); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

those for FanFest 2013 and for FanFest 2008, which also took place in New York.  (*Id.* at ¶¶ 77-94.)[2]  He also seeks to represent a putative collective of volunteers, including volunteers for FanFest 2011(held in Phoenix, Arizona), FanFest 2012 (held in Kansas City, Missouri) and FanFest 2013, in an FLSA collective action.  (*Id.* at ¶¶ 28, 32, 75-76.)

The Complaint fails as a matter of law.   Plaintiff Chen and the putative class and collective members were volunteers as a matter of law and, thus, the statutory protections of the FLSA and NYLL do not apply to them.  Even if Chen and the class were properly considered employees, which they are not, the All-Star Game events that engaged volunteers, including FanFest, are exempt from minimum wage requirements pursuant to Section 213(a)(3) of the FLSA, which exempts "amusement or recreational establishments."  The Court can resolve these issues based on the factual allegations and documents referenced in and attached to the Complaint – even if all taken as true.

## STATEMENT OF RELEVANT FACTS

For purposes of this Motion only, MLB accepts the allegations of the Complaint as true.  *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).

The "MLB All-Star Game," as described in the Complaint, is a game between the "top players in each league" that occurs during July of each year in a different city.  (Compl. at ¶ 48.)  Hosting the All-Star Game and related events provides each city an opportunity to heighten its profile and attract tourists to the area.  (*Id.* at ¶ 17 (noting that "the 2013 All-Star Game and related events, including FanFest brought approximately $191.5 million into the New York City

---

[2]      Plaintiff also seeks to include anyone who otherwise volunteered for MLB at an event held in New York between 2007 and the present.  MLB submits that there are no such volunteers aside from those who volunteered in conjunction with the All-Star Game in 2008 and 2013.

economy").)  As noted above, New York hosted the events in 2008 and 2013, while Phoenix,

Arizona and Kansas City, Missouri hosted in 2011 and 2012, respectively.  (*Id.* at ¶¶ 28, 32.)

For five days surrounding the All-Star Game, Major League Baseball, MLB Properties

and/or the local Club host related events,[3] including FanFest, described as an "interactive

baseball theme park" and "baseball heaven on earth."  *Id.* at ¶ 1.  MLB Properties encourages

local residents, as well as individuals from out of town, to volunteer at FanFest's events for their

personal enjoyment, as well as to encourage civic pride and welcome out of town guests.  (*Id.* at

¶¶ 2; *see also* Bloom Decl.[4] Ex. A (2013 FanFest FAQ Page) (noting that "the intent of the

volunteer program is to build local excitement and involvement for the All-Star Summer

experience").)

Plaintiff alleges that he volunteered at FanFest in 2013, held at the Jacob K. Javits Center

in New York.  (*Id.* at ¶¶ 95-112)  FanFest 2013 began on July 12, 2013 and ended on July 16,

2013, and included a number of events for fan amusement and recreation, including, among

other things:  player appearances and free autograph opportunities from baseball legends,

including members of the National Baseball Hall of Fame, batting cages, simulated fielding

practice, a station to measure the speed of the fan's pitch, and a station for the fans to create their

own baseball cards.  (*Id.* at ¶¶ 13, 90; *see also* Bloom Decl. Ex. B (2013 FanFest floor map)

(depicting a floor-map of FanFest with "[o]ver 450,000 square feet to hit, pitch, catch, shop, eat

---

[3]    According to the Complaint, events during the 2013 All-Star Weekend included the "All-Star 5K & Fun
Run, the All-Star Charity Concert, the Futures Game, the Legends & Celebrities Softball Game, the All-
Star Workout Day, the Home Run Derby, and the All-Star Fan Fest at the Javits Center in Manhattan."
(Compl. at ¶ 50.)  Plaintiff alleges that these events, including FanFest, were "staffed largely by unpaid
volunteers."  (*Id.* at ¶ 49.)

[4]    Several documents that Plaintiff cited to in the Complaint are attached to the Declaration of Elise M.
Bloom, dated November 4, 2013 (hereinafter "Bloom Decl.").

& live baseball!" and showing "40 attractions" in which fans were able to participate and in which volunteers were given the opportunity to assist).)

