UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN CHEN, on behalf of himself and all others : 
similarly situated, :            Case No.:  13-CV-5494 (JGK)
                                 :
              Plaintiff,         :
                                 :
     v.                          :            **ECF Case**
                                 :
MAJOR LEAGUE BASEBALL PROPERTIES, :
INC., and THE OFFICE OF THE      :
COMMISSIONER OF BASEBALL, d/b/a  :
MAJOR LEAGUE BASEBALL            :
                                 :
              Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### DEFENDANTS' OPPOSITION
### TO PLAINTIFF'S MOTION FOR COURT-AUTHORIZED NOTICE

PROSKAUER ROSE LLP
Elise M. Bloom
Mark W. Batten
Seth D. Kaufman
Eleven Times Square
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
mbatten@proskauer.com
*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………………iii

INTRODUCTION…………………………………………………………………………1

STATEMENT OF FACTS…………………………………………………………………2

ARGUMENT………………………………………………………………………………7

    A.   The Class Cannot Be Certified and Notice Should Not Be Issued Because Plaintiff
        Challenges Only A Facially Lawful Policy of Not Paying Wages to Volunteers………..8

      1.   Conditional Certification Requires A Showing Of A Common Unlawful Policy……..8

      2.   Defendants' Use Of Volunteers During All-Star Week Is Lawful On Its Face
          Because Plaintiff And Other All-Star Week Volunteers Are Not Covered
          "Employees" Under The Act…………………………………………………………..10

    B.   Notice Must Be Denied Because, In The Face Of A Lawful Policy, Plaintiff Cannot
        Show He Is Similarly Situated To Other Volunteers…………………………………..12

    C.   Even If Plaintiff and Other All-Star Week Volunteers Qualified as "Employees" Under
        The Act, Notice Still Must Be Denied Because All-Star Week Events Are Exempt From
        Minimum Wage Requirements…………………………………………………….....14

    D.   Conditional Certification Would Be Futile, As Putative Plaintiffs Would Be Unable To
        Sustain Certification After Discovery…………………………………………………16

CONCLUSION……………………………………………………………………………..19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adair v. Wisconsin Bell, Inc.*,
No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)................................................8

*Adams v. Detroit Tigers, Inc.*,
961 F. Supp. 176 (E.D. Mich. 1997).......................................................................................15

*Amador v. Morgan Stanley & Co. LLC*,
No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ...............................................13

*Amendola v. Bristol-Myers Squibb Co.*,
558 F. Supp. 2d 459 (S.D.N.Y. 2008)......................................................................................8

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
772 F. Supp. 2d 1111 (N.D. Cal. 2011) ...................................................................................9

*Brechler v. Qwest Commc'ns Intl.*,
No. cv.-06-00940, 2009 WL 692329 (D. Ariz. 2009) .............................................................9

*Brennan v. Texas City Dike & Marina, Inc.*,
492 F.2d 1115 (5th Cir. 1974) ...............................................................................................15

*Brickey v. Dolgencorp., Inc.*,
272 F.R.D. 344 (W.D.N.Y. 2011).......................................................................................9, 10

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
595 F. Supp. 2d 200 (N.D.N.Y. 2009)......................................................................................8

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ...........................................................................................13

*Eng-Hatcher v. Sprint Nextel Corp.*,
No. 07-civ-7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) .......................................9, 12

*Evancho v. Sanofi-Aventis U.S. Inc.*,
No. 07-2266, 2007 WL 4546100 (D. N.J. Dec. 19, 2007).....................................................12

*Ferreira v. Modell's Sporting Goods, Inc.*,
No. 11 Civ. 2395, 2012 WL 2952922 (S.D.N.Y. July 16, 2012) ...........................................13

*Guillen v. Marshalls of MA, Inc.*,
841 F. Supp. 2d 797 (S.D.N.Y. 2012).......................................................................................8

*Hallissey v. Am. Online, Inc.*,
No. 99-Civ-3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10, 2006).............11, 16, 18

*Hoffman-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989)..................................................................................................7

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997).........................................................................7

*Indergit v. Rite Aid Corp.*,
  2010 WL 2465488 (S.D.N.Y. 2010).....................................................................13

*Ivanov v. Sunset Pools Mgmt. Inc.*,
  567 F. Supp. 2d 189 (D.D.C. 2008)......................................................................15

*Jeffery v. Sarasota White Sox, Inc.*,
  64 F.3d 590 (11th Cir. 1995) ..........................................................................14, 15

*Jenkins v. TJX Companies Inc.*,
  853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...........................................................9, 10, 11

*Laroque v. Domino's Pizza LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ...............................................................7, 17

*Mann v. Falk*,
  523 F. App'x 549 (11th Cir. 2013) .......................................................................15

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)...................................................................................8

*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ............................................................................13

*Myers v. Hertz Corp.*,
  624 F. 3d 537 (2d Cir. 2010).............................................................................7, 8

