PROSKAUER ROSE LLP
Elise M. Bloom
Mark W. Batten
Seth D. Kaufman
Eleven Times Square
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JOHN CHEN, on behalf of himself and all others   :
similarly situated,                              :        Case No.:  13-CV-5494 (JGK)
                                                 :
                              Plaintiff,         :
                                                 :        **ECF Case**
              v.                                 :
                                                 :        **DEFENDANTS' MEMORANDUM
MAJOR LEAGUE BASEBALL PROPERTIES,                :        OF LAW IN SUPPORT OF
INC., and THE OFFICE OF THE                      :        RENEWED 12(b)(6) MOTION TO
COMMISSIONER OF BASEBALL, d/b/a                  :        DISMISS PLAINTIFF'S FIRST
MAJOR LEAGUE BASEBALL                            :        AMENDED COMPLAINT**
                                                 :
                              Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Dated:        December 20, 2013
              New York, New York


                                        PROSKAUER ROSE LLP


                               By:      *s/ Elise M. Bloom*
                                        Elise M. Bloom
                                        Mark W. Batten
                                        Seth D. Kaufman
                                        Eleven Times Square
                                        New York, New York 10036
                                        Telephone (212) 969-3000
                                        Fax 212.969.2900
                                        ebloom@proskauer.com
                                        *Attorneys for Defendants.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................................3

ARGUMENT ...........................................................................................................................6

UNDER THESE WELL ESTABLISHED PRINCIPLES, THE
PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
AS A MATTER OF LAW .......................................................................................................8

    I.     Plaintiff Chen and the Volunteers He Seeks to Represent
            Are Not Employees Under the FLSA or the NYLL. ..............................................8

           A.     The Law Permits Individuals to Volunteer Their Services
                    If They Had No Expectation of Receiving Wages.......................................8

           B.     Plaintiff and the Volunteers He Seeks to Represent Were Not
                    Employees Because They Had No Expectation of Wages. ..........................11

                  1.     Chen's New Allegations Concerning
                            Compensation Do Not Salvage His Claims. ....................................12

                  2.     Chen's New Allegations Concerning Green Team
                            Volunteers Do Not State A Viable Claim.........................................17

    II.    The All-Star Week Events and Each World Series Stadium
           Hosting Games of Each World Series Are Exempt from the FLSA........................18

           A.     The All-Star Week Events and Each World Series
                      Stadium Hosting Games of Each World Series Are
                    "Amusement or Recreational." ...................................................................19

           B.     Each All-Star Week Event and Each World Series
                      Stadium Hosting Games of Each World Series is a
                    Separate Covered "Establishment."...........................................................20

           C.     The All-Star Week Events and Each World Series
                      Stadium Hosting Games of Each World Series Did Not
                    Operate for More Than Seven Months. ......................................................22

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Detroit Tigers,*
    961 F. Supp. 176 (E.D. Mich. 1997)........................................................................19, 20, 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................... passim

*Attanasio v. Cmty. Health Sys., Inc.,*
    No. 3:11-CV-582, 2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) ...........................................7

*Beer v. Walbridge,*
    100 F. 465 (2d Cir. 1900) .....................................................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................................6, 7, 12

*Brennan v. Texas City Dike & Marina, Inc.,*
    492 F.2d 1115 (5th Cir. 1974) ............................................................................................19

*Cano v. DPNY, Inc.,*
    287 F.R.D. 251 (S.D.N.Y. 2012) .........................................................................................9

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)..................................................................................................3

*Cleveland v. City of Elmendorf,*
    388 F.3d 522 (5th Cir. 2004) ..............................................................................................11

*Deluca v. AccessIT Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010).....................................................................................7

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.,*
    841 F. Supp. 2d 1274 (S.D. Fla. 2012) .................................................................................7

*Hallissey v. America Online, Inc.,*
    No. No. 99 Civ. 3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10,
    2006) ......................................................................................................................10, 14, 16

*Hart v. Rick's Cabaret Int'l Inc.,*
    No. 09 Civ. 3043, 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010).....................7, 9

*Hill v. City of New York,*
    45 F.3d 653 (2d Cir. 1995)...............................................................................................3, 4

*Holowecki v. Fed. Express Corp.*,
  440 F.3d 558 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008) ........................................................3

*Jeffery v. Sarasota White Sox, Inc.*,
  64 F.3d 590 (11th Cir. 1995) ........................................................................................ passim

*Le Hong Hung v. Lyder*,
  No. 04 Civ. 4679 (GBD), 2005 U.S. Dist. Lexis 11832 (S.D.N.Y. June 14,
  2005) ...............................................................................................................................6, 25

*Mann v. Falk*,
  523 F. App'x 549 (11th Cir. 2013) .....................................................................................19

*McLaughlin v. Lunde Truck Sales, Inc.*,
  714 F. Supp. 920 (N.D. Ill. 1989) .......................................................................................22

*Okoro v. Pyramid 4 Aegis*, No. 11 Civ. 267, 2012 U.S. Dist. LEXIS 56277, at *24
  (E.D. Wis. Apr. 23, 2012) ...................................................................................................15

*Rodriguez v. Twp. of Holiday Lakes*,
  866 F. Supp. 1012 (S.D. Tex. 1994) ...................................................................................11

*Rogers v. Schenkel*,
  162 F.2d 596 (2d Cir. 1947)............................................................................................9, 11

*Roman v. Maietta Constr., Inc.*,
  147 F.3d 71 (1st Cir. Me. 1998)..........................................................................................10

*Tasini v. AOL, Inc.*,
  851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012)................15, 16

*Todaro v. T'ship of Union*,
  40 F. Supp. 2d 226 (D.N.J. 1999) .......................................................................................14

*Tony and Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290 (1985) ("*Alamo*") ................................................................................... passim

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947)..............................................................................................................8

*Wang v. Hearst Corp.*,
  No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869 (S.D.N.Y. May 8, 2013)..........................8, 9

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2d 560 (S.D.N.Y. 2012)....................................................................................3

*Zamora v. Washington Home Servs., LLC*,
  No. 11-CV-00831, 2011 WL 6297941 (D. Md. Dec. 15, 2011)..............................................7

**STATUTES**

29 U.S.C. § 203(g) ............................................................................................8

29 U.S.C. § 206(a) ............................................................................................8

29 U.S.C. § 213(a)(3)............................................................................... passim

29 U.S.C. § 213(a)(3)(A) ...........................................................................18, 22

29 U.S.C. § 213(a)(3)(B) ................................................................................18

New York Lab. Law 651(5)(o) ........................................................................9

**OTHER AUTHORITIES**

29 C.F.R. § 553.104(b) ....................................................................................11

29 C.F.R. § 553.106(a)................................................................................15, 16

29 C.F.R. §§ 779.23 ....................................................................................20, 21

Fed. R. Civ. P. 12(b)(6)....................................................................................1

H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ...............................19, 20

Major League Baseball Properties, Inc. ("MLB Properties") and The Office of the Commissioner of Baseball, d/b/a Major League Baseball ("Major League Baseball" and collectively hereinafter "Defendants" or "MLB") submit their motion pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of the First Amended Complaint (the "FAC" or the "Complaint") for failure to state a claim upon which relief can be granted.  The changes made in the FAC to the original complaint are insufficient as a matter of law to save the legally inadequate Complaint.

