**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Juno Turner
Michael N. Litrownik
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CHEN, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>MAJOR LEAGUE BASEBALL PROPERTIES, INC. and THE OFFICE OF THE COMMISSIONER OF BASEBALL, d/b/a/ MAJOR LEAGUE BASEBALL,<br><br>      Defendants. | No. 13 Civ. 5494 (JGK) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' RENEWED RULE 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY.................................................................................. 2

FACTUAL BACKGROUND................................................................................ 2

      A.    Plaintiff Performed Valuable Work That Benefitted MLB ..................................... 2

      B.    MLB Promised and Provided Plaintiff With Non-Cash Compensation for His Work ............................................................................................................. 3

      C.    Plaintiff Was Subject to MLB's Rules and Control............................................. 4

ARGUMENT ..................................................................................................... 4

      A.    The Amended Complaint Supports a Claim For Unpaid Minimum Wages Under the FLSA and NYLL ......................................................................... 4

            1.    *Alamo* Is Binding Authority That Requires the Court to Deny MLB's Motion...................................................................................................5

            2.    The U.S. Department of Labor and Leading Experts in the Field Agree That Private Companies Cannot Accept Free "Volunteer" Labor.............. 5

            3.    Lower Courts Have Long Followed *Alamo* To Hold Employers Liable For Accepting Free Labor..........................................................................7

            4.    MLB Cannot Stretch *Walling* And Cases That Follow It Beyond the "Trainee" Context Because Educational Benefit is Crucial to *Walling's* Holding .................................................................................9

            5.    Expectation of Compensation is Not Determinative But, In Any Event, Plaintiff Did Expect and Receive Compensation.....................................10

            6.    "Economic Dependence" Is Not Required For Employee Status..............13

            7.    An Expectation of a Paying Job Is Not Required For Employee Status.................................................................................... 13

            8.    Congress Chose Not to Exclude Volunteers Who Worked For Private Companies From the FLSA's Protections.....................................14

            9.    Public Policy Supports FLSA and NYLL Liability For Accepting Free Labor.......................................................................................... 15

B.    MLB's Recreational Exemption Affirmative Defense is Premature and Without Merit....................................................................................................... 15

1.    Plaintiff Did Not Plead That MLB Operates for Less Than Seven Months Per Year .........................................................................................17

2.    Plaintiff Does Not Plead That MLB is an Amusement or Recreational Establishment.........................................................................................20

CONCLUSION................................................................................................................. 21

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,
515 F.3d 1150 (11th Cir. 2008) ..................................................20

*Archie v. Grand Central Partnership, Inc.*,
997 F. Supp. 504 (S.D.N.Y. 1998).............................................7, 11

*Arnold v. Ben Kanowsky, Inc.*,
361 U.S. 388 (1960)...................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................16

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
531 F. Supp. 2d 620 (S.D.N.Y. 2008).........................................16

*Bailey v. Pilots' Ass'n for the Bay & River Del.*,
406 F. Supp. 1302 (E.D. Pa. 1976) ...........................................8, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................16

*Black v. Coughlin*,
76 F.3d 72 (2d Cir. 1996) ...........................................................16

*Boaz v. FedEx Customer Info. Servs., Inc.*,
725 F.3d 603 (6th Cir. 2013) ......................................................11

*Bridewell v. The Cincinnati Reds*,
68 F.3d 136 (6th Cir. 1995) ........................................................18

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945)...................................................................10, 11

*Carter v. Dutchess Cmty. Col.*,
735 F.2d 8 (2d Cir. 1984) ...........................................................15

*Corning Glass Works v. Brennan*,
417 U.S. 188 (1974)...................................................................16

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
No. 09 Civ. 2429, 2009 WL 3517617 (N.D. Cal. Oct. 26, 2009)....................16, 17

*Donovan v. New Floridian Hotel, Inc.*,
   676 F.2d 468 (11th Cir. 1982) ...................................................................8

*Glatt v. Fox Searchlight Pictures Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013) ...................................................6, 7, 9, 10

*Hallissey v. Am. Online, Inc.*,
   No. 99 Civ. 3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10, 2006)........11, 12, 13, 14

*Hardy v. N.Y.C. Health & Hosps. Corp.*,
   164 F.3d 789 (2d Cir. 2009)........................................................................14

*Hayne v. Green Ford Sales*,
   263 F.R.D. 647 (D. Kan. 2009)..............................................................16, 17

*Holtzman v. B/E Aerospace, Inc.*,
   No. 07 Civ. 80551, 2008 WL 2225668 (S.D. Fla. May 29, 2008) ...................16, 17

*Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010)........................................................................16

*Jeffery v. Sarasota White Sox, Inc.*,
   64 F.3d 590 (11th Cir. 1995) .......................................................................18

*Liger v. New Orleans Hornets NBA Limited Partnership*,
   565 F. Supp. 2d 680 (E.D. La. 2008) ...........................................................18

*Marshall v. N.H. Jockey Club, Inc.*,
   562 F.2d 1323 (1st Cir. 1997)......................................................................20

*McLaughlin v. Ensley*,
   877 F.2d 1207 (4th Cir. 1989) ......................................................................8

*McLemore v. Regions Bank*,
   Nos. 08 Civ. 21 & 08 Civ. 1003, 2010 WL 1010092 (M.D. Tenn. Mar. 18, 2010) ..........16, 17

*In re Montagne*,
   Bankr. No. 08-10916, 2010 WL 538216 (Bankr. D. Vt. Feb. 8, 2010) ...................16

*Mullins v. City of N.Y.*,
   653 F.3d 104 (2d Cir. 2011).........................................................................16

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
   No. 12 Civ. 5724 (JGK), 2013 WL 6768064 (S.D.N.Y. Dec. 23, 2013)...................4