Plaintiff Chen decided to volunteer for FanFest in 2013.  (*Id.* at ¶ 40.)  Months before the event, Chen took several affirmative steps to secure a spot as a FanFest volunteer, including providing information for a background check, creating an online profile at MLB.com, attending a volunteer information session in late May/early June, and selecting the specific volunteer opportunities that best suited his interests and schedule.  (Bloom Decl. Ex. A.)  Chen knew that he would be donating his time as a volunteer and he would not be paid wages or otherwise compensated.  (*Id.*)  Chen and other prospective volunteers were provided the basic information regarding volunteering as part of the Frequently Asked Questions ("FAQ") page for FanFest 2013:  they would receive "a shirt, cap and cinch drawstring backpack," they would be asked to donate three shifts of their time, they would be given a volunteer credential that would give them access to FanFest at all times, along with a guest (entrance to which cost the public $35 per day), and they would have an opportunity to win a pair of tickets to the All-Star Game.  (*Id.* at ¶¶ 3, 24; *see also* Bloom Decl. Ex. A.)  In addition to the shirt, cap and backpack, FanFest volunteers were given a baseball and water bottle; the combined estimated retail value of the items Chen received – in addition to the free access to FanFest – was $115.  (*Id.* at ¶ 3.)  Plaintiff Chen donated 14 hours of his time at FanFest over the course of three days on Friday, July 12, Saturday, July 13 and Tuesday, July 16, 2013, and three other hours in orientation sessions.  (*Id.* at ¶¶ 96-99, 101.)  Chen does not allege any further contact or relationship with MLB Properties or Major League Baseball after his third day at FanFest.

## LEGAL STANDARD

Under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," and "blanket assertion[s] of entitlement to relief" are insufficient. *Id.* While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and are insufficient to defeat a motion to dismiss." *Le Hong Hung v. Lyder*, No. 04 Civ. 4679 (GBD), 2005 U.S. Dist. LEXIS 11832, at *2 (S.D.N.Y. June 14, 2005).

The pleading standards in *Twombly* and *Iqbal* apply in wage and hour cases like this one. *See, e.g., Freeman v. Key Largo Volunteer Fire and Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274 (S.D. Fla. 2012) (granting motion to dismiss FLSA claims on the basis that plaintiff was a volunteer and noting that the question of whether plaintiff was an employee or volunteer was a question of law); *Attanasio v. Cmty. Health Systems, Inc.*, No. 3:11-CV-582 (ARC), 2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) (dismissing FLSA claim where the plaintiffs failed to plead basic terms of primary employment relationship); *Zamora v. Washington Home Servs., LLC*, No. 11-CV-00831, 2011 WL 6297941 (D. Md. Dec. 15, 2011) (dismissing complaint where plaintiff "failed to state a cognizable claim that he is an employee for the purposes of the FLSA," and the "threadbare allegations" had no tendency to show that he was an employee rather than an independent contractor); *see also Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK) 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010) (applying *Iqbal* and *Twombly* standards to

5

FLSA and NYLL claims); *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010)

(dismissing NYLL claims based on the Complaint's allegations).

## ARGUMENT

I.  **Plaintiff Chen and the Volunteers He Seeks to Represent Are Not Employees Under the FLSA or the NYLL.**

Courts have held for more than 65 years that the provisions of the FLSA do not apply to a

volunteer "who, without promise or expectation of compensation, but solely for his personal

purpose or pleasure, worked in activities carried on by other persons either for their pleasure or

profit."  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).  The same is true under

the NYLL.  *See, e.g.*, *Wang v. Hearst Corp.*, No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869, at

*9, fn. 3 (S.D.N.Y. May 8, 2013) (applying the same analysis for whether unpaid interns are

employees under the FLSA and NYLL, which is derived from *Walling* ).  That is precisely what

Plaintiff Chen did here, as his own Complaint demonstrates.  The Complaint should be dismissed

as a matter of law.