*Okoro v. Pyramid 4 Aegis*,
  No. 11-C-267, 2012 WL 1410025 (E.D. Wisc. April 23, 2012) ......................10, 11

*Pefanis v. Westway Diner, Inc.*,
  No. 08-cv-002, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) ..................................8

*Proctor v. Allsups Convenience Stores, Inc.*,
  250 F.R.D. 278 (N.D. Tex. 2008) ...........................................................................9

*Roman v. Maietta Constr., Inc.*,
  147 F.3d 71 (1st Cir. 1998)...........................................................................11, 16

*Romero v. H.B. Auto. Group, Inc.*,
  No. 11-cv-386, 2012 WL 1514810 (S.D.N.Y. May 1, 2010) ..............................7, 8

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y.2007 ............................................................................12

*Simmons v. T–Mobile USA, Inc.*,
    No. H-06-1B20, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007) .................................12

*Tony and Susan Alamo Found. v. Secretary of Labor*,
    471 U.S. 290 (1985) ("*Alamo*") ............................................................10, 16, 17

*Vengurlekar v. Silverline Technologies, Inc.*,
    220 F.R.D. 222 (S.D.N.Y. 2003) ................................................................................12

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947) ..............................................................................................10, 16

*Winfield v. Citibank, N.A.*,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) (Koetl, J.) .................................9, 12, 13, 14

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ................................................................17, 18

## STATUTES

29 U.S.C. §§ 203(e)(1) ........................................................................................................10

29 U.S.C. § 206(a) ..............................................................................................................10

29 U.S.C. § 213(a)(3) ...................................................................................................14, 15

29 U.S.C. § 216(b) ................................................................................................................7

FLSA .......................................................................................................................... passim

## OTHER AUTHORITIES

29 C.F.R. § 779.303 ............................................................................................................14

## INTRODUCTION

Plaintiff John Chen's motion, which asks this Court conditionally to certify this case as a class action, rests on two faulty contentions. His sweeping claim that "private companies may not accept free 'volunteer' labor" demonstrably is not the law, and neither is his insistence that factual differences among class members need not be addressed at this stage.[1]

As shown in Defendants'[2] motion to dismiss, the United States Supreme Court has recognized for more than 65 years, as have a number of lower courts (including the Second Circuit and the Southern District of New York), that the FLSA does not categorically prohibit individuals from volunteering their services to for-profit entities, where they do so for their own purposes or pleasure and without expectation of wages or similar substitute compensation. Chen therefore does not challenge a facially unlawful policy that applies in the same way to everyone in the proposed class, as the FLSA's "similarly situated" requirement demands; rather, the common policy of permitting volunteers is lawful, and any claim can only arise on an individual basis, depending on each volunteer's own motives and expectations, and the "economic realities" of the particular situation.

As shown in the motion to dismiss, the facts Chen has pleaded in his Complaint about his own few days of volunteering in July 2013 sufficiently demonstrate that he individually cannot state a claim as a matter of law. He voluntarily chose to spend a few hours on three days assisting at All-Star FanFest for his personal pleasure. He also received several items of "swag" and free admission to the full five-day event for himself and a guest. He was not economically dependent upon his volunteer position at FanFest and had no rational basis to expect any wages

---

[1] Memorandum of Law in Support of Plaintiff's Motion for Court-Authorized Notice ("Pl. Mem.") at 8, 14.

[2] Defendants are Major League Baseball Properties, Inc. ("MLB Properties"), and The Office of the Commissioner of Baseball ("MLB") (collectively "Defendants").

or similar compensation.  Likely the same is true of his fellow proposed class members.  But if the Court should deny Defendants' motion to dismiss pending development of a factual record, then it should also deny Chen's motion for conditional certification, because individual facts so dominate in the applicable legal test that Defendants' liability could not be determined on a representative basis, as Chen proposes.  The motion for notice should be denied.

## STATEMENT OF FACTS

The Complaint and the documents it cites, along with the Declaration of Marla Miller, set out sufficient facts for purposes of this motion.  Briefly: each year, MLB organizes and puts on an All-Star Game consisting of the best players in the league.  (Miller Decl. ¶ 2).  Each year, the All-Star Game takes place in a different city.  (Miller Decl. ¶ 3).  Each All-Star Game is surrounded by several days of events in the host city ("All-Star Week"), which are run by MLB Properties or MLB.[3]  (Miller Decl. ¶ 4).  The largest of the events is called "MLB All-Star FanFest" ("FanFest").  (*Id.*)  FanFest is an interactive baseball theme park that includes player appearances and autograph opportunities, museum exhibits, interactive stations that simulate the game of baseball and places to buy merchandise and memorabilia.  (*Id.*)  FanFest includes over 40 different attractions and stations and is advertised as "[o]ver 450,000 square feet of fun." (*Id.*; Ex. A).[4]

MLB Properties and MLB welcome local residents – and anyone else – to volunteer at these varied events for the fun of volunteering, for the ability to experience the events at no charge, to show local pride and to welcome outsiders to their home city.  (Compl. ¶ 2; Miller

---

[3] In 2013, All-Star Week took place in New York City; in 2012, All-Star Week took place in Kansas City; in 2011, All-Star Week took place in Phoenix.  (Miller Decl. ¶ 3, 6-8).