## PRELIMINARY STATEMENT

Plaintiff John Chen elected to volunteer for a few hours on each of three days at 2013 All-Star FanFest (hereinafter "FanFest").  FanFest was an event that MLB Properties operated in the week surrounding the All-Star Game in New York City (hereinafter "All-Star Week").  For a grand total of 14 hours over those three days, Plaintiff acted as a greeter, handed out paraphernalia, and otherwise participated in the event as an official volunteer.  He does not allege that he was coerced to provide those services, that anyone misrepresented the opportunity to him, that he credibly expected to be paid wages or the equivalent ("wages in another form" according to the U.S. Supreme Court), that he believed his volunteering would allow him to receive a paying job at MLB, or that he needed the volunteer activities to support himself.  He freely chose to sign up as a volunteer, then chose to attend a brief orientation, and then chose to show up on each of the three days.  Had he changed his mind at any point, or found the opportunity unappealing as described in the orientation, or found the experience unpleasant after the first day – indeed, after the first minute – there was nothing requiring him to continue or to return.  (Certainly the Complaint does not allege otherwise.)  He collected the free swag he had been offered (free admission to the five-day event for himself and a friend, a polo shirt and cap, a baseball, water bottle, and backpack), and later sold the physical items on eBay.

Although Chen freely volunteered to be a part of this festival, he now insists that he is entitled to be paid minimum wage pursuant to the Fair Labor Standards Act ("FLSA" or "Act") and the New York Labor Law ("NYLL") for those volunteer services.  (FAC (Dkt. No. 28) at ¶¶ 174-203.)  He seeks to represent a class of volunteers in both a Rule 23 class action and an FLSA collective action.  The class of volunteers consists of three groups: individuals who volunteered at FanFest during the relevant time period, individuals who volunteered at other All-Star Week events during the relevant time period, and, new to the Complaint, "Green Team" volunteers during the relevant time period.[1]  (FAC at ¶¶ 77, 88, 123, 124, 135, 136, 140.)

The Complaint fails as a matter of law.  The added conclusory allegations that, for example, Chen and the class he purports to represent did not donate their time, did not volunteer for their own purpose or pleasure, and expected compensation in the form of a free T-shirt and other nominal items do not address the deficiencies pointed out in MLB's first motion to dismiss. The new Complaint adds no new facts to dispute what has always been plain: Chen and the putative class and collective members were volunteers as a matter of law and, thus, the statutory protections of the FLSA and NYLL do not apply to them.

Even if Chen and the class were properly considered employees, which they are not, the events that engaged volunteers are exempt from minimum wage requirements pursuant to Section 213(a)(3) of the FLSA, which removes from the FLSA's coverage "amusement or

---

[1]     The relevant time period for the Rule 23 class action runs from August 7, 2007 to the present, and the putative Rule 23 class includes volunteers for FanFest and other All-Star Week events for the 2008 and 2013 All-Star Games and Green Team volunteers in New York during that time period.  (FAC at ¶¶ 77, 90-155.)  Plaintiff also seeks to include anyone who otherwise volunteered for MLB at an event held in New York between 2007 and the present.  (*Id.* at ¶ 77.)  There are no volunteers aside from those Plaintiff specifically mentions in the Complaint.  The relevant time period for the FLSA collective action runs from August 7, 2010 to the present, and the putative FLSA class includes Green Team volunteers during that period, as well as volunteers for FanFest and other All-Star Week events for the 2011 All-Star Game in Phoenix, Arizona, the 2012 All-Star Game in Kansas City, Missouri, and the 2013 All-Star Game in New York.  (*Id.* at ¶¶ 88, 90-155.)

recreational establishments."  Chen's FAC does not cure the legal deficiencies in the originally

filed complaint, and the Court can resolve these issues based on the factual allegations and

documents referenced in and attached to the Complaint – even if all taken as true.

## STATEMENT OF RELEVANT FACTS

For purposes of this Motion only, MLB accepts the allegations of the Complaint as true.

*Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).[2]

The "All-Star Game," as described in the Complaint, is a game between the "top players

in each league" that occurs during July of each year in a different city.  (FAC at ¶ 61.)  Hosting

All-Star Week provides each city an opportunity to heighten its profile and attract tourists to the

area.  (*Id.* at ¶ 22 (noting that "the 2013 All-Star Game and related events, including FanFest,

brought approximately $191.5 million into the New York City economy").)  As noted above,

New York hosted All-Star Week in 2008 and 2013, while Phoenix, Arizona and Kansas City,

Missouri hosted in 2011 and 2012, respectively.  (*Id.* at ¶¶ 34, 40.)

For several days surrounding the All-Star Game, Major League Baseball, MLB

Properties and/or the local Club host All-Star Week,[3] including FanFest, which is described as an

"interactive baseball theme park" and "baseball heaven on earth."  (*Id.* at ¶¶ 2, 62; *see also*

Bloom Decl.[4] Ex. A (article entitled "MLB FanFest Touted as 'Baseball Heaven on Earth'").)

---

[2]     The facts discussed or referenced in this Motion are based on the allegations of the Complaint and
documentary evidence referred to in or integral to the Complaint.  *See Winfield v. Citibank, N.A.*, 842 F.
Supp. 2d 560, 564 (S.D.N.Y. 2012) (when deciding a motion to dismiss, "the Court may consider
documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and
that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken"); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d
Cir. 2006), *aff'd*, 552 U.S. 389 (2008); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3]     According to the Complaint, events during the 2013 All-Star Week included "a 5K race, a concert, a
fantasy camp, and a parade."  (FAC at ¶ 3.)  Plaintiff alleges that these events, including FanFest, were
"staffed largely by unpaid volunteers."  (*Id.* at ¶ 62.)

[4]     Several documents that Plaintiff cited to in the Complaint are attached to the Declaration of Elise M.
Bloom, dated December 20, 2013 (hereinafter "Bloom Decl.").

MLB Properties encourages both local and out-of-state residents to volunteer at All-Star Week for their personal enjoyment, as well as to encourage civic pride and welcome guests.  (*Id.* at ¶ 4; *see also* Bloom Decl. Ex. B (2013 FanFest FAQ Page) (noting that "the intent of the volunteer program is to build local excitement and involvement for the All-Star Summer experience").)