*Okoro v. Pyramid 4 Aegis*,
   No. 11 Civ. 267, 2012 WL 1410025, at *10 (E.D. Wis. Apr. 23, 2012) ......................8, 11, 15

*Rogers v. Schenkel*,
    162 F.2d 596 (2d Cir. 1947)..........................................................................................9, 10

*Schecter v. Comptroller of City of New York*,
    79 F.3d 265 (2d Cir. 1996)...........................................................................................16, 18

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012)..........................................................................12, 13

*Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944)..............................................................................................................15

*Tony and Susan Alamo Foundation v. Secretary of Labor*,
    471 U.S. 290 (1985)......................................................................................................*passim*

*Tracy v. NVR, Inc.*,
    No. 04 Civ. 6541, 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009) ..........................16

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)............................................................................................................9, 13

*Wirtz v. Wardlaw*,
    339 F.2d 785 (4th Cir. 1964) ...............................................................................................8

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003)..................................................................................................4, 5

## STATUTES

29 U.S.C. § 202..............................................................................................................................15

29 U.S.C. § 203.....................................................................................................................4, 12, 14

29 U.S.C. § 206................................................................................................................................4

29 U.S.C. § 207..............................................................................................................................11

29 U.S.C. § 213......................................................................................................................*passim*

## OTHER AUTHORITIES

29 C.F.R. 531.27(a)......................................................................................................................11

29 C.F.R. §§ 553.101-106...........................................................................................................14

29 C.F.R. § 779.23................................................................................................................19, 20

29 C.F.R. § 779.303......................................................................................................................21

U.S. Dep't of Labor Opinion Letter,
   2002 WL 32406599 (Oct. 2, 2002) ........................................................................6

## PRELIMINARY STATEMENT

The Court should reject Defendants' ("MLB's") attempt to short-circuit Plaintiffs' challenge to MLB's unlawful practice of using unpaid "volunteers" to staff its for-profit operations. MLB's motion to dismiss is premature and without merit because Plaintiff pleads facts that, if taken as true, entitle him and other unpaid workers ("Class Members") to relief. MLB moves to dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint") based on two arguments, both of which the Court should reject.

First, MLB argues that Plaintiff and the Class Members are volunteers and therefore, as a matter of law, are not entitled to the minimum wage protections of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). MLB attempts to create a "volunteer" exception to the FLSA, which simply does not exist. The Supreme Court, the U.S. Department of Labor, the lower courts, and MLB's own lawyers all recognize that private, for-profit companies cannot lawfully solicit and accept unpaid productive work. Plaintiff pleads that MLB employed him, MLB benefitted from his work, he did not intend to work for free, and he was subject to MLB's rules while he was working. This is sufficient to state a claim under the FLSA and the NYLL.

Second, MLB argues that even if Plaintiff and the Class Members are "employees" entitled to minimum wages, the Court should dismiss their FLSA claims under the narrowly construed amusement or recreational establishment exemption (the "Recreational Exemption") affirmative defense, 29 U.S.C. § 213(a)(3), before MLB even answers the Amended Complaint or the parties engage in any discovery. The Court should reject this premature defense because the Amended Complaint does not include allegations that establish each element of it.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on August 7, 2013, bringing nationwide collective action FLSA minimum wage claims and class action NYLL minimum wage claims. *See* ECF No. 1. Plaintiff filed a motion for court-authorized notice ("§ 216(b) Motion") on August 15, 2013. *See* ECF No. 2. MLB moved to dismiss Plaintiff's complaint on November 4, 2013. *See* ECF No. 23. Plaintiff filed an Amended Complaint on November 25, 2013, which mooted MLB's motion to dismiss. *See* ECF No. 29, 32. MLB filed its opposition to Plaintiffs' § 216(b) Motion on November 21, 2013, ECF No. 26, and Plaintiff filed a reply on December 20, 2013, ECF No. 39. MLB also filed this motion on December 20, 2013. *See* ECF No. 35.

The § 216(b) Motion is fully briefed and has been pending since August 15, 2013. The statutes of limitations for the FLSA claims of members of the collective are not tolled. MLB's reply in support of this motion is not due until February 4, 2014. ECF No. 34.

The parties have not conducted any formal discovery.

## FACTUAL BACKGROUND

### A.    Plaintiff Performed Valuable Work That Benefitted MLB.

Plaintiff and the Class Members are unpaid "volunteers" who worked for MLB, helping to run its for-profit operations throughout the year.[1] In his Amended Complaint, Plaintiff alleges that he and the Class Members were "employees" covered by the FLSA's minimum wage protection and that MLB suffered or permitted their work.[2] The Amended Complaint includes dozens of facts that support these claims. MLB not only accepted Plaintiff's and other Class Members' work, it relied on their free labor to serve its paying customers.[3]

---

[1]    ECF No. 29, Plaintiffs' First Amended Class Action Complaint ("FAC") ¶¶ 1-3, 7-8.
[2]    *Id.* ¶¶ 1-4, 7, 98-101, 107, 156-73.
[3]    *Id.* ¶¶ 1-3.

Plaintiff and the Class Members worked for the benefit of MLB.[4]  They performed productive work for MLB and MLB does not dispute that it derived an immediate advantage from their work.[5]  This work included, but was not limited to, operating attractions for thousands of paying customers, handing out gift bags, placing flyers in paper bags, collecting and alphabetizing liability waivers from customers, serving as pre-game rehearsal stand-ins, setting up parade floats, greeting and directing customers, and collecting garbage and recyclables.[6]  These tasks were the same as tasks typically performed by paid employees and, therefore, Plaintiff and the Class Members displaced paid employees.[7]

Plaintiff and the Class Members did not work solely for their own benefit.[8]  They received no educational benefit or classroom-like training.[9]  In fact, they received no training beyond training that paid employees receive.[10]

### B.     MLB Promised and Provided Plaintiff With Non-Cash Compensation for His Work.

Plaintiff and the Class Members were promised, expected, and received in-kind compensation from MLB for their work.[11]  Instead of paying Plaintiff and Class Members cash wages, MLB promised them and provided them with valuable items including shirts, caps, backpacks, tickets, water bottles, and lanyards, as well as free admission to events for themselves and guests.[12]  MLB admits, for example, that the items Plaintiff was promised and received had a value of more than $115.00.  Defs.' Br. at 14 n.11.