A.  The Law Permits Individuals to Volunteer Their Services If They Had No
Expectation of Receiving Wages.

Chen's insistence that the law requires MLB to compensate casual volunteers like him

and anyone else whom employers "suffer or permit" to work ignores decades of settled law.  The

Supreme Court long ago recognized that while the FLSA requires that "employees" receive a set

minimum wage (29 U.S.C. § 206(a)) and defines "employ" as "to suffer or permit to work" (29

U.S.C. § 203(g)), "[t]he definition 'suffer or permit to work' was obviously not intended to

stamp all persons as employees who, ***without any express or implied compensation agreement,***

***might work for their own advantage on the premises of another***."  *Walling*, 330 U.S. at 152.

(emphasis added).

The same holds true under NYLL.[5]  "[S]ince the NYLL's definition of employment is nearly identical to the FLSA's[,] courts in this circuit have held that the New York Labor Law embodies the same standard for employment as the FLSA."  *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 n.2 (S.D.N.Y. 2012) (internal quotation and alterations omitted) (*quoting Greathouse v. JHS Security, Inc.*, No. 11 Civ. 7845, 2012 U.S. Dist. LEXIS 127312 (S.D.N.Y. Sept. 7, 2012); *see also Wang*, 2013 U.S. Dist. LEXIS 65869, at *9, fn. 3; *Hart*,  2010 U.S. 13729, at *7-8 (noting that "[c]ourts applying both the FLSA and the New York Labor Law have concluded that the standards by which a court determines whether an entity is an 'employer' under the FLSA also govern that determination under the New York labor law").  The analysis of Chen's employment status thus is the same under both federal and state law.

Shortly after *Walling*, the Second Circuit followed the Supreme Court's decision in the context of a volunteer at a for-profit company, finding that he was not an employee entitled to minimum wages.  *See Rogers v. Schenkel*, 162 F.2d 596, 598 (2d Cir. 1947) (holding that an individual who voluntarily provided his services for a for-profit plating company was not an employee under the FLSA because he had no expectation of receiving wages for the services rendered).

The Supreme Court has since reaffirmed the proposition in *Walling* that volunteers do not fall within the purview of the FLSA (which would also be applicable under the NYLL) if they had no expectation of receiving wages or the equivalent.  *See Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301-303 (1985) ("*Alamo*").  To resolve this question, the courts

---

[5]    Chen and the volunteers he seeks to represent are not employees under the NYLL because they had no expectation of receiving wages.  There is an additional statutory exemption that MLB submits is applicable here.  *See* New York Lab. L 651(5)(o).  MLB reserves its right to submit documentary evidence outside of the Complaint at a later date (if necessary) to support its position that the volunteers are also exempt under this statutory provision.

look at a variety of factors, including whether the activity was a less than full-time occupation and whether the volunteers were dependent upon the putative employer for a lengthy period of time, all of which indicate in the instant case that Chen and the others he seeks to represent were volunteers. *Id.* at 301, 302, fn. 25.   *See also Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 75 (1st Cir. 1998) (finding that an individual who donated his services at a race track as stock car crew chief during his spare time "for his personal enjoyment rather than the benefit of" the putative employer and who "considered himself a volunteer" was not entitled to wages).

The volunteer exemption applies regardless whether the putative employer is a for-profit or non-profit business.  As the Supreme Court squarely and simply held in *Alamo*: "An individual may work for a covered enterprise and nevertheless not be an 'employee.'"  471 U.S. at 299, 301-303 (determining plaintiffs' volunteer status based on whether they had an expectation of wages regardless of the putative employer's not-for-profit status); *see also Rogers*, 162 F.2d at 596-598 (holding that an individual who volunteered his services for a for-profit company was not an employee under the FLSA).

An individual's classification as an employee or volunteer under the FLSA or NYLL is a question of law.  *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  Applying the law to the facts as alleged in the Complaint, the Court should consider the volunteer definition "in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing the services and the entity for which the services are provided."  *Id.* at 528.[6]

---

[6]   *See also Rodriguez v. Twp. of Holiday Lakes*, 866 F. Supp. 1012, 1019 (S.D. Tex. 1994) (noting that 29 C.F.R. § 553.104(b) "clearly evidences an intent to limit that [volunteer] status to a common-sense understanding of individuals engaged in activities that all parties involved clearly understand to [be] performed on a volunteer basis").

Under the applicable standards, Chen and the putative class/collective members were volunteers as a matter of law under the FLSA and NYLL because they had no expectation of wages.