[4] *Available at*: http://mlb.mlb.com/mlb/downloads/y2013/fanfest_brochure.pdf (last visited Nov. 21, 2013).

Decl. ¶ 5).   The 2013 All-Star Week was held in New York City, with FanFest at the Javits

Center from July 12-16.   (Miller Decl. ¶ 6).   FanFest 2013 included over 40 different attractions

and stations, each with a different level of interaction for the fan and each with a different level

of volunteer involvement.[5]   (Miller Decl. ¶ 4).   2013 FanFest attractions included:

- Box Office;

- Authentication;

- Collector's Showcase, which included booths from The Pin Man, Brock's Sports, Fathead LLC, Crescent Collectibles, K & P Weaver, Clemente's Clubhouse, Pass-Port Sports, Stuart Collectibles, Mascot Books Inc. and the Yogi Berra Museum;

- FanFest Entertainment Stage;

- All-Star Video Zone which featured a Sony Playstation booth;

- Daily Events Boards;

- The Diamond, which included stations such as Diamond Outfield Fence, Diamond Greenroom, Diamond Mix Position, Diamond Video Screen and Diamond Scenic Elements;

- Steal a Base, Steal a Taco;

- An Entrance/Exit station, which included bag stands and a give-away table;

- FanFest Batting Practice;

- Demo Zones;

- Home Run Derby;

- Hometown Heroes;

- Information Center;

---

[5] Chen alleges in his declaration that there were "more than 40" attractions at FanFest; *see also* http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/attractions.jsp (last visited Nov. 21, 2013).

- A Major League Baseball station, which included exhibits on the World Baseball Classic, Latin Hall of Famers and Women in Baseball, as well as a Hispanic Heritage Museum.

- An MLB.com station;

- A Minor League Baseball station, which included a Map Wall and a Cap Wall;

- FanFest Auction;

- MLB Clubhouse Store, which included kiosks for several retailers, such as New Era and Tommy Bahama;

- Under Armour Performance Center;

- National Baseball Hall of Fame & Museum;

- A Negro Leagues station;

- Radio & Autograph Stages;

- Rookie League, which included such stations as Target Wall, Pitching and Batting Cages, Tailgate Toss, Face Painting, Kindervision, Mascot Autographs, WS Replica Photo Op, Rookie League Steal Home Challenge and Backyard T-Ball;

- Various Exhibitors, including Charity 5K Challenge Booth, Diamonds and Dreams Presented by Chevrolet, Team Coalition Booth, New Era Display, a Sirius XM Radio booth, Majestic Display, Gatorade Points of Sweat Staging Area and a Prostate Foundation booth;

- Stadium Field;

- World's Largest Baseball;

- Fields of Play;

- FanFest Tire Tryout;

- FanFest Fielding Practice;

- All-Star Clubhouse;

- Publishing Kiosk;

- Fast Relief Pitch; and

- MLB Trophies.

(Compl. ¶ 90; Miller Decl. ¶ 6).  In addition, MLB Properties or MLB run numerous other events in the host cities for which they seek volunteers' participation.  These have included a 5K & Fun Run event, a charity concert, events to benefit veterans, Boys & Girls Club and Habitat for Humanity, fantasy camps, and a parade in the host city.  (Miller Decl. ¶¶ 6-8).  Approximately 2,000 volunteers were accepted "to represent New York by welcoming our guests from around the world and assisting in the smooth operation of events." (Ex. B).[6]  "The intent of the volunteer program is to build local excitement and involvement for the All-Star Summer experience." (*Id*.).

FanFest volunteers were given the opportunity to select three time slots for which they would like to be scheduled over the course of three days, and non-FanFest volunteers could choose three stations outside of FanFest over the course of three days.  (Miller Decl. ¶ 14)  MLB Properties and MLB did their best to honor those choices.  (*Id*.).  FanFest volunteers received a FanFest volunteer polo shirt, a FanFest baseball cap, an All-Star Summer cinch backpack, free admission to FanFest for themselves using their FanFest credential and one FanFest ticket for a guest, a baseball, a water bottle, a FanFest credential and a FanFest lanyard.  (Miller Decl. ¶ 16.).  Non-FanFest volunteers received an All-Star Game polo shirt and cap, an All-Star Summer cinch backpack, one ticket to FanFest, a baseball, a water bottle, an All-Star Game credential and an All-Star lanyard.  (*Id*.).  Each individual who volunteered for at least three shifts was entered into a contest to win a pair of tickets to the All-Star Game.  (*Id*.).