Plaintiff alleges that he volunteered at FanFest in 2013, held at the Jacob K. Javits Center in New York.  (*Id.* at ¶¶ 156-173.)  FanFest 2013 began on July 12, 2013 and ended four days later, and included a number of events for fan amusement and recreation, including, among other things:  player appearances and free autograph opportunities from baseball legends, including members of the National Baseball Hall of Fame, batting cages, simulated fielding practice, a station to measure the speed of the fan's pitch, and a station for the fans to create their own baseball cards.  (*Id.* at ¶¶ 18, 123; *see also* Bloom Decl. Ex. C (2013 FanFest floor map) (depicting a floor-map of FanFest with "[o]ver 450,000 Square Feet to Hit, Pitch, Catch, Shop, Eat & Live baseball!" and showing "40 attractions" in which fans were able to participate and in which volunteers were given the opportunity to assist).)  Plaintiff alleges that MLB prepares for All-Star Week approximately one year prior to the event, and that it begins soliciting volunteers for All-Star Week events in the preceding October.  (FAC at ¶¶ 147, 148.)

Plaintiff Chen decided to volunteer for FanFest in 2013.  (*Id.* at ¶ 50.)  Months before the event, Chen took several affirmative steps to secure a spot as a FanFest volunteer, including providing information for a background check, creating an online profile at MLB.com, attending a volunteer information session in late May/early June, and selecting the specific volunteer opportunities that best suited his interests and schedule.  (Bloom Decl. Ex. B.)  Chen was told from the beginning that he would not be paid wages.  (*Id.*)  Chen and other prospective volunteers were provided the basic information regarding volunteering as part of the Frequently

Asked Questions ("FAQ") page for FanFest 2013:  they would receive "a shirt, cap and cinch drawstring backpack," they would be asked to donate three shifts of their time, they would be given a volunteer credential that would give them access to FanFest at all times, along with a guest (entrance to which cost the public $35 per day), and they would have an opportunity to win a pair of tickets to the All-Star Game.  (*Id.*; *see also* FAC at ¶¶ 6, 31.)  In addition to the shirt, cap and backpack, FanFest volunteers were given a baseball and water bottle; the combined estimated retail value of the items Chen received – not counting the free access to FanFest – was $115.  (FAC at ¶ 6.)  Chen concedes that he and the other volunteers "were not provided rehabilitation, food, clothing, or shelter."  (*Id.* at ¶ 105.)

Plaintiff Chen donated 14 hours of his time at FanFest over the course of three days on Friday, July 12, Saturday, July 13 and Tuesday, July 16, 2013, and three other hours in orientation sessions.  (*Id.* at ¶¶ 157-160, 161.)  Chen does not allege any further contact or relationship with MLB Properties or Major League Baseball after his third day at FanFest.

In addition to the volunteers for FanFest and the other All-Star Week events, Major League Baseball assists the two Clubs in each year's World Series by coordinating, in conjunction with the National Resources Defense Council, those Clubs' "Green Team volunteers."  (*Id.* at ¶¶ 7, 8; Bloom Decl. Ex. D (article entitled "Major League Baseball Teams Up With the St. Louis Cardinals and Texas Rangers to Take Recycling to the World Series").)  During the World Series, those volunteers "[collect] recyclables and [encourage] environmental awareness, with support from MLB staff…."  (Bloom Decl. Ex. D.)  Green Team volunteers consist of, among other individuals, "local high school [students,] Boy Scouts troops, youth baseball teams, or [individuals from] companies with corporate environmental initiatives…."  (*Id.*)  Green Team volunteers decided to volunteer because of their devotion to "baseball and

5

helping the environment." (*Id.*)  Plaintiff alleges that from 2010 to 2013, there were Green Team volunteers at Fenway Park in Boston, AT&T Park in San Francisco, Comerica Park in Detroit, Busch Stadium in St. Louis, and Rangers Park in Arlington, Texas, which were the sites of the World Series from 2010 to 2013.[5]  (FAC at ¶ 144) (collectively, the "World Series stadiums").  None of the World Series contests played from 2010 to 2013 lasted more than 10 days.[6]

## ARGUMENT

Under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," and "blanket assertion[s] of entitlement to relief" are insufficient. *Id.*  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions [and t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and are insufficient to defeat a motion to dismiss." *Le Hong Hung v. Lyder*,

---

[5]     MLB asks that this Court take judicial notice of the locations of the World Series from 2010 to 2013. *See Beer v. Walbridge*, 100 F. 465, 46 (2d Cir. 1900).  Plaintiff also alleges that MLB utilized Green Team volunteers throughout the regular season.  (FAC at ¶¶ 7, 145, 146, 154.)  However, this allegation is nothing more than a "bald contentions" and "unsupported characterizations", which is "insufficient to defeat a motion to dismiss." *Le Hong Hung v. Lyder*, No. 04 Civ. 4679 (GBD), 2005 U.S. Dist. Lexis 11832, at *2 (S.D.N.Y. June 14, 2005).  The article that Plaintiff cites as the basis for the factual allegations regarding the Green Team volunteers clearly states that MLB's involvement with Green Team volunteers is limited to the World Series.  (Bloom Decl. Ex. D; FAC at ¶ 7.)  In addition, that Plaintiff only alleges that Green Team volunteers were utilized at the World Series stadiums further emphasizes that Plaintiff's allegation is merely a "bald contention" and an "unsupported characterization."  In fact, the Green Team volunteers were utilized by MLB only for World Series Games.

[6]     MLB asks that this Court take judicial notice that: the 2010 World Series started on October 27, 2010 and ended on November 1, 2010; the 2011 World Series started on October 19, 2011 and ended on October 28, 2011; the 2012 World Series started on October 24, 2012 and ended on October 28, 2012; and the 2013 World Series started on October 23, 2013 and ended on October 30, 2013. *See Beer*, 100 F. at 466.

No. 04 Civ. 4679, 2005 U.S. Dist. LEXIS 11832, at *2 (S.D.N.Y. June 14, 2005).  Furthermore, the court should not "accept as true a legal conclusion couched as a factual allegation" and "'naked assertion[s] 'devoid of' further factual enhancement'" do not make out a well-pleaded complaint.  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Lastly, any facts that Plaintiff does allege "must be enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555.

The pleading standards in *Twombly* and *Iqbal* apply in wage and hour cases like this one. *See*, *e.g.*, *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274 (S.D. Fla. 2012) (granting motion to dismiss FLSA claims on the basis that plaintiff was a volunteer and noting that the question of whether plaintiff was an employee or volunteer was a question of law); *Attanasio v. Cmty. Health Sys., Inc.*, No. 3:11-CV-582, 2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) (dismissing FLSA claim where the plaintiffs failed to plead basic terms of primary employment relationship); *Zamora v. Washington Home Servs., LLC*, No. 11-CV-00831, 2011 WL 6297941 (D. Md. Dec. 15, 2011) (dismissing complaint where plaintiff "failed to state a cognizable claim that he is an employee for the purposes of the FLSA," and the "threadbare allegations" had no tendency to show that he was an employee rather than an independent contractor); *see also Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ 3043, 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010) (applying *Iqbal* and *Twombly* standards to FLSA and NYLL claims); *Deluca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010) (dismissing NYLL claims based on the Complaint's allegations).