---

[4]     *Id.* ¶¶ 107-108.
[5]     *Id.* ¶¶ 7, 24-27, 38, 98-99, 108, 123-36, 165-73.
[6]     *Id.* ¶¶ 93-98, 164-73.
[7]     *Id.* ¶ 99.
[8]     *Id.* ¶¶ 107-09.
[9]     *Id.* ¶ 111.
[10]    *Id.* ¶¶ 109-13.
[11]    *Id.* ¶¶ 6, 8, 91-92, 100-01, 158.
[12]    *Id.*

### C.   Plaintiff Was Subject to MLB's Rules and Control.

Plaintiff and the Class Members were recruited by MLB to work for free.[13]   In order to be allowed to work, MLB required them to attend unpaid, mandatory information and orientation sessions.[14]   MLB exercised operational control over its "volunteers" at all times, assigned them work, supervised them, required them to follow its rules, and otherwise treated them like employees.[15]

## ARGUMENT

### A.   The Amended Complaint Supports a Claim For Unpaid Minimum Wages Under the FLSA and NYLL.

MLB's first argument, that Plaintiff and the Class Members are not entitled to compensation because they were "volunteers," and therefore not "employees" under the FLSA and NYLL, is without merit and inappropriate for a motion to dismiss.   As an initial mater, Plaintiff clearly alleges an employment relationship, and that he and the Class Members performed unpaid work, in violation of 29 U.S.C. § 206(a).[16]   Plaintiff and the Class Members worked for MLB, provided MLB a direct benefit, expected and received compensation from MLB, and were subject to MLB's work rules.[17]   The Court, in deciding this motion under Fed. R. Civ. P. Rule 12(b)(6), must accept Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor.   *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, No. 12 Civ. 5724 (JGK), 2013 WL 6768064, at *1 (S.D.N.Y. Dec. 23, 2013).

The FLSA requires employers to pay for all work they "suffer or permit."   29 U.S.C. § 203(g).   To further its remedial and humanitarian goals, the FLSA broadly defines an "employee" as "any individual employed by an employer."   29 U.S.C. § 203(e)(1); *Zheng v.*

---

[13]   *Id.* ¶¶ 1-5, 7-8.
[14]   *Id.* ¶¶ 28-30.
[15]   *Id.* ¶¶ 58-67, 99, 102, 107-08, 137-39, 159-73.
[16]   *Id.* ¶¶ 1-11.
[17]   *Id.* ¶¶ 1-11, 24-48, 58-67, 102-08, 137-39, 159-73.

*Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003).  Thus, Plaintiff and the Class Members are "employees" and entitled to the FLSA's and NYLL's minimum wage protections if MLB suffered or permitted their work.

Contrary to MLB's claim, there is no exception to this rule that would allow a multi-billion dollar commercial enterprise to accept free labor from thousands of unpaid "volunteers," and use them to staff its commercial, revenue-generating operations.  In fact, controlling authority dictates that Plaintiff and the Class Members should have been paid for their work.

1. ***Alamo* Is Binding Authority That Requires the Court to Deny MLB's Motion.**

In the controlling case on this issue, *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985) ("*Alamo*"), the Supreme Court held that volunteers at a not-for-profit religious foundation, who staffed the commercial businesses from which the organization derived most of its income, were "employees" and entitled to minimum wages.  *Id.* at 299-302, 306.  The Court reached this conclusion even though the workers insisted that they were volunteers and had no expectation of cash compensation.  The Court reasoned that employers may not accept free labor even from workers who insisted on working for free because, "[i]f an exception to the Act were carved out for employees willing to testify that they performed work voluntarily, employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act."  *Id.* at 302.

2. **The U.S. Department of Labor and Leading Experts in the Field Agree That Private Companies Cannot Accept Free "Volunteer" Labor.**

Consistent with *Alamo*, the U.S. Department of Labor ("DOL") has concluded that the FLSA does not permit private-sector for-profit companies to accept free "volunteer" labor.  The DOL publicizes its clear position that "employees may not volunteer services to for-profit private

sector employers" on its website.  U.S. Dep't of Labor's Fair Labor Standards Act Advisor,

"Volunteers," *available at* http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp (last visited

Jan. 14, 2014).

This public statement is consistent with the DOL's longstanding position.  In a 2002

Opinion Letter, the DOL determined that unpaid student volunteers who bagged groceries at

private, for-profit grocery stores and carried the bags to customers' cars were employees under

the FLSA.  2002 WL 32406599 (Oct. 2, 2002).  The DOL relied on *Alamo* to conclude that the

students were employees covered by the FLSA because they performed essential work for the

groceries and provided an immediate advantage to their employer.  *Id.* at *3.

The DOL's rule against private companies accepting free labor is consistent with *Alamo*

and is entitled to deference because it was "promulgated by the agency charged with

administering the FLSA and [is] a reasonable application of it."  *See Glatt v. Fox Searchlight*

*Pictures Inc*. 293 F.R.D. 516, 532 (S.D.N.Y. 2013) (citations omitted).  While not binding on

the Court, the DOL's position represents "a body of experience and informed judgment to which

courts and litigants may properly resort for guidance." *Id.* (citations omitted) (affording

deference to a DOL "fact sheet" and opinion letters).