B.  The Facts As Alleged in the Complaint and Documents Referenced Therein Indicate that Plaintiff and the Volunteers He Seeks to Represent Were Not Volunteers Because They Had No Expectation of Wages.

The Complaint and the documents referenced therein demonstrate that Chen and the putative class/collective members participated in All-Star Week, including FanFest, for their own "personal purpose or pleasure," over a short period of time, fully understanding that they would not receive wages for their services nor a subsequent paying job with MLB.  They are not entitled to wages as a matter of law.  There is no basis to permit leave to amend; the problem with the Complaint is not that it omits important facts, but that the facts it includes demonstrate as a matter of law that the plaintiff is not entitled to relief.

The Complaint and the attached documents demonstrate the following:

- Plaintiff Chen and the All-Star volunteers he seeks to represent (collectively, the "volunteers") had no express or implied agreement to be paid wages for the services they rendered;

- The volunteers had no agreement for in-kind benefits that are equivalent to wages in exchange for the services they rendered; and

- The volunteers donated their time for a few hours on three days (from July 12-16, 2013), as determined by their availability and their choice of events in which they were interested.

*See* Bloom Decl. Ex. A (FAQ page providing basic information regarding the volunteer process to prospective volunteers and the general public, including the expectations of them, such as volunteering opportunities, scheduling, training and other requirements and referencing

9

"volunteer" or "volunteers" approximately 40 times);[7] *see also* Bloom Decl. Ex. C (FanFest brochure depicting the timeframe, location, activities and prices of those activities).

Viewing the parties' relationship from a "common sense" perspective, the volunteers chose to volunteer, even though they knew they would not be paid wages, for their own personal benefit. Perhaps they were intrigued by the free admission, or the commemorative gifts; perhaps they simply thought they would enjoy it. Whatever their motivation, the Complaint and the attached documents make clear that there was *no* expectation of wages or the equivalent. Chen and the other volunteers accordingly are not employees as a matter of law and the Complaint should be dismissed on this basis alone. *See, e.g., Rogers*, 162 F.2d at 596-598; *Roman*, 147 F.3d at 75 (finding no employment because plaintiff had no expectation of wages and volunteered for his own "personal enjoyment"); *Hallissey v. AOL, Inc.*, No. 99-CIV-3785 (KTD), 2006 U.S. Dist. LEXIS 12964, at *16 (S.D.N.Y. Mar. 10, 2006) (noting that an expectation of wages is "crucial" to the inquiry); *compare with Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 U.S. Dist. LEXIS 56277, at *16, 24 (E.D. Wis. Apr. 23, 2012) (finding that a volunteer should have been paid minimum wages because, at all times, plaintiff expected to be paid and she was thus not a true volunteer).

The Complaint and attached documents also demonstrate that the volunteers were informed that they would receive a shirt, cap and drawstring backpack, "free admission for the volunteer and one guest to FanFest, a water bottle, and a baseball." (Compl. at ¶ 3.) These nominal benefits do not amount to wages or the equivalent and, therefore, do not render the

---

[7]     In common parlance, a "volunteer" is "a person who does work without getting paid to do it." *See Merriam-Webster Dictionary*, available at www.merriam-webster.com/dictionary/volunteer. *See Beer v. Walbridge*, 100 F. 465, 466 (2d Cir. 1900) ("The courts will take judicial notice of facts which are within common knowledge…and may refer to the dictionaries and encyclopedias for information when necessary to go outside the record.")

volunteers employees.  Comparing the benefits provided to the volunteers in *Alamo* and *Hallissey* confirms MLB's position.  In *Alamo*, in lieu of cash payments for their services as operators of the religious foundation's commercial operations, the plaintiffs were provided "rehabilitation and…food, clothing and shelter" from the foundation, and the Court held that because these types of benefits are "customarily furnished by the employer to the employees," they fell under the FLSA's definition of "wage," warranting a finding that the plaintiff were in fact employees.  471 U.S. at 301, fn. 23.