---

[6] *Available at*: http://mlb.mlb.com/mlb/events/all_star/y2013/fanfest/faq.jsp (last visited Nov. 21, 2013).

Volunteers' activities and, objectively speaking, the interest of and fun to be had in those activities, varied widely, depending on the attraction, whether they were volunteering at FanFest or another All-Star Week event, and whether they had previously volunteered at an All-Star Week event.  (Miller Decl. ¶¶ 4, 12, 13, 19).  Some volunteers, for example, served as pre-game rehearsal stand-ins.   (Miller Decl. ¶ 15).   Others prepared welcome baskets, assisted with deliveries, and similar behind-the-scenes tasks.  (*Id.*).  Others assisted with fantasy camps or set up parade floats.  (*Id.*).  Others had more creative duties, such as painting a mural at a Boys & Girls Club event.  (*Id.*)  Others had significant interaction with fans: greeting and directing them, handing out gift bags, and assisting with transportation.  (*Id.*).  Of those, some interacted with the general public; others volunteered at events like the All-Star Pre-Game Reception, a private hospitality event for sponsors, licensees, team representatives, and celebrities.  (*Id.*)  Although most volunteers are from the local area, each year a number of repeat volunteers fly to All-Star Week to participate in the events; in 2013 there were 324 such volunteers.  (Miller Decl. ¶ 19).  These repeat volunteers had the opportunity to select time slots for FanFest or specific non-FanFest volunteer opportunities before first-time volunteers made their selection.  (*Id.*)

When not volunteering, volunteers were encouraged to enjoy and take part in all of the All-Star Week activities, including at FanFest.  (Compl. ¶ 25; Miller Decl. ¶ 15.)  In addition, at the volunteer information session that took place about a month before All-Star Week and the volunteer orientation sessions that took place immediately before All-Star Week, it was stressed to the volunteers that their participation should be an enjoyable and fun experience for them, and the volunteers received a Guide that explicitly told them that they were "donating" their time. (Miller Decl. ¶ 15, Ex. A)

Chen elected to access the MLB.com website and register "to volunteer" for events

"surrounding the 2013 All-Star Game at Citi Field" months before the All-Star Game was scheduled to take place. (Chen. Decl. ¶ 1).   Chen was selected as a volunteer, and ended up donating 17 hours of his time over three days at the Javits Center and in orientation meetings. (Compl. ¶ 96, 101, 104-05, 109).   He volunteered at the FanFest Batting Practice Station, the Give-Away Team Station, and the Utility Players Station.   (Chen. Decl. Ex. C).   He handed out merchandise, provided directions to fans, and assisted with the operation of a fielding practice station.   (Compl. ¶¶ 104, 106-08, 110-12; Chen Decl. ¶¶ 21-22, 24).   Chen acknowledges that he received the promised shirt, backpack, cap, and a lanyard.   (Compl. ¶ 3; Chen. Decl. ¶ 12).   He later sold those items, as well as other merchandise that he purchased at FanFest, on eBay, the online auction website, for a profit. (Ex. C).

## ARGUMENT

The FLSA permits plaintiffs to maintain an action "for and [o]n behalf of … themselves and other employees similarly situated."   29 U.S.C. § 216(b).   Courts commonly use a two-stage analysis to determine whether putative class members are "similarly situated" for purposes of certifying an FLSA claim for collective treatment under § 216(b) of the Act.   *See, e.g.*, *Myers v. Hertz* Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); *Laroque v. Domino's Pizza LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008).   In the first stage, the court must make an initial determination that the members of the proposed collective are "similarly situated" and, if so, may authorize the sending of notice inviting others to "opt in" to the putative collective action.   *See, e.g., Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).   Even where no discovery has taken place, as here, the plaintiff bears the burden of demonstrating that he is "similarly situated" to the class he desires to represent, meaning that all of them were "victims of a common policy or plan that violated the law."   *Myers v. Hertz Corp.*, 624 F. 3d 537, 555 (2d Cir. 2010) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)); *Romero v. H.B. Auto.*

*Group, Inc.*, No. 11-cv-386, 2012 WL 1514810, at *9 (S.D.N.Y. May 1, 2010).

Although Chen need only make a "modest factual showing" in this regard, his burden is "not non-existent," *Romero*, at *10, and the court must "take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs." *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009). "[A]s courts have noted, '[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'" *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797 (S.D.N.Y. 2012) (quoting *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008)). Chen cannot meet these burdens.

### A. The Class Cannot Be Certified and Notice Should Not Be Issued Because Plaintiff Challenges Only A Facially Lawful Policy of Not Paying Wages to Volunteers.