## UNDER THESE WELL ESTABLISHED PRINCIPLES, THE
## <u>PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW</u>

I. **Plaintiff Chen and the Volunteers He Seeks to Represent Are Not Employees Under the FLSA or the NYLL.**

Courts have held for more than 65 years that the provisions of the FLSA do not apply to a volunteer "who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). The same is true under the NYLL. *See*, *e.g.*, *Wang v. Hearst Corp.*, No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869, at *9, n. 3 (S.D.N.Y. May 8, 2013) (applying the same analysis for whether unpaid interns are employees under the FLSA and NYLL, which is derived from *Walling*). That is precisely what Plaintiff Chen did here, as his Complaint demonstrates. The Complaint should be dismissed as a matter of law.

A. <u>The Law Permits Individuals to Volunteer Their Services If They Had No Expectation of Receiving Wages.</u>

Chen's insistence that the law requires MLB to compensate casual volunteers like him ignores decades of settled law. The Supreme Court long ago recognized that while the FLSA requires that "employees" receive a set minimum wage (29 U.S.C. § 206(a)) and defines "employ" as "to suffer or permit to work" (29 U.S.C. § 203(g)), "[t]he definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, ***without any express or implied compensation agreement, might work for their own advantage on the premises of another***." *Walling*, 330 U.S. at 152. (emphasis added).

The same holds true under NYLL.[7]  "[S]ince the NYLL's definition of employment is nearly identical to the FLSA's[,] courts in this circuit have held that the New York Labor Law embodies the same standard for employment as the FLSA."  *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 n.2 (S.D.N.Y. 2012) (internal quotation and alterations omitted) (*quoting Greathouse v. JHS Security, Inc.*, No. 11 Civ. 7845, 2012 U.S. Dist. LEXIS 127312 (S.D.N.Y. Sept. 7, 2012); *see also Wang*, 2013 U.S. Dist. LEXIS 65869, at *9, n. 3; *Hart*,  2010 U.S. 13729, at *7-8 (noting that "[c]ourts applying both the FLSA and the New York Labor Law have concluded that the standards by which a court determines whether an entity is an 'employer' under the FLSA also govern that determination under the New York labor law").  The analysis of Chen's employment status thus is the same under both federal and state law.

Shortly after *Walling*, the Second Circuit followed the Supreme Court's decision in considering a volunteer at a for-profit company, finding that the volunteer was not an employee entitled to minimum wages because he had no legitimate expectation of receiving wages for the services rendered when he repeatedly refused payment.  *Rogers v. Schenkel*, 162 F.2d 596, 598 (2d Cir. 1947).

The Supreme Court has since reaffirmed *Walling*'s holding that volunteers fall outside the purview of the FLSA (which would also be applicable under the NYLL) if they had no expectation of receiving wages.  *See Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301-303 (1985) ("*Alamo*").  To resolve this question, courts look at a variety of factors that affect the "economic reality" of the situation, including whether the activity was a less than full-time occupation and whether the volunteers were dependent upon the putative employer for a

---

[7]     Chen and the volunteers he seeks to represent are not employees under the NYLL because they had no expectation of receiving wages.  There is an additional statutory exemption that MLB submits is applicable here.  *See* New York Lab. Law 651(5)(o).  MLB reserves its right to submit documentary evidence outside of the Complaint at a later date (if necessary) to support its position that the volunteers are also exempt under this statutory provision.

lengthy period of time, all of which demonstrate in the instant case that Chen and the others he seeks to represent were volunteers. *Id.* at 301, 302, fn. 25. *See also Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 75 (1st Cir. Me. 1998) (finding that an individual who donated his services at a race track as stock car crew chief during his spare time "for his personal enjoyment rather than for the benefit of" the putative employer and who "considered himself a volunteer" was not entitled to wages).

The Supreme Court in *Alamo* held that an individual would be considered an employee if he or she had an expectation of receiving wages or a wage equivalent – "wages in another form." *Alamo*, 471 U.S. at 301. The Court, relying on the FLSA's definition of "wages," strictly limited what it considered a wage equivalent to in-kind benefits that represented economic support for the employee, such as "board, food, lodging, and similar benefits customarily furnished by the employer to the employees." *Id.* at 301 n.23 (citing 29 U.S.C. § 203(m)). Conversely, the court in *Hallissey v. America Online, Inc.*, No. No. 99 Civ. 3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10, 2006), held that free AOL access, compact disc cases, discounts, expanded space for web pages and software which the plaintiffs received did not create an expectation of "compensation." The court distinguished those nominal benefits from the in-kind benefits received by the *Alamo* plaintiffs that made the *Alamo* plaintiffs "dependent" on the defendant. *Id.* at *19. "Not all benefits render the recipi[e]nts employees," the court held. *Id.* at *18, n.7.[8]

The volunteer analysis applies regardless of whether the putative employer is a for-profit or non-profit business. As the Supreme Court squarely and simply held in *Alamo*: "An

---

[8] The court declined to grant summary judgment for the Defendant only because volunteering "became an unwritten but well-known prerequisite for obtaining a paid position with AOL," allowing AOL to use its "superior bargaining power to require a certain amount of 'volunteering' before an individual would be considered for a paid position," which was the "compensation" that plaintiffs expected. Id. at *19, 21. This aspect of the holding is not applicable here because there is no allegation in this case that volunteering was a prerequisite, or even had any connection, to a paid position with MLB.

individual may work for a covered enterprise and nevertheless not be an 'employee.'"  471 U.S. at 299, 301-303 (determining plaintiffs' volunteer status based on whether they had an expectation of wages regardless of the putative employer's not-for-profit status); *see also Rogers*, 162 F.2d at 596-598 (holding that an individual who volunteered his services for a for-profit company was not an employee under the FLSA).