Even one of the country's most well-respected labor and employment law-firms advised

its own clients and the public that, consistent with *Alamo* and the DOL's guidance, "*[u]nder no*

*circumstance* will an individual be deemed a 'volunteer' when providing services to private, for-

profit employers."  Proskauer Rose LLP, June 2011 Employment Law Counseling & Training

Newsletter.[18]  MLB should have heeded this advice.

---

[18]    http://www.proskauer.com/files/News/7efbb0f9-365d-4f31-9ea3-1969a7aa0341/Presentation/NewsAttachment/a75d6c25-791f-4d1d-bdb6-01b3b15dcbb9/employment-law-counseling-tip-of-the-month-june-2011.pdf (last visited Jan. 14, 2014) (emphasis added).

### 3. Lower Courts Have Long Followed *Alamo* To Hold Employers Liable For Accepting Free Labor.

For many years, lower courts have followed *Alamo* to hold companies and other entities liable for accepting unpaid labor, in a wide variety of circumstances.  For example, in *Archie v. Grand Central Partnership, Inc.*, the court found that homeless individuals participating in a "Pathways to Employment" employment training program who performed outreach, food service, maintenance, and administrative tasks for a social services agency were employees because they "d[id] work that had a direct economic benefit for the defendants."  997 F. Supp. 504, 507 (S.D.N.Y. 1998).  This economic benefit included providing the defendants with services "at below market rates," which gave them a competitive advantage over businesses that paid minimum wages.  *Id*. at 507, 533.[19]

Here, there is no dispute that Plaintiff and the Class Members performed work that had a direct economic benefit for MLB.[20]

Consistent with *Alamo* and *Archie*, another court in this district recently granted several unpaid intern plaintiffs' motion for summary judgment that they were "employees" under the FLSA and NYLL and entitled to minimum wages.  *Glatt*, 293 F.R.D. at 532, 534.  The court held that the unpaid interns were employees because they "worked as paid employees work, providing an immediate advantage to their employer and performing low-level tasks not requiring specialized training."  *Id.* at 534.

---

[19]     The court in *Archie* also rejected the defendant's attempt to invoke the narrow FLSA "trainee" exception even though it found that the plaintiffs "benefitted enormously from the work opportunities provided by the defendants" and gained "basic job skills and the ability to create an employment history."  *Archie*, 997 F. Supp. at 533-535.  Here, MLB does not explicitly raise the trainee exemption, but nonetheless attempts to rely on trainee exemption cases to support its motion.  However, MLB does not assert that Plaintiff received an educational benefit from his work – nor could it.  As Plaintiff explains below, trainee exemption cases are only useful here to demonstrate that employers must pay for work except in very narrow circumstances not present here.

[20]     FAC ¶¶ 1-3, 7, 24-27, 38, 40, 98-99, 110, 123-34, 141-44, 162-73.

Likewise, in *Okoro v. Pyramid 4 Aegis*, the court held that a for-profit, private company could not accept free labor from a volunteer, because "the nature of the work that she performed, such as cleaning, picking up prescriptions, appearing in court on behalf of clients at the facility, and calling in hours for caregivers to Paychex, was undeniably of substantial assistance to [the company]."  No. 11 Civ. 267, 2012 WL 1410025, at *10 (E.D. Wis. Apr. 23, 2012).

In *Donovan v. New Floridian Hotel, Inc.*, the Eleventh Circuit held that former mental hospital patients who performed assigned tasks during a post-release placement in a retirement home were covered employees under the FLSA.  676 F.2d 468, 471 (11th Cir. 1982).  Although the defendants claimed that the tasks were merely assigned "to keep [the plaintiffs] occupied," the court held that the plaintiffs were employees because their work "was of economic benefit" to the defendants.  *Id*. at 470-71.

Finally, in *Wirtz v. Wardlaw*, the Fourth Circuit held that high school students who performed office tasks for an insurance company were employees despite the defendant's claim that the purpose of the work was to help the students "determine whether they would be interested in preparing for careers in the insurance business after completion of their high school courses."  339 F.2d 785, 787 (4th Cir. 1964).  It was crucial to the court's conclusion that the students' work, which included preparing and mailing newspaper clippings, monthly newsletters, and business cards to customers, furthered the company's promotional activities.  *Id*. at 787-88.[21]

---

[21]     *See also McLaughlin v. Ensley*, 877 F.2d 1207, 1209-10 (4th Cir. 1989) (snack food distribution "trainees," who accompanied and assisted full-time employees during a week-long orientation period, were employees; even though they learned on the job, their work driving trucks, loading and unloading trucks, restocking retail store shelves and vending machines, and performing simple paperwork benefited the defendant); *Bailey v. Pilots' Ass'n for the Bay & River Del.*, 406 F. Supp. 1302, 1305, 1307 (E.D. Pa. 1976) (although apprentice river boat driver obtained "some educational benefit" from his apprenticeship and "did not contemplate compensation for the apprenticeship period," he performed the duties of a regular crew member and thus should have been paid).

Here, Plaintiff performed low-level work similar to work that paid employees perform.[22] The only training Plaintiff received was at a one-hour group orientation session and a two-hour group training session.[23]  MLB cannot deny that Plaintiffs' and the Class Members' work assisted MLB, provided an economic benefit to MLB, and furthered MLB's promotional activities.[24]

### 4.     MLB Cannot Stretch *Walling* And Cases That Follow It Beyond the "Trainee" Context Because Educational Benefit is Crucial to *Walling's* Holding.