In *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *5, the court distinguished those items in *Alamo* from the nominal benefits provided to AOL "community leader" volunteers, such as free AOL access, compact disc cases, discounts, web pages and software, noting that "[n]ot all benefits render the recipients [sic] employees" and that courts should focus on the purpose of the parties' relationship.[8]  Similarly, the Code of Federal Regulations also provides that "[a]n individual may receive reimbursement for expenses, *reasonable benefits* and nominal fees without compromising his status as a volunteer receiving no compensation."  *See* 29 C.F.R. § 552.104(a) (emphasis added).  Since a shirt, drawstring backpack, cap, baseball, water bottle and FanFest tickets are not items "customarily furnished by the employer to the employees," the volunteers had no expectation of wages or the equivalent and they should not be classified as employees entitled to wages under the FLSA or NYLL.

---

[8]      This Court addressed a tangentially related claim by former volunteers involving America Online, Inc. when former unpaid Huffington Post bloggers sued AOL, Inc., et al., for unjust enrichment after AOL's purchase of The Huffington Post for $315 million.  Central to the unpaid bloggers' claims was whether they had an expectation of monetary compensation, which is an element for unjust enrichment.  In dismissing the complaint, this Court noted that "[t]here is no question that the plaintiffs submitted their materials to The Huffington Post with no expectation of monetary compensation and that they got what they paid for – exposure in The Huffington Post."  *See Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 740 (S.D.N.Y. 2012).  The same argument applies here.  The volunteers understood that they would not be paid for their services and essentially "got what they paid for" – namely, the opportunity to exercise civic pride by representing the city and participating in All-Star Week, including free entrance to FanFest.

Moreover, the facts, as alleged in the Complaint and attached documents, also demonstrate that Chen and the volunteers he seeks to represent had no expectation of a subsequent paying job from MLB Properties or Major League Baseball, which reinforces the notion that they had no implied expectation of wages.  Indeed, the Complaint and the documents referenced therein make clear that MLB Properties and/or Major League Baseball engaged volunteers as part of All-Star Week in different cities depending on the location of the All-Star Game.  The event took place in New York in 2008 and 2013; Phoenix, Arizona in 2011; Kansas City, Missouri in 2012; and is scheduled to occur in Minneapolis, Minnesota in 2014.  (Compl. at ¶¶ 28, 32, 36-37.)  The FAQ page for the 2013 All-Star Game and related events, including FanFest, stated that volunteers would only be asked to participate for "three shifts/days" and the "shifts are determined by [the volunteers'] availability for specific days."  (Bloom Decl. Ex. B.)  *Compare Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *19 (the plaintiffs "claim[ed] to have volunteered substantial hours in order to obtain a full-time, paid position with AOL" and "contend[ed] that 'volunteering' for AOL became an unwritten prerequisite for obtaining a paid position with AOL").

Finally, the extremely brief period of time that Chen and the others volunteered confirms the lack of any economic dependence that is the hallmark of employment.  Chen volunteered for only 14 hours over the course of three shifts, attended a one-hour information session and a two-hour orientation session, for a total of 17 hours.  (Compl. at ¶¶ 96-98.)  The same is true for the other volunteers.  (*Id.* at ¶ 100.)  They could not have been surprised by the brevity of their experience; the FanFest brochure and the FAQ page provided the volunteering dates at the very top, making the brief engagement period abundantly clear to prospective volunteers.  (Bloom Decl. Exs. A, C.)  Thus, the parties had no relationship of any meaningful length nor any

reasonable expectation of one.  The facts in this case, therefore, are similar to *Walling,* in which "the training course lasted a little over a week."  *Compare Alamo*, 471 U.S. at 301 (finding an employment relationship because plaintiffs were "entirely dependent upon the Foundation for long periods, in some cases several years").

Thus, under *Walling*, *Rogers*, *Alamo*, and their progeny, Chen and the volunteers he seeks to represent were not employees under the FLSA or NYLL as a matter of law.  The Complaint should be dismissed with prejudice.