#### 1. Conditional Certification Requires A Showing Of A Common Unlawful Policy.

Even without considering the factual variety among class members that characterizes his claims, Chen's effort to certify a collective fails at the threshold, because he cannot show that he or anyone else was subjected to a "common policy or plan that violated the law." *Myers*, 624 F. 3d at 555. Chen challenges only a policy that is lawful on its face, and has no evidence to suggest that any unwritten, unlawful policy otherwise prevails. Certification should be denied and notice should not issue where a claim fails as a matter of law. *See Pefanis v. Westway Diner, Inc.*, No. 08-cv-002, 2010 WL 3564426 at *3 (S.D.N.Y. Sept. 7, 2010) (*citing McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008); *Amendola v. Bristol-Myers Squibb Co.*, 558

F. Supp. 2d 459, 467 (S.D.N.Y. 2008)).  And, as this Court has held, while "the existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification," plaintiff nevertheless must show, even at this early stage, "that a facially neutral [policy] was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012) (Koetl, J.).  Chen cannot do so here.

District courts in this Circuit have repeatedly declined to conditionally certify FLSA classes and issue notice where plaintiffs can show only that they were subject to a common policy that is lawful on its face, even where the common lawful policy allowed individual managers discretion that could have led to unlawful denial of wages.  *See, e.g., Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 322-25 (E.D.N.Y. 2012); *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-civ-7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009).[7]  In those circumstances, the only prospect of liability is a showing that the policy was ignored, or applied in some unlawful way, in a particular circumstance, on unusual facts, with respect to a particular individual.  Absent evidence that the alleged unlawful departure from the formal policy is widely applied, the mere allegation that perhaps the employer departs from a lawful policy is not a collective claim; it is an individual claim that must be pursued on its own facts.  Mere reference to a facially lawful policy, therefore, cannot satisfy a plaintiff's burden of showing that he is similarly situated to

---

[7] *See also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1124 (N.D. Cal. 2011) (policy that allegedly gave managers "incentives" to force off-the-clock work "are insufficient to constitute evidence of a common decision, policy, or plan"); *Brechler v. Qwest Commc'ns Intl.*, No. cv.-06-00940, 2009 WL 692329, at *3–4 (D. Ariz. 2009) (decertifying a class where plaintiffs "relie[d] on a subtler system of pressure and coercion that, ultimately, appears to have been backed or not by individual managers"); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282 (N.D. Tex. 2008) (lawful policy that may have encouraged unlawful conduct by individual managers did not constitute a "single decision, policy, or plan").

other putative collective members, however modest that burden might be.  *Brickey*, 272 F.R.D. at 348.  If a plaintiff is unable to show that he was "either subject to a common facially illegal policy or defacto illegal policy," then conditional certification should be denied.  *Jenkins*, 853 F. Supp. 2d at 322.

> ### 2.    Defendants' Use Of Volunteers During All-Star Week Is Lawful On Its Face Because Plaintiff And Other All-Star Week Volunteers Are Not Covered "Employees" Under The Act.

There is simply nothing per se unlawful about the use of volunteers by a for-profit business.  As the Supreme Court has long held, "[a]n individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons for their pleasure or profit,' is outside the sweep of the Act." *Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 295 (1985) ("*Alamo*") (*quoting Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).  As explained in detail in Defendants' motion to dismiss, even accepting all allegations in the Complaint as true, Chen was properly classified as a volunteer.  Accordingly, he was not an "employee" under the FLSA.  *See* 29 U.S.C. §§ 203(e)(1), 206(a).

If the Court were to deny Defendants' motion to dismiss pending development of a factual record, that same need for facts would preclude the conditional certification that Chen now seeks, because the relevant facts are highly individualized.  In determining whether specific volunteers are covered by the FLSA, courts examine whether the nature of the relationship is truly voluntary or whether it is a disguised employment relationship, based on the "economic realities" – primarily, whether the relationship is characterized by the sort of economic dependence typical of employment, and whether the plaintiff expected wages or similar compensation.  *See, e.g., Alamo*, 471 U.S. at 302-03; *Okoro v. Pyramid 4 Aegis*, No. 11-C-267,

2012 WL 1410025, at *6 (E.D. Wisc. April 23, 2012); *Hallissey v. Am. Online, Inc.*, No. 99-Civ-3785, 2006 U.S. Dist. LEXIS 12964, at *15-19 (S.D.N.Y. Mar. 10, 2006).  Courts consider a broad variety of factors when conducting this analysis, including the goals of the Act, the general relationship of the parties, the motivations of the parties, and the respective benefits gained by each party to the relationship.  *See Roman v. Maietta Constr., Inc.*, 147 F.3d 71 (1st Cir. 1998); *Okoro*, 2012 WL 1410025, at *6; *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *15-19.