An individual's classification as an employee or volunteer under the FLSA or NYLL is a question of law.  *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  Applying the law to the facts as alleged in the Complaint, the Court should consider the volunteer definition "in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided."  *Id.* at 528.[9]

### B.   Plaintiff and the Volunteers He Seeks to Represent Were Not Employees Because They Had No Expectation of Wages.

Under the applicable standards, Chen and the putative class/collective members were volunteers as a matter of law under the FLSA and NYLL because, as the Complaint and its attached documents demonstrate, they had no credible expectation of wages or the equivalent, which the U.S. Supreme Court has stated is necessary for an employment relationship.  *Alamo*, 471 U.S. at 300.  The Complaint and the documents referenced therein demonstrate that, despite the conclusory allegations to the contrary, Chen and the putative class/collective members signed up for volunteer opportunities for their own "personal purpose or pleasure," over a very short period of time, fully understanding that they would not receive wages for their services nor a subsequent paying job with MLB.  Nothing in the Complaint cures the original complaint's legal

---

[9]    *See also Rodriguez v. Twp. of Holiday Lakes*, 866 F. Supp. 1012, 1019 (S.D. Tex. 1994) (noting that 29 C.F.R. § 553.104(b) "clearly evidences an intent to limit that [volunteer] status to a common-sense understanding of individuals engaged in activities that all parties involved clearly understand to [be] performed on a volunteer basis").

deficiencies; the new allegations consist merely of conclusory boilerplate (such as that putative

class members "contemplated compensation," whatever that may mean), and an effort to include

"Green Team" volunteers who agreed to collect recyclables at World Series games.  Chen's

inability to offer any material new factual allegations, despite the prompting of MLB's original

motion to dismiss, confirms that Chen cannot state a claim as a matter of law.

Plaintiff and the volunteers he seeks to represent fail to meet the pleading standard

established by the Supreme Court in *Twombly* and *Iqbal*.  The Complaint merely recites the

elements of a FLSA and NYLL cause of action, relying on "legal conclusions," "naked

assertions," "threadbare recitals of a cause of action" and "conclusory statements," and these

conclusions are belied by the documents on which Plaintiff relies.  *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 557).  Even the allegations that present facts are highly

speculative, and thus do not raise a right to relief. *See Twombly*, 550 U.S. at 555.  Instead of

pleading facts that state a cause of action, Plaintiff simply added conclusory statements to the

Complaint in a transparent attempt to allege whatever was necessary to meet the legal standard

that MLB set forth in its first motion to dismiss.

> 1.    Chen's New Allegations Concerning Compensation Do Not Salvage His Claims.

First, Plaintiff added to the Complaint naked allegations that he and the other volunteers

"contemplated compensation," "did not intend that their services were to be rendered without

compensation," "did not work for MLB solely for their own personal purpose or pleasure" and

"did not 'donate' their time."  (FAC at ¶¶ 92, 100, 109, 112.)  Plaintiff even goes so far as to

acknowledge the need to combat the plain meaning of the word "volunteer," adding an allegation

that, despite his use of the term "volunteer" throughout the Complaint, he "does not concede that

Plaintiff or any other 'volunteers' had no expectation of compensation."  (FAC at ¶ 1 n. 1.)

12

These are precisely the types of legal conclusions and threadbare recitations of a cause of action that the Supreme Court holds to be insufficient.  *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.  Plaintiff, despite his protestations, cannot simply plead away the plain definition of a word in order to defeat a motion to dismiss.  The Complaint and its attached documents make clear that Plaintiff and the other volunteers knew that they were registering and arriving at their shifts to *volunteer*[10] for MLB – they knew months in advance that they would not be paid.  (*See, e.g.* FAC at ¶ 1 ("MLB staffed its…All-Star Week festivitie[s] with 'volunteers'…."); Bloom Decl. Ex. B (FAQ page lists 16 questions referring to individuals who will *volunteer* for MLB).)  The facts remain as clear as they were in the original complaint: that Plaintiff and the other volunteers had no expectation of wages or similar compensation, were not economically dependent on MLB, and freely volunteered for their own purposes.

Now alerted to the need to allege a credible expectation of compensation, Chen claims that he and the other volunteers at All- Star Week rendered services "in exchange for" "valuable in-kind benefits," such as a free shirt, cap, drawstring bag, water bottle, baseball, and free admission to FanFest or the World Series.  (FAC at ¶¶ 100-101; Bloom Decl. Ex. B.)  First, that attempt to avoid dismissal fails because the Complaint offers no basis to conclude that the volunteers' motivation for participating was to receive these nominal items (particularly when the initial complaint made no such allegation).  It is the height of speculation to make this assumption on behalf of thousands of individuals (2,000 volunteers in 2013, alone), some of whom were first time volunteers and some of whom had volunteered multiple times for All-Star Weeks (over 300 such individuals in 2013).  (FAC at ¶¶ 46, 80.)  Plaintiff "should not be

---

[10]     The plain definition of the word "volunteer" is: "A person who does work without getting paid to do it." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/volunteer (last visited December 20, 2013).

permitted to satisfy the definition of 'volunteer' simply by unreasonably insisting that he ha[d] a subjective expectation of receiving wages.…[T]here must be a point at which a person's subjective expectations and motivations are so unfounded and conjectural as to be insufficient to support a finding of reasonableness, and at this point the Court must rely on common-sense standards and objective indicia." *Todaro v. T'ship of Union*, 40 F. Supp. 2d 226, 231 (D.N.J. 1999) (holding that plaintiff was a volunteer as a matter of law).  Plaintiff's allegations in the Complaint of an expectation of compensation are conclusory and unreasonable, and, when looked at in a common sense fashion, are not sufficient to defeat a motion to dismiss.

Second, the new reliance on "in-kind benefits" to establish an expectation of compensation, and therefore employee status, fails because Chen asserts that those items do not count as wages.[11]  The expectation of "compensation" to which the case law refers is an expectation of *wages* – or such wage equivalents as the food, clothing, and shelter that the employer provided in *Alamo*.  Chen cannot have it both ways: he cannot claim that the tickets, shirt, and other items count as "wages" for purposes of determining whether he was a volunteer or an employee, and simultaneously argue that those items do not count as "wages" in evaluating whether he received the minimum wage.

For example, in *Hallissey*, the volunteers for America Online ("AOL") were given nominal benefits, such as free AOL access, compact disc cases, discounts, expanded space for web pages and software.  *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *5.  Judge Duffy distinguished these nominal benefits from the in-kind benefits given to the plaintiffs in *Alamo*, holding that such nominal benefits did not alone produce an expectation of compensation.  *Id.* at

---

[11]    If in-kind benefits constituted "wages," the claim would be moot, because the value of the items Chen received -- $185 – exceeded the amount that would have been required to be paid to an employee for the 17 hours Chen alleges he volunteered ($7.25 x 17 = $123.25).  Thus in seeking an award of wages despite receipt of the other items, Chen implicitly concedes that these items do not constitute wages.

*18-19.  Judge Duffy reasoned that "[n]ot all benefits render the recipi[e]nts employees" and that these benefits did not result in the volunteers being "dependent on AOL for their needs such as food, clothing and shelter…."  *Id.*; *Okoro v. Pyramid 4 Aegis*, No. 11 Civ. 267, 2012 U.S. Dist. LEXIS 56277, at *24 (E.D. Wis. Apr. 23, 2012) (contrasting such nominal benefits with a plaintiff who was not a volunteer because "at all times, she expected to be compensated [$2,000 per month] for her work").  In the context of volunteers for the government that are not statutory employees under the Act, the Code of Federal Regulations provides that "volunteers may be paid expenses, *reasonable benefits*, a nominal fee, or any combination thereof, for their service without losing their status as volunteers."  *See* 29 C.F.R. § 553.106(a) (emphasis added).