The Court should also reject MLB's attempt to stretch the narrow holding in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), well beyond its facts.  *Walling* carved out a narrow exception to the FLSA's broad coverage for "trainees" who performed work while railroad companies provided them with seven days of "the same kind of instruction" and training offered by vocational schools.  *Id.* at 152-53.  *Walling's* result would obviously have been different without the training component of the job.  *Id.* at 152.   If, like Plaintiffs and the Class Members here, the railroad trainees in *Walling* had obtained no training or educational benefits, they would not have been "trainees" at all.[25]

MLB also cites *Rogers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947), which is inapposite because it relies on *Walling* and because its facts differ significantly from this case.  In *Rogers,*

---

[22]    FAC ¶¶ 1-3, 7, 24-27, 38, 40, 98-99.
[23]    *Id.* ¶¶ 159-60.  MLB does not dispute that, like the interns in *Glatt*, Plaintiff and the Class Members received "nothing approximating the education they would receive in an academic setting or vocational school."  *Glatt*, 293 F.R.D. at 534.
[24]    FAC ¶¶ 1-3, 19-46.
[25]    *Id.* ¶¶ 111-13.  In addition, as the court recognized in *Glatt*, *Walling's* outcome "relied on findings that the training program served only the trainees' interests and that the employer received 'no 'immediate advantage' from any work done by the trainees.'"  *Glatt*, 293 F.R.D. at 531-532 (citing *Walling*, 330 U.S. at 153).  In *Walling*, it was "undisputed" that "the railroads receive[d] *no* 'immediate advantage' from any work done by the trainees," the trainees worked "*solely* for [their own] personal purpose or pleasure," and their "work serve[d] *only* [their] own interest."  330 U.S. at 152-53 (emphasis added).

the plaintiff, a long-time friend of the defendant, helped defendant run his small plating business because the plaintiff was unemployed and wanted "to further the war effort." *Id.* at 597.  The plaintiff worked separately from the company's other employees and isolated himself from them even during meals, worked under the his friend's "constant supervision," refused his friend's requests that he submit a time report, refused to be placed on the payroll "because he did not wish to be listed as an employee," repeatedly stated that his services were voluntary, and told his friend that he "would not accept any wages in any form." *Id.*  The Second Circuit, following *Walling*, concluded with little analysis that the plaintiff was not an employee. *Id.* at 598 & n.1.

Here, however, there is no allegation that Plaintiff was personal friends with MLB or its officers.[26]  Plaintiff did not refuse to "accept wages in any form."[27]  He also did not refuse to be placed on the payroll or be listed as an employee.  He was not separated from other employees – he performed work alongside them.[28]  He was also required to follow MLB's rules and was treated exactly like thousands of other workers who performed similar job duties.[29]

### 5.    Expectation of Compensation is Not Determinative But, In Any Event, Plaintiff Did Expect and Receive Compensation.

MLB is wrong that Plaintiffs' and the Class Members' right to be paid turns on whether they expected compensation or believed they were volunteers.  *See* Defs.' Br. at 8-17.  Although some courts have considered expectation of compensation as a factor, it should certainly not be considered a prerequisite to FLSA coverage.  In *Glatt*, for example, the court held that the plaintiffs were employees even though they "understood they would not be paid." 293 F.R.D. at 534.  Judge Pauley held that expectation of wages means little "because the FLSA does not allow employees to waive their entitlement to wages." *Id.* (citing *Alamo*, 471 U.S. at 301; *Brooklyn Sav. Bank v. O'Neil*, 324

---

[26]     FAC ¶ 106.
[27]     *Id.* ¶¶ 91-92.
[28]     *Id.* ¶ 99.
[29]     *Id.* ¶¶ 107-13, 156-73.

U.S. 697, 710 (1945)).  Other courts have also held that plaintiffs were "employees" despite the fact they considered themselves volunteers or did not expect compensation.  *See, e.g., Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 607-08 (6th Cir. 2013) ("An employee's subjective belief that her position was exempt from the FLSA, however, does not mean the position was exempt as a matter of law."); *Bailey*, 406 F. Supp. at 1305, 1307 (although apprentice river boat driver obtained "some educational benefit" from his apprenticeship and "did not contemplate compensation for the apprenticeship period," he performed the duties of a regular crew member and thus should have been paid).[30]

In any event, MLB is wrong that Plaintiff did not expect any compensation.  *See* Defs'. Br. at 11-16.  To the contrary, Plaintiff explicitly alleges that he did expect and receive compensation,[31] just not cash compensation as required by the FLSA.[32]  Plaintiff and the Class Members reasonably expected and received in-kind compensation including shirts, caps, backpacks, tickets, water bottles, lanyards, and free admission to events for themselves and other people.[33]  Plaintiff pleads[34] and MLB admits that these items had real value.  Defs.' Br. at 14 n.11.  In *Alamo*, the Court noted that the plaintiffs there had an expectation of non-cash compensation.  471 U.S. at 300-01.

---

[30]    Some courts have held that the expectation of compensation is important to the inquiry. *See Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2006 U.S. Dist LEXIS 12964, at *16 (S.D.N.Y. Mar. 10, 2006); *Archie*, 997 F. Supp. at 533; *Okoro*, 2012 WL 1410025, at *9.

[31]    FAC ¶¶ 6-8, 31, 39-40, 91, 100-01, 158.

[32]    Employers must pay minimum wage to its employees "in cash or negotiable instrument payable at par."  *See* 29 C.F.R. 531.27(a) ("Standing alone, sections 6 and 7 of the Act require payments of the prescribed wages, including overtime compensation, in cash or negotiable instrument payable at par.").  As a matter of law, gifts may not serve as a credit toward statutory overtime compensation due.  *See* 29 U.S.C. § 207(e)(1) and (h)(1).

[33]    FAC ¶¶ 6-8, 31, 39-40, 91, 100-01, 158.

[34]    *Id.* ¶¶ 103-04.

MLB's claim that *Alamo* "strictly limited what it considered a wage equivalent," Defs.'
Br. at 10, is inaccurate.  *Alamo* does no such thing.  It holds that food, board, and lodging
qualify, but not that they are the only type of compensation that qualify.  *See Hallissey*, 2006
U.S. Dist. LEXIS 12964, at \*19 (the benefits in *Alamo* are not "the only way to generate an
expectation of compensation").