## II.    **The All-Star Week Events Are Exempt from the FLSA.**

Even if MLB had hired employees rather than volunteers, its All-Star Week events, including FanFest, are exempt from the minimum wage requirements of the FLSA pursuant to 29 U.S.C. § 213(a)(3), which exempts seasonal amusement establishments.  That exemption excludes from FLSA coverage those who are "employed by an establishment which is an amusement or recreational establishment" if *either* of the following is true:  (A) the establishment does not operate for more than seven months in any calendar year; *or* (B) during the preceding calendar year, the establishment's average receipts for any six months of such year are less than one-third of the average receipts in the other six months of the year (which is known as the "receipts test").[9]  29 U.S.C. § 213(a)(3)(A)-(B).  The allegations of the Complaint and documents referenced therein squarely raise the exemption for the Court's consideration now and based on those facts, as alleged, the All-Star Week events meet the FLSA exemption as a matter of law.

---

[9]    Because the Complaint undisputedly demonstrates that the All-Star Week events satisfy the seven-month test under 29 U.S.C. § 213 (a)(3)(A), MLB reserves for a later date the right to argue that it is also exempt under the "receipts test."

A.  The All-Star Week Events Are "Amusement or Recreational."

Professional sports events are "amusement or recreational establishments" under the

FLSA.  *See Adams v. Detroit Tigers*, 961 F. Supp. 176, 179 (E.D. Mich. 1997) (noting that

"Major[ L]eague [B]aseball teams may properly be considered 'recreational' establishments, or

establishments designed for 'amusement'"); *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590

(11th Cir. 1995) (finding that a Minor League Baseball team is "an amusement and recreational

establishment" because "[s]ports events are among those types of recreational activities

specifically considered by Congress to be covered by the exemption"); *see also Brennan v. Texas

City Dike & Marina, Inc.*, 492 F.2d 1115, 1118 (5th Cir. 1974) (noting that Section 213(a)(3) has

historically covered "amusement or recreational" events, such as amusement parks, baseball

parks, racetracks, dog tracks, and summer camps, and listing the following as exempt activities:

"amusement parks, carnivals, circuses, *sports events*, pari-mutuel racing, sport boating or

fishing") (*citing* H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) (emphasis added)).  FanFest

and the remainder of the All-Star Week events thus are "sports events" that fall squarely under

the statutory definition.

Chen himself alleges that MLB promoted FanFest at the Javits Center as "the largest

interactive baseball theme park in the world," which clearly fits into the definition of an

amusement park or sporting event as described in the exemption.  (Compl. at ¶ 1.)  Chen's

allegations also include the floor plan for FanFest 2013, which depicts the event as including

dozens of amusement attractions confined to a distinct physical location.  (Bloom Decl. Ex. B.)

Each All-Star Week event is akin to those that take place at "amusement parks, carnivals,

circuses, [and] sport parks," all of which have been accepted as exempt under Section 213(a)(3).

*See Mann v. Falk*, 523 Fed. App'x 549, 552 (11th Cir. 2013) (*citing Brennan v. Texas City Dike*

14

*& Marina, Inc.*, 492 F.2d 1115 (5th Cir. 1974) (noting that "it is clear that a baseball team and a

racetrack [are 'amusement or recreational establishments' because they] derive their income

from the recreation that they provide" and "our precedents establish that the business of a

recreational establishment is to provide amusement or entertainment for its customers"); *see also*

*Jeffrey*, 64 F.3d at 595 (finding a Minor League Baseball team meets the exemption).

### B.   The All-Star Week Events Constitute a Covered "Establishment."

The Department of Labor's regulations on the seasonal exemption explain that an

"establishment … refers to a 'distinct physical place of business' rather than to 'an entire

business or enterprise.'"  29 C.F.R. §§ 779.23; 779.303. [10]

Thus, in a multi-unit business or enterprise, each physically separate place of business

must be considered a separate establishment.  *See*, *e.g.*, *Adams*, 961 F. Supp. at 178 (holding that

the "establishment was Tiger Stadium and not the Tigers' organization as a whole").  However,

even if the Court broadened the "establishment" to include all of the All-Star Week events (the

only other events in which Plaintiff alleged MLB engaged volunteers), the "establishment" so

defined also is clearly covered by the statutory exemption.