Chen admits that he volunteered for a total of only 17 hours over a few days, and he does not allege any expectation of a job or any other further assignment, paid or unpaid.   (Compl. ¶¶ 96, 104, 105, 109.)  The documents referenced in the Complaint confirm the volunteer nature of Chen's activities at All-Star Week events and Chen's lack of expectation of compensation.  In addition, it was made clear to the volunteers at the information and orientation sessions and through the volunteer Guide that the volunteers would be "donating" their time and not receiving compensation.  (Miller Decl. ¶ 10, 13, Ex. A)  Thus, according to Plaintiff's own statements and allegations, as well as the information he received both orally and in writing, he (i) was not economically dependent on MLB Properties; (ii) did not expect any wages in return for his services; and (iii) received valuable, identifiable benefits, including the profits he gained from his eBay sales and the unquantifiable benefit of participating in and attending FanFest.  Accordingly, Plaintiff does not allege that MLB Properties' treatment of his volunteer service or that of other volunteers was unlawful, aside from his conclusory allegations that he and other volunteers were "employees" and were therefore owed the minimum wage.  (Compl. ¶ 116.)

Without at least a "modest factual showing" that he and other putative collective plaintiffs were subject to an unlawful policy, the class simply cannot be certified.  *Jenkins*, 853 F. Supp. 2d at 322.   "Unsupported assertions of widespread violations are not sufficient."

*Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266, 2007 WL 4546100, at *2 (D. N.J. Dec. 19, 2007) (citation omitted).   Furthermore, Chen must bear the burden at least of showing that he himself has a colorable claim, because if he cannot, individuals who might hypothetically have more viable claims are, by definition, *not* similarly situated to him.   *Vengurlekar v. Silverline Technologies, Inc.*, 220 F.R.D. 222, 230 (S.D.N.Y. 2003) ("Having no FLSA claims of their own, [named] plaintiffs are not similarly situated to those. . . who potentially have such claims.").   His own claim fails, and therefore the motion for conditional certification must fail also.

**B.      Notice Must Be Denied Because, In The Face Of A Lawful Policy, Plaintiff Cannot Show He Is Similarly Situated To Other Volunteers.**

In *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012) (Koetl, J.), on which plaintiff here relies, this Court analyzed the holdings of *Eng-Hatcher* and related cases, which refused to certify classes based on a facially lawful policy, and the cases that did certify classes based on an allegation that a de facto unlawful policy existed.   The Court held that the outcome in these two sets of cases depended upon whether, on "the evidence presented," it was appropriate "to infer that the FLSA violations alleged by individual plaintiffs were likely to be widespread across a nationwide class."[8]  In *Winfield* itself, the Court pointed to testimony from class members "in thirteen different branches in six of the thirteen states where the defendant operates," and concluded that "plaintiffs have made a stronger showing [than in *Eng-Hatcher* or similar cases] that the defendant's facially lawful policies . . . resulted in widespread FLSA violations."   *Id*. at 407.

Other cases on which Chen relies similarly presented far more evidence suggesting a

---

[8] *Id*. at 406 (citing *Eng–Hatcher*, 2009 WL 7311383, at *3–4; *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 173–74 (W.D.N.Y.2007); *Simmons v. T–Mobile USA, Inc.*, No. H-06-1B20, 2007 WL 210008, at *6-*7 (S.D. Tex. Jan. 24, 2007)).

widespread pattern of illegality than exists here.  In *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *2-3 (S.D.N.Y. July 16, 2012), deposition testimony from the defendant's Senior Vice President of Operations "suggest the complained of practices are uniform across all of Defendants' stores," and the written policy itself required the performance of nonexempt work by exempt employees.  The court in *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *5 (S.D.N.Y. Feb. 7, 2013) had eleven declarations from employees in nine states and thirteen offices, all reporting similar experiences.[9]

There is no similar evidence here on the questions that matter.  Plaintiff offers nothing more than his own declaration, limited almost entirely to his own experience.  And on the issues that determine liability – the relative benefits gained by volunteers as compared to the benefit derived by Defendants – Chen has no evidence to offer at all of ***any*** volunteer other than himself.  That governing inquiry is necessarily an entirely individualized one, examining the motivations and expectations of each volunteer.  To match the evidentiary records of the cases on which he relies – and which this Court relied upon in granting conditional certification in *Winfield* – Chen would have to offer evidence that he and the other volunteers share some common experience of improper conduct: that they were misled about the nature of the opportunity, that Defendants failed to deliver what they promised, that they volunteered because they expected that it might lead to a paying job, or at least that they expected more tangible benefits than actually were provided.  There is no such evidence.  Instead, Chen proceeds solely on the bare fact that he

---

[9] Chen similarly relies on a series of cases in which certification was granted on the basis of substantial evidence, generally from the employer itself, that it applied the same policies in the same way to all employees – in other words, cases in which the plaintiffs did not allege an unwritten policy different from the lawful published policy, but challenged the written policy itself.  Those cases do nothing to assist Chen, both because they involved a substantially more common legal inquiry, and because they did not seek to certify a class to challenge the unlawful implementation of a lawful policy.  *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008); *Indergit v. Rite Aid Corp.*, 2010 WL 2465488 (S.D.N.Y. 2010); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008).

volunteered for a for-profit business.  That simply is not enough.