In addition, this Court reached a similar conclusion when it held that plaintiffs did not have an expectation of compensation in a claim by former unpaid Huffington Post bloggers against America Online.  *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 740 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012).  In *Tasini*, this Court rejected plaintiffs' claim that they were entitled to monetary value after The Huffington Post's sale to AOL under an unjust enrichment theory, of which expectation of compensation is an element.  This Court held that there was no "question that the plaintiffs submitted their materials to the Huffington Post with no expectation of monetary compensation and that they got what they paid for – exposure in The Huffington Post."  *Id.*  This Court emphasized that "[n]o one forced the plaintiffs to give their work to The Huffington Post[,]…they never expected to be paid [and they] went into the arrangement with eyes wide open."  *Id.* at 741.

Here, the Complaint makes clear that Plaintiff and the other volunteers received nominal benefits, such as a free T-shirt and similar items, analogous to the benefits in *Hallissey* that did not render the AOL volunteers employees, or reasonable benefits as contemplated in 29 C.F.R. §

15

553.106(a).  This is in contrast to the wage equivalents – "food, shelter, clothing, transportation and medical benefits" – that the *Alamo* plaintiffs received that made those individuals employees because the benefits were "simply wages in another form."  *Alamo*, 471 U.S. at 293.  The items provided by MLB to Plaintiff and the other volunteers do not render the volunteers "entirely dependent" on MLB, as the Supreme Court found in *Alamo* (finding an expectation of the equivalent of wages rendered plaintiffs employees) and which Judge Duffy found did not exist in *Hallissey* (finding that an expectation of nominal items was insufficient to render plaintiffs employees).  In addition, Plaintiff does not allege that anyone was coerced into accepting a volunteer position or that the volunteers were not fully aware of the nature of the position – essentially, the volunteers "went into the arrangement with eyes wide open" and "got what they paid for."  *See Tasini*, 851 F. Supp. 2d at 740-41.

The extremely brief period of time that Chen and the others volunteered confirms the lack of any economic dependence that is the hallmark of employment.  Chen volunteered for only 14 hours over the course of three shifts, attended a one-hour information session and a two-hour orientation session, for a total of 17 hours.  (FAC at ¶¶ 157-59; Bloom Decl. Ex. B.)  The same is true for the other FanFest volunteers, as well as the volunteers for other All-Star Week events.  (Bloom Decl. Ex. B.)  None of the volunteers could have been surprised by the brevity of their experience; the FAQ page provided the volunteering dates in one of the first questions, making the brief engagement period abundantly clear to prospective volunteers.  (Bloom Decl. Ex. B.)

Lastly, the facts, as alleged in the Complaint and attached documents, also demonstrate that Chen and the volunteers he seeks to represent had no expectation of a subsequent paying job from MLB Properties or Major League Baseball, which reinforces the notion that they had no implied expectation of wages.  *Compare Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *19 (the

16

plaintiffs "claim[ed] to have volunteered substantial hours in order to obtain a full-time, paid position with AOL" and "contend[ed] that 'volunteering' for AOL became an unwritten but well-known prerequisite for obtaining a paid position with AOL").

2. Chen's New Allegations Concerning Green Team Volunteers Do Not State A Viable Claim.

Along with the new boilerplate alleging an expectation of compensation, the FAC adds a new set of volunteers to the putative class – the "Green Team" volunteers.  (FAC at ¶¶ 7, 140.) Plaintiff alleges these volunteers, too, rendered services "in exchange" for "valuable in-kind benefits;" in the case of the Green Team volunteers, free admission to the games at which they volunteered and a T-shirt.  (FAC at ¶¶ 8, 100, 101.)  Plaintiff's allegations regarding the Green Team fail for the reasons stated above in Section I.B.1.  In addition, Chen undermines his own conclusory allegations that the Green Team volunteers did so because they expected to receive these nominal benefits when he cites to a document which states that Green Team volunteers "were all devoted to two things: baseball and helping the environment."  (*Id.* at ¶ 7, n. 5; Bloom Decl. Ex. D.)  The facts, as opposed to Chen's mere recitation of a cause of action, suggest that the Green Team volunteers participated for reasons that had nothing to do with an opportunity to receive a free T-shirt and free admission to a game.[12]

---

[12]   If this Court were to deny MLB's Renewed Motion to Dismiss pending development of a factual record regarding the volunteers' motivation for and expectation from volunteering, this Court should also deny Plaintiff's motion for conditional certification, because individual facts so dominate the applicable legal test that MLB's liability could not be determined on a classwide and representative basis.  To determine liability, this Court would have to determine the motivation for volunteering for over 2,000 individuals, including whether all 2,000 individuals misunderstood the plain meaning of the word "volunteer."  In addition, this Court would have to determine the motivation for three sets of volunteers who MLB solicited for different reasons.  All-Star Week volunteers, including FanFest volunteers, were invited to participate for their personal enjoyment, as well as to encourage civic pride and welcome out of town guests, while the Green Team volunteers were invited to help "reduce the environmental footprint of the World Series games."  (FAC at ¶¶ 4, 7, n. 7; Bloom Decl. Exs. A, D.)  Furthermore, the Court would have to hear evidence from all of the "local high schools, Boy Scouts troops, youth baseball teams, or companies with corporate environmental initiatives" who supplied volunteers for the Green Team program.  (FAC at ¶ 7, n. 5; Bloom Decl. Ex. D.)

17

The inclusion of the Green Team volunteers also fails because they spent even less time than the FanFest and other All-Star Week volunteers, participating for the length of a single baseball game during a few World Series games over the course of, at most, ten days.   Thus, the parties had no relationship of any meaningful length nor any reasonable expectation of one.   The facts in this case, therefore, are similar to *Walling,* in which "the training course lasted a little over a week."   *Compare Alamo*, 471 U.S. at 301 (finding an employment relationship because plaintiffs were "entirely dependent upon the Foundation for long periods, in some cases several years").

Under *Walling*, *Alamo*, and their progeny, Chen and the volunteers he seeks to represent were not employees under the FLSA or NYLL as a matter of law.   Accordingly, the Complaint should be dismissed with prejudice.

II.   **The All-Star Week Events and Each World Series Stadium Hosting Games of Each World Series Are Exempt from the FLSA.**

Even if MLB had hired employees rather than volunteers, its All-Star Week events, including FanFest, and each World Series stadium hosting games of each World Series are each exempt from the minimum wage requirements of the FLSA pursuant to 29 U.S.C. § 213(a)(3)(A), which exempts from FLSA coverage those who are "employed by an establishment which is an amusement or recreational establishment" if the establishment does not operate for more than seven months in any calendar year.[13]   The allegations of the Complaint and documents referenced therein squarely raise the exemption for the Court's consideration now and based on those facts, as alleged, the All-Star Week events and each World Series stadium hosting games of each World Series meet the FLSA exemption as a matter of law.