Likewise, 29 U.S.C. § 203(m) is irrelevant.  *See* Defs.' Br. at 10.  This provision entitles
an employer to a credit against wages for the reasonable cost of "furnishing [an employee] with
board, lodging, or other facilities," 29 U.S.C. § 203(m), but does not address what type of non-
wage compensation could create an expectation of compensation in a "volunteer" context.  The
fact the FLSA does not allow employers to take a set-off for other forms of non-wage
compensation does not mean that workers who receive other forms of non-wage compensation
intend to work for free.

*Hallissey* also does not support MLB's argument.  In *Hallissey*, the court denied the
defendant's motion for summary judgment because the defendant's "policy of inducing Plaintiffs
to volunteer more hours by providing certain benefits," along with other evidence, created an
issue of fact as to whether Plaintiffs had a reasonable expectation of compensation.  2006 U.S.
Dist. LEXIS 12964, at \*16-23.  Although the court noted that the compensation the defendant
provided was different than the compensation in *Alamo*, it did not hold that it was insufficient to
support an expectation of compensation.  *Id.* at 23.

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734 (S.D.N.Y. 2012), is also inapposite.  In *Tasini*,
the plaintiffs, unpaid content providers for The Huffington Post, brought claims under a theory of
unjust enrichment that they were entitled to a portion of the amount AOL paid to acquire The
Huffington Post.  *Id.* at 738-39.  The plaintiffs did not allege they were employees under the

FLSA, NYLL, or any other labor law.  Unjust enrichment, an equitable doctrine, is unrelated to the "economic reality" test under the FLSA or any common law test for whether a worker is an employee.[35]

### 6.   "Economic Dependence" Is Not Required For Employee Status.

MLB's is also wrong that a worker must be economically dependent on an entity, like the plaintiffs were in *Alamo*, in order to be an employee under the FLSA or NYLL.  Defs.' Br. at 16. The court in *Hallissey* explicitly rejected this unsupported argument because otherwise, "no employer of part-time employees or of independently wealthy persons who choose to work would ever be bound by the FLSA."  2006 U.S. Dist. LEXIS 12964, at *19.  None of the other relevant authority supports this claim either.  *See, e.g.*, *Walling*, 330 U.S. at 152-153 (no mention of economic dependence as a requirement); *Alamo*, 471 U.S. at 300-302 (volunteers expected compensation consisting of in-kind benefits because they were economically dependent on defendant, but nowhere concluding that economic dependence is a "hallmark of employment").

### 7.   An Expectation of a Paying Job Is Not Required For Employee Status.

MLB also invents another purported requirement for employee status – that the workers must expect a future paying job with the employer in order to be "employees."  Defs.' Br. at 16.  There is no such requirement.  Although the court in *Hallissey* relies on this factor as one of several reasons to *deny* the defendant's summary judgment motion, 2006 U.S. Dist. LEXIS 12964, at *19-20, it does not hold that the converse is true – that a worker must expect a future paying job to be protected by the FLSA.

---

[35]   Unjust enrichment requires that a plaintiff establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini*, 851 F. Supp. 2d at 739.

Moreover, here, although there is no allegation that Plaintiff or the Class Members expected a future paying job, MLB was clear with Plaintiff and the Class Members that the working relationship was not a one-off deal.  If Class Members passed the background check and worked during the 2013 All-Star Week events, they were invited to work for MLB again in future years.[36]  MLB admits that many Class Members did so.  *See* ECF No. 27, Decl. of Marla Miller in Opp. to Pl.'s Mot. for Court Authorized Notice ¶ 19.

### 8.    Congress Chose Not to Exclude Volunteers Who Worked For Private Companies From the FLSA's Protections.

Congress included a narrow exception in the FLSA that allows not-for-profit organizations and public agencies to accept free volunteer labor under some circumstances but chose not to include an exception that would allow private, for-profit employers, like MLB, to do so.  This provides further support for the principle that private companies must pay their workers.

The FLSA excludes volunteers at public agencies from the definition of "employee," if they meet certain criteria.  *See* 29 U.S.C. § 203(e)(4)(A); 29 C.F.R. §§ 553.101-106.  The FLSA also excludes volunteers at private, *not-for-profit* food banks who perform work solely for humanitarian purposes.  *See* 29 U.S.C.§ 203(e)(5).  Private, multinational sports and entertainment conglomerates like MLB do not make the list.[37] As the court noted in *Hallissey*, "nonprofits (and necessarily public agencies) are of a much different character than for-profit corporations."  2006 U.S. Dist. LEXIS 12964, at *22 (citing *Isaacson v. Penn Cmty. Servs., Inc.*, 450 F.2d 1306, 1309-10 (4th Cir. 1971).

---

[36]    FAC ¶¶ 41-45.

[37]    The inclusion of one suggests the exclusion of the other.  *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 2009) (relying on "the familiar principle of *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of the other").

9.     **Public Policy Supports FLSA and NYLL Liability For Accepting Free Labor.**

Requiring private, for-profit employers to pay for labor is consistent with the remedial purpose of the FLSA and NYLL.  The FLSA is a "remedial" statute, "written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy."  *Carter v. Dutchess Cmty. Col.,* 735 F.2d 8, 12 (2d Cir. 1984).  The FLSA "must not be interpreted or applied in a narrow, grudging manner," *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944), and exemptions from FLSA coverage "are to be narrowly construed against the employers seeking to assert them . . . ." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960).

There are good policy reasons not to allow companies to rely on unpaid workers to staff their for-profit operations.  "[E]xceptions to [FLSA] coverage . . . exert a general downward pressure on wages in competing businesses.").  *Alamo*, 471 U.S. at 302.  "[E]mployers who engage unpaid 'volunteers' gain an unfair competitive advantage from the payment of substandard wages, or as here, no wages at all."  *Okoro*, 2012 WL 1410025, at *7.  In passing the FLSA, Congress intended to correct "detrimental" labor conditions that created "an unfair method of competition in commerce."  *See* 29 U.S.C. § 202(a).