The Complaint makes clear that FanFest (or FanFest and the related All-Star Week

events) is its own "establishment" within the business or enterprise of MLB.  FanFest and the

related All-Star Week events operate at new physical and functionally distinct locations in

different cities each year.  (Compl. at ¶¶ 28, 32, 33.)  In addition, the Complaint and the attached

---

[10]     The All-Star Week events, including FanFest qualify as "amusement or recreational establishments," even
though MLB Properties (or Major League Baseball) does not own the real property in which the events
operate.  *See Jeffrey*, 64 F.3d at 595; H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ("[l]essees or
independent contractors, such as concessionaires, and inherently mobile establishments, such as carnivals
and cruises, none of which would be expected to own the real property upon which they operate, were
clearly contemplated by Congress as being covered by the exemption").

documents illustrate that FanFest and the related All-Star Week events are always physically located at a separate location from MLB's corporate offices and serve a separate and distinct function from MLB's principal operations.  *Id.*; *see also* Compl. at ¶¶ 50, 61 (noting that the FanFest took place at the Jacob K. Javits Center in Manhattan in 2013 and MLB's main corporate offices are located at 245 Park Avenue in Manhattan); *see also* Bloom Decl. Ex. B (citing to a map of FanFest showing the physical lay-out of the "amusement establishment" that features 33 events, including several baseball diamonds, stores, exhibits, autograph stations, among many others).

As the foregoing establishes, FanFest and the related All-Star Week events in relation to MLB, as a whole, fall squarely within the purview of the seasonal amusement exemption.   29 C.F.R. § 779.23; 779.303; *see e.g.*, *Adams*, 961 F. Supp. at 178; *see also McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, 926 (N.D. Ill. 1989) (finding that certain facilities operated as distinct physical places of business and thus were "separate 'establishments' for purposes of FLSA liability," and noting that the Code of Federal Regulations make clear that an "enterprise…may be composed of a number of establishments").

C.   The All-Star Week Events Did Not Operate for More Than Seven Months.

For an "establishment" to be exempt under Section 213(a)(3)(A), it must not operate for more than seven months in any calendar year.  Based on the plain allegations of the Complaint, the All-Star Week events, including FanFest, unquestionably satisfy this statutory requirement.

FanFest 2013 operated for a five-day period with an informational meeting and a one-time training session for volunteers in the six weeks before the event, and the Complaint does not

allege that any other FanFest operated differently.  (Compl. at ¶¶ 13, 29, 33, 49, 98, 99.)  Each All-Star Week event operated during the same timeframe.  (*Id.* at ¶ 49.)

The Eleventh Circuit's analysis of this issue in *Jeffrey v. White Sox* supports dismissal of the Complaint.  There, the court held that the White Sox Minor League team met the exemption because it did not operate for more than seven months in 1989 and 1990 with respect to a suit brought by a groundskeeper for unpaid overtime.  64 F.3d at 590.  The court noted that the White Sox operated at the baseball complex from March through August (approximately five months) during those years.  *Id.* at 596.  In finding that the "establishment" operated for only five months, the court rejected the relevance of the fact that the plaintiff groundskeeper – hired to maintain the field's conditions – was employed in the off-season months relative to the preparation and maintenance of the baseball fields because "the focus [on the exemption] is the length of the [d]efendant's seasonal operation," which was its exhibition of baseball games and occurred during the aforementioned five month period.  *Id.*  Section 213(a)(3) "does not require Defendant to completely shut down or to terminate every employee at the end of each baseball season."  *Id.*

As in *Jeffrey*, the amusement establishment for purposes of the exemption is MLB Properties' exhibition of All-Star-related fan activities in which it engages volunteers, including FanFest, and which operates during an extremely finite, seasonal timeframe – a portion of July of each year.  Thus, the All-Star Week activities, including FanFest, are well within the seven-month timeframe required by Section 213(a)(3).

Based on the factual allegations of the Complaint and the attached documents, the FLSA claims should be dismissed because the All-Star Week events, including FanFest, squarely fall within the Section 213(a)(3) exemption.

## <u>CONCLUSION</u>

For the reasons articulated herein, MLB respectfully requests that the Court dismiss Chen's claims in their entirety.

Dated:   November 4, 2013
       New York, New York

              PROSKAUER ROSE LLP

           By:  <u>*s/ Elise M. Bloom*</u>
              Elise M. Bloom
              Mark W. Batten
              Joshua S. Fox
              Seth D. Kaufman
              Eleven Times Square
              New York, New York 10036
              (212) 969-3000
              *Attorneys for Defendants.*