Further, unlike in *Winfield* and the other cases on which Chen relies, to the extent there is any common evidence at all, it cuts against Plaintiff's claims.   The arguably shared characteristics of All-Star Week volunteer experiences point away from liability: it is highly unlikely, on this record, that any volunteer expected wages, was economically dependent on Defendants, or was misled about the prospect of a subsequent job.

It is simply not sufficient to say, as Chen does, that there were many volunteers, that they "performed almost all of the work at FanFest," and (without any evidentiary support) that their contributions "were essential to operating FanFest."  Pl. Memo. at 13.  The applicable legal test asks why the individual sought out the volunteer opportunity, whether the individual expected compensation or an improved chance of a paying job, and the like.  Those questions cannot be answered based only on the perspective of a sample of volunteers.

C.      **Even If Plaintiff and Other All-Star Week Volunteers Qualified as "Employees" Under The Act, Notice Still Must Be Denied Because All-Star Week Events Are Exempt From Minimum Wage Requirements.**

As also explained in Defendants' motion to dismiss, recruiting volunteers to assist at All-Star Week events is facially lawful not only because true volunteerism is permissible, but also because those events are exempt from minimum wage requirements as an "amusement or recreational establishment" that does not operate for more than seven months in any calendar year pursuant to 29 U.S.C. § 213(a)(3).   Because the applicable regulations define an "establishment" as a "distinct physical place of business" distinguishable from the more general terms "business" or "enterprise," a physically separate place of business may constitute a separate establishment in a multi-unit business or enterprise. 29 C.F.R. § 779.303.  *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 595 (11th Cir. 1995) (Minor League subsidiary of

Chicago White Sox qualified as a separate recreational establishment); *Ivanov v. Sunset Pools Mgmt. Inc*., 567 F. Supp. 2d 189, 193-94 (D.D.C. 2008) (hotel pool was separate seasonal establishment from year-round hotel).

The activities that take place at All-Star Week are akin to those that take place at "amusement parks, carnivals, circuses, [and] sport parks," all of which have been accepted as exempt under § 213(a)(3).  *See Mann v. Falk*, 523 F. App'x 549, 552 (11th Cir. 2013) (*citing Brennan v. Texas City Dike & Marina, Inc*., 492 F.2d 1115 (5th Cir. 1974)); *Adams v. Detroit Tigers, Inc*., 961 F. Supp. 176 (E.D. Mich. 1997).  For example, the Eleventh Circuit concluded that the Sarasota White Sox, a Minor League Baseball team which was a subsidiary of the Chicago White Sox, constituted "an amusement and recreational establishment" because "[s]ports events are among those types of recreational activities specifically considered by Congress to be covered by the exemption."  *Jeffery*, 64 F.3d at 595 (collecting cases; citations and internal quotations omitted).

Chen admits in his Complaint that FanFest ran for only five days from July 12 through July 16, 2013, and that the events of All-Star Week only lasted for those five days, as well. (Compl. ¶¶ 13, 15; Miller Decl. ¶ 6)  In fact, in 2012 and 2013, while FanFest only lasted five days, one event (MLB's Fantasy Camp) ran into a sixth day, but in 2011, all events lasted just five days.  (Miller Decl. ¶¶ 6-8).  In addition, in a few cases in each year, volunteers assisted MLB Properties one day before All-Star Week started or one or two days after All-Star Week ended. (Miller Decl. ¶ 9).  When combined with the information session in June, and the orientation session several days before the events began, All-Star Week, at most, operated for nine days over the course of two calendar months.  Thus, FanFest and the other All-Star Week events clearly fall within the exemption.  *See, e.g. Jeffery*, 64 F.3d at 596 (holding that White

Sox Spring Training facility and home of the White Sox Minor League team in Sarasota, Florida fell under the exemption as operating for less than seven months in a calendar year).

Thus, even if Chen and other volunteers qualified as covered "employees," any FLSA claims for minimum wage still would fail because All-Star Week, including FanFest, collectively constitute an establishment that is exempt from minimum wage requirements under the Act.  In the absence of a viable FLSA claim, Plaintiff's claims should not be conditionally certified and notice should not be issued.

###   D.   Conditional Certification Would Be Futile, As Putative Plaintiffs Would Be Unable To Sustain Certification After Discovery.

Even if Chen had made a competent allegation that he and others were subjected to a "common policy or plan that violated the law," and even if the Court were to deny Defendants' motion to dismiss pending development of a fuller factual record, conditional certification nevertheless would be futile, because the only way Chen and his proposed collective could succeed would be by proving liability based on individualized facts, particular to each class member.  Chen's protestations in his motion that the Court should apply a forgiving standard in evaluating conditional certification, threaten merely to prolong litigation that ultimately cannot succeed.