---

[13]   MLB reserves for a later date the right to argue that it is also exempt under the alternative "receipts test" under 29 U.S.C. § 213(a)(3)(B).

A.  <u>The All-Star Week Events and Each World Series Stadium Hosting Games of Each World Series Are "Amusement or Recreational."</u>

Professional sports events are "amusement or recreational establishments" under the FLSA.  *See Adams v. Detroit Tigers*, 961 F. Supp. 176, 179 (E.D. Mich. 1997) (noting that "Major[ L]eague [B]aseball teams may properly be considered 'recreational' establishments, or establishments designed for 'amusement'"); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594-95 (11th Cir. 1995) (finding that a Minor League Baseball team at the baseball complex where it plays its games is "an amusement and recreational establishment" because "[s]ports events are among those types of recreational activities specifically considered by Congress to be covered by the exemption"); *see also Brennan v. Texas City Dike & Marina, Inc.*, 492 F.2d 1115, 1118 (5th Cir. 1974) (noting that Section 213(a)(3) has historically covered "amusement or recreational" events, such as amusement parks and baseball parks and listing the following as exempt activities: "amusement parks, carnivals, circuses, [and] *sports events*") (*citing* H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) (emphasis added)).  Thus, FanFest and the remainder of the All-Star Week events, as well as each World Series stadium hosting games of each World Series, are each "sports events" that fall squarely under the statutory definition.

Plaintiff himself alleges that MLB promoted FanFest at the Javits Center as "the largest interactive baseball theme park in the world," which clearly fits into the definition of an amusement park or sporting event as described in the exemption.  (FAC at ¶ 1.)  Chen's allegations also include the floor plan for FanFest 2013, which depicts the event as including dozens of amusement attractions confined to a distinct physical location.  (Bloom Decl. Ex. C.)  Each All-Star Week event is akin to those that take place at "amusement parks, carnivals, circuses, [and] sport parks," all of which have been accepted as exempt under Section 213(a)(3).  *See Mann v. Falk*, 523 F. App'x 549, 552 (11th Cir. 2013) (*citing Brennan*, 492 F.2d at 1115

19

(noting that "it is clear that a baseball team and a racetrack [are 'amusement or recreational establishments' because they] derive their income from the recreation that they provide" and "our precedents establish that the business of a recreational establishment is to provide amusement or entertainment for its customers"); *see also Jeffery*, 64 F.3d at 595 (finding a Minor League Baseball team playing games at its baseball complex meets the exemption).  World Series games similarly fit squarely under the definition of amusement and recreational activities for the purpose of the exemption.

> B. Each All-Star Week Event and Each World Series Stadium Hosting Games of Each World Series is a Separate Covered "Establishment."

The Department of Labor's regulations on the seasonal exemption explain that an "establishment … refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise.'"  29 C.F.R. §§ 779.23; 779.303.[14]  Thus, in a multi-unit business or enterprise, each physically separate place of business must be considered a separate establishment.  *See*, *e.g.*, *Adams*, 961 F. Supp. at 178 (holding that "[a]n establishment is a distinct physical place of business – in this case, the Tigers' establishment at Tiger Stadium, and not the Tigers' organization as a whole").

The Complaint makes clear that each All-Star Week event, including each FanFest, and each World Series stadium hosting games of each World Series is its own "establishment" within the business or enterprise of MLB.  FanFest and the related All-Star Week events operate at new physical and functionally distinct locations in different cities each year.  (FAC at ¶¶ 34, 40, 141.)

---

[14]   Each of the All-Star Week events, including each FanFest, and each World Series stadium hosting games of each World Series all qualify as "amusement or recreational establishments," even though MLB Properties or Major League Baseball does not own the real property in which the events operate.  *See Jeffery*, 64 F.3d at 595; H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ("[l]essees or independent contractors, such as concessionaires, and inherently mobile establishments, such as carnivals and cruises, none of which would be expected to own the real property upon which they operate, were clearly contemplated by Congress as being covered by the exemption").

In addition, the Complaint and the attached documents illustrate that FanFest and the related All-Star Week events are always physically located at a separate location from MLB's corporate offices and serve a separate and distinct function from MLB's principal operations.  (*Id.* at ¶¶ 141, 74 (noting that volunteers were stationed at the Javits Center, as well as "numerous additional locations around New York City" for the 2013 All-Star Week and MLB's main corporate offices are located at 245 Park Avenue in Manhattan); Bloom Decl. Ex. C (citing to a map of FanFest showing the physical lay-out of the "amusement establishment" that features 33 events, including several baseball diamonds, stores, exhibits, autograph stations, among many others).)  Although Plaintiff alleges that "MLB's All-Star Week events are not distinct from MLB's corporate offices because they are coordinated and controlled by MLB from its corporate offices," the definition of an establishment for purposes of the exemption is not dependent on coordination or control but on the distinct physical space where the establishment is located.  *See* FAC at ¶ 145; 29 C.F.R. §§ 779.23; 779.303.

In addition, cases addressing the issue have held uniformly that baseball stadiums or facilities are their own establishments, and there are no allegations in the Complaint that would alter such a conclusion here regarding each World Series stadium hosting games of each World Series.  *See*, *e.g.*, *Jeffery*, 64 F.3d 590 at 596 (holding that the establishment was the Sarasota White Sox's "operation at the baseball complex in Sarasota"); *Adams*, 961 F. Supp. at 178 (holding that the "establishment at Tiger Stadium").

As the foregoing establishes, each All-Star Week event, including FanFest, and each World Series stadium hosting games of each World Series, in relation to the business or enterprise of MLB, as a whole, falls squarely within the purview of the seasonal amusement exemption.  29 C.F.R. § 779.23; 779.303; *see e.g.*, *Adams*, 961 F. Supp. at 178; *see also*

*McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, 926 (N.D. Ill. 1989) (finding that certain facilities operated as distinct physical places of business and thus were "separate 'establishments' for purposes of FLSA liability," and noting that the Code of Federal Regulations make clear that an "enterprise…may be composed of a number of establishments").

    C.  <u>The All-Star Week Events and Each World Series Stadium Hosting Games of Each World Series Did Not Operate for More Than Seven Months.</u>

For an "establishment" to be exempt under Section 213(a)(3)(A), it must not operate for more than seven months in any calendar year. Based on the plain allegations of the Complaint, the All-Star Week events, including FanFest, and each World Series stadium hosting games of each World Series unquestionably satisfy this statutory requirement.