B.     **MLB's Recreational Exemption Affirmative Defense is Premature and Without Merit.**

The Court should reject MLB's pre-discovery, pre-answer, fact-intensive affirmative defense that Plaintiff and other volunteers were exempt from the FLSA's minimum wage protections under the Recreational Exemption, 29 U.S.C. § 213(a)(3)(A).  This affirmative defense is premature because the allegations in the Amended Complaint do not establish it and

because Plaintiff makes many allegations that, if taken as true, FAC ¶¶ 1, 149-153, would defeat this affirmative defense.

The Recreational Exemption defense, like all FLSA exemptions, is an affirmative defense for which the employer bears the burden of proof.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).  Affirmative defenses may only be raised in a pre-answer Rule 12(b)(6) motion "if the defense appears on the face of the complaint."  *Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010).  Critically, a plaintiff is not required to plead the absence of an affirmative defense, *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996), including an FLSA exemption affirmative defense, *Mullins v. City of N.Y.*, 653 F.3d 104, 113 (2d Cir. 2011).

It would be especially unfair to dismiss Plaintiffs' FLSA claims based on a fact-intensive exemption affirmative defense like the Recreational Exemption because Plaintiff has not even had a chance to see what facts MLB will plead to support it or to take discovery to rebut them. Affirmative defenses must be supported by specifically pled facts. *See Schecter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (noting that affirmative defenses that are conclusory and not supported by any factual allegations "have no efficacy"); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) ("Mere conclusory assertions are not sufficient to give plaintiffs notice of the . . . [affirmative] defenses and, thus, do not meet Rule 8(a)'s pleading standards."); *Tracy v. NVR, Inc.*, No. 04 Civ. 6541, 2009 WL 3153150, at *7 (W.D.N.Y. Sept. 30, 2009) ("[A]ffirmative defenses that contain only 'bald assertions' unaccompanied by supporting facts will be stricken.").[38]  Where an affirmative

---

[38]     In fact, courts in this Circuit and elsewhere have held that the heightened pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply to affirmative defenses.  *See, e.g.*, *In re Montagne*, Bankr. No. 08-10916, 2010 WL 538216, at *4-17 (Bankr. D. Vt. Feb. 8, 2010); *Tracy*, 2009 WL 3153150, at *7-8; *Hayne v. Green Ford Sales*, 263 F.R.D. 647, 649-50 (D. Kan. 2009) (listing cases and noting that a majority of courts have applied *Iqbal* and *Twombly* to affirmative defenses); *CTF*

defense is fact-intensive, like an FLSA exemption, it is especially inappropriate to raise it on a pre-answer motion unless the allegations in the complaint clearly establishes the defense.

Here, the provision on which MLB relies, 29 U.S.C. § 213(a)(3)(A),[39] requires MLB to prove that (1) MLB is an amusement or recreational establishment, and (2) MLB does not operate for more than seven months in a calendar.  Plaintiff does not plead facts in the complaint that establish either of these requirements.

> ### 1.   Plaintiff Did Not Plead That MLB Operates for Less Than Seven Months Per Year.

The Amended Complaint does not allege that MLB operates for less than seven months per year.  In fact, in contains multiple allegations to the contrary, supporting the conclusion that MLB is a year-round revenue-producing operation.  For example, Plaintiff alleges that MLB employs a year-round paid workforce of at least 435 employees;[40] that the baseball season – from spring training through the World Series – runs at least nine months;[41] that MLB staffs its operations year-round with "volunteers;"[42] and MLB markets and sells advertising year-round.[43]

The fact that MLB has a significant number of year-round employees is important because the Recreational Exemption defense is meant for short-term operations.  In *Bridewell v.*

---

*Dev., Inc. v. Penta Hospitality, LLC*, No. 09 Civ. 2429, 2009 WL 3517617, at *8 (N.D. Cal. Oct. 26, 2009); *Holtzman v. B/E Aerospace, Inc.*, No. 07 Civ. 80551, 2008 WL 2225668, at *2 (S.D. Fla. May 29, 2008); *but see Hayne*, 263 F.R.D. at 649 (noting that "[a] few courts have rejected the heightened pleading standard for affirmative defenses"); *McLemore v. Regions Bank*, Nos. 08 Civ. 21 & 08 Civ. 1003, 2010 WL 1010092, at *14 (M.D. Tenn. Mar. 18, 2010) (holding that a defendant need only plead enough to give plaintiff "fair notice" of the nature of the affirmative defense).

[39]   MLB does not rely on the "average receipts" test, 29 U.S.C. § 213(a)(3)(B), which requires a defendant to prove that it does not have average receipts for any six months of any year that were not more than 33% of its average receipts for the other six months of such year. Defs.' Br. at 18 n.13.

[40]   FAC ¶ 153.

[41]   *Id.* ¶¶ 149-50.

[42]   *Id.* ¶ 1.

[43]   *Id.* ¶ 152.

*The Cincinnati Reds*, the Sixth Circuit rejected a Major League Baseball team's Recreational Exemption defense because the team employed 120 year-round workers, which "*compels* the conclusion that they operate year-round."  68 F.3d 136, 139 (6th Cir. 1995) (emphasis added and internal quotation marks omitted).  Likewise, in *Liger v. New Orleans Hornets NBA Limited Partnership*, the court rejected a National Basketball Association team's Recreational Exemption defense because it employed more than 100 year-round workers.  565 F. Supp. 2d 680, 684 (E.D. La. 2008).