A supposed employer's liability to a volunteer turns on the "economic reality" of the relationship, the volunteer's motives and expectations, and the relative benefits received by the volunteer and by the alleged employer.  *Walling*, 330 U.S. at 152; *Alamo*, 471 U.S. at 302-03; *Roman*, 147 F.3d at 75-76; *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *32-40.  If the Court were to determine that Defendants' motion to dismiss should be denied – that is, that liability cannot be determined as a matter of law, but rather depends on the facts – then the same variation in possible facts that required denial of the motion to dismiss also would preclude

certification, because the relevant facts cannot be assessed on an aggregate or representative basis.   A jury could consider, for example, Chen's testimony on the relevant factors, and Defendants' rebuttal, and determine whether, in the totality of the circumstances, Chen should be considered a volunteer or an employee; but that determination would say nothing about the motives, expectations, dependence, or other economic realities surrounding any other volunteer's state of mind and experience.

Courts sometimes defer addressing these questions at conditional certification, on the theory that the fuller factual record available after discovery will permit a more searching inquiry.[10]  But here, discovery will do nothing to solve the problems with class treatment that are apparent from the face of the Complaint.    Chen would still have to demonstrate that the generally lawful policy of permitting volunteers is *de facto* illegal by showing that legal violations – that is, departures from the lawful policy – are "sufficiently uniform and pervasive to warrant class treatment."  *Id.* at 463.   Chen would have to show that, under the totality of the circumstances, the "economic reality" of the relationship between each All-Star Week volunteer and Defendants was such that it amounted to an employee-employer relationship, rather than the unpaid volunteer relationship that Chen admits he knowingly pursued.  *Alamo*, 471 U.S. at 301. To do so, he would have to demonstrate not only that volunteers were economically dependent on Defendants or that they had an expectation of compensation, but that in every case, including the 324 repeat volunteers in 2013, the immediate advantage gained by Defendants exceeded any

---

[10] The second step of the "similarly situated" analysis involves a "more stringent standard of proof."  *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).  At that stage, the Court would examine the proposed class under the following three factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Laroque*, 557 F. Supp. 2d at 352. The burden again would be on Chen to prove that he is similarly situated to the opt-in plaintiffs and that these considerations favor certification.  *Zivali*, 784 F. Supp. 2d at 460.

tangible or intangible benefits gained by the volunteer.  *See, e.g.*, *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *32 (any "direct economic benefit from [p]laintiffs' work" as compared with "the rewards received by [p]laintiffs" was relevant to the determination of whether plaintiffs were lawful volunteers).  That analysis cannot possibly be conducted on a class basis, as it would require individualized evidence of each volunteer's state of mind and his or her particular volunteer experience.  Discovery is not likely to change the need to hear from each volunteer about the details of his or her motivations and experience.

Similarly, where a determination of liability, including potential defenses, will be highly fact-specific, as here, the second factor of the similarly situated analysis "weighs heavily against" certifying a collective action.  *Zivali*, 784 F. Supp. 2d at 467-68.    Defendants are entitled to show, on a volunteer-by-volunteer basis, that the benefits received by a particular volunteer outweighed any immediate benefit that Defendants received.  In 2013 alone, FanFest staged over 40 events or attractions where volunteers were involved, and the volunteer duties and fan activities offered at each event varied dramatically.  (Compl. ¶ 90; Miller Decl. ¶ 4.)  Chen's apparent dissatisfaction with his own experience, which included "alphabetizing liability waivers," may not be matched, for example, by volunteers who interacted with baseball fans at the batting or fielding stations or who served as pre-game rehearsal stand-ins.  Each putative opt-in plaintiff's experience inevitably differed according to (1) his or her motivation for volunteering; (2) the FanFest attractions or other events at which an individual volunteered and the benefits conferred on the volunteer or Defendants, tangible or intangible, as a result; (3) which attractions or events the volunteer attended or participated in when not volunteering, and the relative benefits received; and (4) any other tangible or intangible benefits gained by either the volunteer or Defendants.    The individualized nature of this analysis, coupled with Chen's

sharply limited experience at only three of the more than 40 events or attractions at FanFest in a single year, and the quite tangible financial benefit he received from selling his FanFest and other merchandise online, demonstrates that there is no cohesive class of the many thousands of volunteers in New York, Missouri, and Arizona.  Whatever the facts might eventually show, it is simply unavoidable that those facts will differ from volunteer to volunteer and must be examined individually.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiff's Motion for Court-Authorized Notice should be denied.

Dated:          New York, New York
                November 21, 2013

                                    PROSKAUER ROSE LLP

                                    By:  <u>/s/ Elise M. Bloom</u>
                                         Elise M. Bloom
                                         Mark W. Batten
                                         Seth D. Kaufman
                                         Eleven Times Square
                                         New York, NY  10036-8299
                                         Telephone 212.969.3000
                                         Fax 212.969.2900
                                         ebloom@proskauer.com
                                         mbatten@proskauer.com
                                         *Attorneys for Defendants*