FanFest 2013 operated for a five-day period with an informational meeting and a one-time training session for volunteers in the six weeks before the event, and the Complaint does not allege that any other FanFest operated differently. (FAC at ¶¶ 18, 35, 40, 62, 159, 160.) Each All-Star Week event operated during the same timeframe. (*Id.* at ¶ 62.) In addition, during each year from 2010 to 2013 the World Series lasted no more than 10 days.

Plaintiff amended his Complaint in an attempt to take the establishments out of the seven-month time frame required by Section 213(a)(3). However, even taken as true, Plaintiff's allegations are insufficient to do so.[15] Plaintiff merely alleges that MLB spent some time during the year prior to each All-Star Game planning the All-Star Week events and allowing volunteers to sign up for the next year's All-Star Game. (*Id.* at ¶¶ 147, 148, 151, 152, 154.) In fact, the article to which Plaintiff cites in the Complaint for the specific proposition that "MLB begins

---

[15]    In addition, several of Plaintiff's allegations in this area are mere legal conclusions regarding the question of the length of the various establishments' operations and should not be accepted as true by this Court. *See, e.g.*, FAC at ¶¶ 149 ("MLB's business and operations are not seasonal"), 151 ("MLB's…operations for next year's All Star Game [sic] and related events begin at least a year prior…."); *see also Iqbal*, 129 S. Ct. at 1949.

preparing for next year's All Star Game [sic] and related events approximately one year prior to the event" discusses how officials of the Minnesota Twins, who will host the 2014 All-Star Game, merely met with officials from the New York Mets to "find out more about what goes into hosting the 2014 All-Star Game." (*Id.* ¶ 148; Bloom Decl. Ex. E (article entitled "Fans can register for 2013 MLB All-Star ticket strips beginning October 4").)

The Eleventh Circuit's analysis of this issue in *Jeffery v. White Sox* is on point and supports dismissal of the Complaint.  In *Jeffery*, the court held that the White Sox Minor League team, performing recreational activities at its baseball complex, met the exemption because it did not operate for more than seven months in 1989 and 1990, even though the team and complex remained functional throughout the year.  64 F.3d at 590.  The court held that the White Sox operated at the baseball complex from March through August (approximately five months) during those years.  *Id.* at 596.  In finding that the "establishment" operated for only five months, the court held irrelevant the fact that the plaintiff groundskeeper was employed in the off-season months to maintain the baseball fields because "the focus [on the exemption] is the length of the [d]efendant's seasonal operation [and i]t is the revenue-producing operation of the Sarasota White Sox as a professional baseball franchise which affords it the protection of the exemption." The court held that the seasonal and revenue-producing operation was the exhibition of baseball games at the baseball complex, which occurred during the five month period.  *Id.*  The court then emphasized that Section 213(a)(3) "does not require Defendant to completely shut down or to terminate every employee at the end of each baseball season" in order to meet the exemption.  *Id.*

As in *Jeffery*, the amusement establishments for purposes of the exemption in this case are MLB Properties' exhibition of All-Star-related fan activities in which it engages volunteers, including FanFest, and Major League Baseball's operation of World Series games at the host

World Series stadiums, all of which operate during an extremely limited, seasonal timeframe – a portion of July of each year for the All-Star Week events and a very small portion of October each year for the World Series games.  (FAC at ¶ 18; Def. Renewed MTD, *supra* n. 6.)  The preparation time during the year that Plaintiff alleges MLB undertakes does not, as a matter of law, count as time the establishment is operating for purposes of Section 213(a)(3).  *See Jeffery*, 64 F.3d at 596.  As in *Jeffery*, The focus here should be on MLB Properties' and Major League Baseball's seasonal and revenue producing operation of the respective establishments – the All-Star Week events and the World Series games themselves.  Thus, Plaintiff's allegations in the Complaint that MLB spent time soliciting volunteers or meeting with the executives of the host team for the next year's All-Star Game one year prior are not allegations that FanFest and the other All-Star Week events "operate" for more than seven months in a calendar year.  (FAC at ¶¶ 147, 148, 151, 152, 154.)  As the Court in *Jeffery* emphasized, MLB Properties need not "completely shut down" all activity relating to FanFest and the other All-Star Week events in order to fall under the exemption.  *See Jeffery*, 64 F.3d at 596.  Furthermore, unlike even in *Jeffery*, where the baseball complex remained functional year-round but did not operate for more than seven months, the All-Star Week events do not even physically exist other than during several days in July.  For example, FanFest lasts five days and events such as the parade and concert that Plaintiff alleges took place during All-Star Week are one-day events.  It would be impossible for MLB to operate events for more than seven months in a calendar year when those events do not actually exist for more than a few days in a calendar year.

Similarly, from 2010 to 2013, the World Series has lasted, at most, ten days, and Major League Baseball's preparation for the operation of this ten-day event, by law, does not constitute "operation."  *See Jeffery*, 64 F.3d at 596.  Plaintiff's allegation in the Complaint that MLB

utilized Green Team volunteers during both the World Series and throughout the regular season is no more than a "bald [contention and] unsupported characterizations" which does not constitute a well-pleaded allegation and which is thus "insufficient to defeat a motion to dismiss."  *See* FAC at ¶¶ 7, 145, 146, 154; *Le Hong Hung*, 2005 U.S. Dist. LEXIS 11832, at *2. The article that Plaintiff cites as the basis for the factual allegations regarding the Green Team volunteers clearly states that MLB's involvement with Green Team volunteers is limited to the World Series, while "The Cardinals and Joe Abernathy, VP of Busch Stadium Operations, have managed a regular season Green Team."  (Bloom Decl. Ex. D; FAC at ¶ 7.)  Plaintiff includes this allegation as a threadbare recital of the elements needed to take each World Series stadium hosting games of each World Series out of the seven month time period needed to meet the exemption.  *Iqbal*, 129 S. Ct. at 1949.  Therefore, this conclusory allegation should not be sufficient to defeat MLB's motion to dismiss.[16]

Based on the factual allegations of the Complaint and the attached documents, the FLSA claims should be dismissed because the All-Star Week events and World Series games squarely fall within the Section 213(a)(3) exemption.

## CONCLUSION

For the reasons articulated herein, the Court should dismiss Chen's claims in their entirety.

---

[16]   Plaintiff makes several allegations regarding the permanency of the operations of MLB as a whole.  (FAC at ¶¶ 149, 150, 152, 153.)  However, as discussed in Section II.B of this Motion to Dismiss, the relevant "establishment" is not MLB's entire integrated business.  Instead, the relevant establishments are each All-Star Week event (either separately or together) and each World Series stadium hosting games of each World Series.  Therefore, Plaintiff's allegations regarding the permanency of the operations of MLB, as a whole, do not determinatively answer the question of whether the relevant establishments in this case operate for less than seven months in a calendar year.