It is also important that MLB generates revenue year-round.  In *Liger*, the court specifically noted the basketball team's year-round operations as a reason to reject the Recreational Exemption defense.  *Id.*  In *Bridewell*, the court also focused on whether the defendant operated for more than seven months per year.  68 F.3d at 138-39.  In *Jeffery v. Sarasota White Sox, Inc.*, on which MLB relies, the Eleventh Circuit upheld a minor league baseball team's Recreational Exemption defense because it operated and generated revenue for less than seven months per year.  64 F.3d 590, 596-97 (11th Cir. 1995).  It held that "the revenue-producing operation" of the team was what "afford[ed] it the protection of the exemption."  *Id.*

In any event, MLB should be required to plead this element of its affirmative defense in an answer and to include facts that support it.  *See Schecter*, 79 F.3d at 270 (2d Cir. 1996) (affirmative defenses must be supported by factual allegations).  Only then can Plaintiff see exactly what facts MLB alleges to support its burden and take discovery to attempt to rebut them.

MLB sidesteps the question whether it is a year-round revenue-producing operation by focusing almost exclusively on the "All-Star Week events," and "FanFest."  However, each All-

Star Week event and each location at which Plaintiff and the Class Members were engaged by MLB to perform work cannot be a covered "establishment" under the statute.

First, the "All-Star Week events" cannot be an "establishment" that is entitled to the exemption because the "All-Star Week events" is not "a distinct place of business." *See* 29 C.F.R. § 779.23 ("the term establishment, which is not specially defined therein, refers to a 'distinct physical place of business.'").  For example, the 2013 All-Star Week events took place, and MLB employed Class Members, at many different locations in New York City including the Grand Hyatt at Grand Central, the W New York hotel, the Conrad Hotel, Flushing Meadow Park, Citi Field, a parade route through the City, the Javits Center, and Central Park.[44]  MLB also employed Class Members at Rangers Park in Texas, Fenway Park in Massachusetts, AT&T Park in California, Comerica Park in Michigan, and Busch Stadium in Missouri.[45]

MLB argues that each All-Star Week event, including FanFest, and each stadium at which MLB employed Class Members is its own "establishment" entitled to the exemption. Defs.' Br. at 20.  However, MLB's All-Star Week events, including FanFest, as well as the other events at which MLB employs Class Members are not separate entities that employed Class Members – they are part of an integrated operation coordinated and controlled by MLB from its corporate offices.[46]  Plaintiff pleads that MLB was the employer, not each event or distinct physical location,[47] that the baseball season runs at least nine months, and that MLB's revenue-producing operations occur year-round with a year-round paid staff of over 400 employees.[48] Plaintiff should have the opportunity to prove his allegation that MLB was his employer.

---

[44]     *Id.* ¶¶ 141-44.
[45]     *Id.* ¶ 144.
[46]     *Id.* ¶ 145.
[47]     *Id.* ¶¶ 1-8, 146, 154.
[48]     *Id.* ¶¶ 1, 149-53.

> **2.      Plaintiff Does Not Plead That MLB is an Amusement or Recreational Establishment.**

Plaintiff does not plead facts that establish that Plaintiff or the Class Members were "employed by an establishment which is an amusement or recreational establishment," 29 U.S.C. § 213(a)(3), as required by the Recreational Exemption.  As explained above, Plaintiff alleges that MLB employed him and the Class Members.

MLB is not an "establishment."  An establishment is a "distinct physical place of business," 29 C.F.R. § 779.23, as MLB concedes. *See* Defs.' Br. at 20.  An establishment is not "an entire business or enterprise which may include several separate places of business."  29 C.F.R. § 779.23 (internal quotation marks omitted).  A sprawling corporation that employs workers in hundreds of locations, like MLB, is certainly not an "establishment."

Plaintiff does not allege that FanFest, any baseball team, or even the "All-Star Week" employed him or the Class Members.  Although cases have held that individual baseball *teams* can be recreational establishments, *see* Defs.' Br. at 14, no case that MLB cites holds that each distinct physical location at which individuals worked for a sports entertainment conglomerate is a separate amusement or recreational establishment under the Recreational Exemption.  *C.f. Marshall v. N.H. Jockey Club, Inc.*, 562 F.2d 1323, 1329-33 (1st Cir. 1997) (two separate businesses operating at same location, each "functionally and economically separate and physically distinguishable," constitute separate establishments for purpose of the exemption); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156-60 (11th Cir. 2008) (two businesses operating at same location did not operate as separate establishments because they intermingled funds and shared bookkeeping and thus were one establishment for purposes of the exemption).  MLB only claims that "[p]rofessional sports *events* are amusement or recreational establishments," Defs.' Br. at 19, not that MLB itself is (emphasis added).

If MLB pleads the Recreational Exemption when it answers the complaint, it will have to specifically identify the entity that employed Plaintiff and the Class Members in order to adequately plead the defense.  If it does so, Plaintiff will then be able to take discovery to determine what entity is the proper statutory employer.

Finally, Plaintiff does not plead facts to support a claim that MLB is made up of multiple "establishments," as discussed in 29 C.F.R. §779.303.  If MLB believes that it is a "multiunit operation," like "a manufacturer [that] operate[s] a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold," 29 C.F.R. § 779.303, or that it is similar to "chain store systems, branch stores, groups of independent stores organized to carry on business in a manner similar to chain store systems, and retail outlets operated by manufacturing or distributing concerns," *id.*, it should plead facts that support this claim when it answers the Amended Complaint.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny MLB's motion.

Dated:  New York, New York
         January 14, 2014

                          Respectfully submitted,
                          **OUTTEN & GOLDEN LLP**

                          By:

                          /s/ Justin M. Swartz
                          Justin M. Swartz

                          **OUTTEN & GOLDEN LLP**
                          Justin M. Swartz
                          Juno Turner
                          Michael N. Litrownik
                          3 Park Avenue, 29th Floor

New York, New York 10016
Telephone:  (212) 245-1000
***Attorneys for Plaintiff and the Class***