PROSKAUER ROSE LLP
Elise M. Bloom
Mark W. Batten
Seth D. Kaufman
Eleven Times Square
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| JOHN CHEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL PROPERTIES, INC., and THE OFFICE OF THE COMMISSIONER OF BASEBALL, d/b/a MAJOR LEAGUE BASEBALL<br><br>Defendants. | Case No.: 13-CV-5494 (JGK)<br><br>**ECF Case**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RENEWED 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Dated:    February 4, 2014
            New York, New York

PROSKAUER ROSE LLP

By:    *s/ Elise M. Bloom*
        Elise M. Bloom
        Mark W. Batten
        Seth D. Kaufman
        Eleven Times Square
        New York, New York 10036
        Telephone 212.969.3000
        Fax 212.969.2900
        ebloom@proskauer.com
        *Attorneys for Defendants.*

# TABLE OF CONTENTS

                                                                                                                                              **Page**

I.     Volunteers for For-Profit Entities are not Per Se Unlawful ................................................ 1

II.    Chen and the Putative Class/Collective Members Were Volunteers as a Matter of Law ................................................................................................................................. 3

III.   The Seasonal Amusement or Recreational Establishment Exemption Applies .................. 7

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Archie v. Grand Cent. P'ship, Inc.*,
  997 F. Supp. 504 (S.D.N.Y. 1998) ................................................................................. 6

*Bailey v. Pilots Ass'n for the Bay & River Del.*,
  406 F. Supp. 1302 (E.D. Pa. 1976) ................................................................................ 6

*Brennan v. Yellowstone Park Lines, Inc.*,
  478 F.2d 285 (10th Cir. 1973) ................................................................................. 9, 10

*Chessin v. Keystone Resort Mgmt., Inc.*,
  184 F.3d 1188 (10th Cir. 1999) .................................................................................... 9

*Glatt v. Fox Searchlight Pictures, Inc.*,
  294 F.R.D. 530 (S.D.N.Y. 2013) .................................................................................. 6

*Hallissey v. Am. Online Inc.*,
  No. 99-CIV-3785, 2006 U.S Dist. LEXIS 12964 (S.D.N.Y. Mar. 10, 2006) ......... passim

*Okoro v. Pyramid 4 Aegis*,
  No. 11-C-267, 2012 U.S. Dist. LEXIS 56277 (E.D. Wisc. Apr. 23, 2012) ........... passim

*Reich v. Parker Fire Protection Dist.*,
  992 F. 2d 1023 (10th Cir. 1993) ................................................................................... 3

*Rogers v. Schenkel*,
  162 F.2d 596 (2d Cir. 1947) ......................................................................................... 2

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ...................................................................................................... 3

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
  642 F.3d 518 (6th Cir. 2011) ........................................................................................ 3

*Todaro v. T'ship of Union*,
  40 F. Supp. 2d 226 (D.N.J. 1999) ............................................................................. 5, 7

*Tony and Susan Alamo Foundation v. Secretary of Labor*,
  471 U.S. 290 (1985) ........................................................................................... 2, 3, 4, 6

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947) ........................................................................................... 1, 2, 3, 6

*Wirtz v. Wardlaw*,
    339 F.2d 785 (4th Cir. 1964) ...................................................................................................6

**STATUTES**

29 U.S.C. § 203(m) ........................................................................................................................4

29 U.S.C. § 213(a)(3).....................................................................................................................7

29 C.F.R §§ 779. 302 .................................................................................................................8, 9

**OTHER AUTHORITIES**

http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp ................................................................2

Plaintiff John Chen proffers three arguments in his Opposition ("Pl. Opp."), none of which correctly states the law.  First, Chen urges a per se rule that for-profit entities may never engage volunteers.  That is not the law, and has not been the law for more than 65 years since the Supreme Court spoke on the issue in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).  Second, Chen argues that if for-profit entities can ever engage volunteers, his few hours at FanFest were required to be paid because he volunteered with an expectation of compensation in the form of a t-shirt and other nominal items.  But, the Supreme Court has explicitly limited what is considered an "in-kind" benefit creating an employment relationship to items that provide individuals economic support, not the trivial items that Chen received here.  Third, Chen suggests that the Court should ignore the affirmative defense that he volunteered at an exempt amusement or recreational establishment and that he did not plead sufficient facts for MLB to make out the defense.  Chen's allegations in the complaint, the documents referenced therein, and judicially noticed facts demonstrate that Defendants have satisfied the exemption.

I.      **Volunteers for For-Profit Entities are not Per Se Unlawful**

No court has ever held that the law prohibits for-profit businesses from engaging willing volunteers, particularly where the individual is not economically dependent on the employer.  As the court in *Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 U.S. Dist. LEXIS 56277, at *20-22 (E.D. Wisc. Apr. 23, 2012) recently put it in rejecting precisely this argument, "to say one cannot under any circumstances volunteer for a for-profit entity might be too sweeping a statement [and] it becomes necessary to consider more than just whether the defendant is a for-profit entity."  *See also Hallissey v. Am. Online Inc.*, No. 99-CIV-3785, 2006 U.S Dist. LEXIS 12964, at *22 (S.D.N.Y. Mar. 10, 2006) (acknowledging defendant's status as a for-profit company but undertaking an analysis of whether volunteers were actually employees).

In fact, Second Circuit precedent explicitly holds that volunteers for a for-profit entity can be lawful. *See Rogers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947). Unable to distinguish *Rogers* or to argue that it does not represent the law of this Circuit, Chen cavalierly dismisses it by noting that it relies on *Walling.*, 330 U.S. 148 and that *Walling* involved trainees rather than volunteers. As *Rogers* recognized, *Walling*'s holding did not turn on the specific facts before it, but rather the Supreme Court concluded that "an individual who 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit' is outside the sweep of the Act." 162 F.2d at 598 n.1 (*citing Walling*, 330 U.S. at 152). That broad holding forms the basis for the Supreme Court's analysis in the subsequent volunteer case of *Tony and Susan Alamo Foundation v. Secretary of Labor* ("*Alamo*"), 471 U.S. 290, 295 (1985) (*quoting Walling*, 330 U.S. at 152), and supports dismissal here.[1]

Chen's argument gains no strength from the single sentence in informal guidance on the U.S. Department of Labor's ("DOL") website stating that the FLSA does not permit individuals to volunteer for for-profit entities.[2] First, the web page begins by quoting the standard from *Walling* – further confirmation that Chen misstates the law in arguing that *Walling* has no application in volunteer cases.[3] Second, the agency's views expressed in these informal

---

[1]  Chen undermines his own distinction by cherry-picking trainee cases to support his arguments.

[2]  The one sentence that Chen quotes out of context from Proskauer's Client Alert was part of a discussion about the DOL's views on volunteers. The Alert states that the DOL has taken the position – in one sentence in an informal web page that is owed no deference by this Court – that individuals may not volunteer for for-profit entities. The Alert goes on, however, to discuss in its final section ways that employers can minimize their risk as to both interns and volunteers – steps that would be irrelevant if the rule were as inflexible as Chen here claims. Since the issuance of the Alert, the *Okoro* decision affirmed that for-profit volunteers are certainly not per se unlawful.

[3]  *See* http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp ("the Supreme Court has made it clear that the FLSA was not intended 'to stamp all persons as employees who without any express or implied compensation agreement might work for their own advantage on the premises of another'") (last visited January 27, 2014).

2

comments do not have the status of regulations, and are owed no deference.[4] While an agency's judgment can serve as guidance for courts, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements…." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 525 (6th Cir. 2011). Here, courts consistently have found the DOL's judgment as to volunteers and other unpaid workers to be wanting, in part because they reject the DOL's inflexible approach. *See, e.g., Laurelbrook*, 642 F.3d at 525; *Reich v. Parker Fire Protection Dist.*, 992 F. 2d 1023, 1026-27 (10th Cir. 1993); *Okoro*, 2012 U.S. Dist. LEXIS 56277, at *20-22; *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *22-23. The DOL cites to no case law to support its position and provides no reasoning on its website as to why it deems volunteering at for-profit entities to be per se unlawful. Its analysis in the 2002 opinion letter completely misreads the Supreme Court's decision in *Alamo*, as described in the opening brief.

## II. Chen and the Putative Class/Collective Members Were Volunteers as a Matter of Law

"The Supreme Court has defined a volunteer as [a]n individual who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit." *Okoro*, 2012 U.S. Dist. LEXIS 56277, at *16 (*quoting Alamo*, 471 U.S. at 295 *and Walling*, 330 U.S. at 152). The Supreme Court in *Alamo* examined this question in order to determine whether, under the "economic

---

[4] Chen's argument that Congress chose not to add an express exception for volunteers at for-profit companies, and thus such volunteers are per se unlawful, ignores the consistent view of the Supreme Court. That Congress chose to exempt certain entities does not, as *Walling* acknowledges, end the inquiry. If it did, the analysis undertaken by every volunteer case cited by both Chen and Defendants would have been superfluous. Moreover, Chen's position that only entities specifically stated in the exemption – public agencies and not-for-profit *food banks* – can engage volunteers would allow individuals to volunteer solely at not-for-profit food banks and no other private entity, a position that even Chen cannot defend.

3

reality" of the situation, the volunteers were employees. *Alamo*, 471 U.S. at 301; *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *16 ("Whether Plaintiffs had an express or implied expectation of compensation is a crucial inquiry in this case" and whether an individual is a volunteer or an employee "is heavily dependent upon the factual determination of whether plaintiff expected to receive compensation.").

Chen, despite his protestations, does not plead that he and the putative class/collective members had an expectation of compensation. Chen's argument that the free "swag" they received can be considered an "in-kind" benefit sufficient to create an expectation of compensation misreads *Alamo*. The Supreme Court in *Alamo*, explaining what it considered "wages in another form" that equate to the compensation that characterizes an employment relationship, specifically relied on the definition of wages. *Alamo*, 471 U.S. at 301 n.23 (when defining "wages in another form," stating as support for its definition: "The Act defines 'wages' as including board, food, [and] lodging….") (*quoting* 29 U.S.C. § 203(m)). Not every bit of recompense qualifies as "compensation" that creates an employment relationship; such a relationship turns on the "economic reality," largely meaning the economic dependence (or not) of the individual on the employer, whether for traditional wages or for the basic necessities of life that the Court found sufficient in *Alamo* – food, shelter, clothing, transportation and medical benefits. 471 U.S. at 293. There is nothing remotely similar here; Chen cannot allege that he and the putative class/collective members were economically dependent on MLB for the t-shirt and water bottle they received.

*Hallissey*, in turn, holds that in addition to wages or their economic equivalent, the expectation of receiving such wages in the future could create an employment relationship. That court referred in particular to the allegation that plaintiffs volunteered "in order to obtain a full-

4

time, paid position" with defendant – or, as the court put it, "promises of future compensation." 2006 U.S. Dist. LEXIS 12964, at *19, 23. That holding is entirely consistent with Walling, where the Supreme Court noted that no job was promised to the trainees, and with the DOL's Fact Sheet No. 71, which characterizes a promise of future employment as one factor supporting an employment relationship. The *Hallissey* court did not, however, leave open the possibility that other benefits could generate an expectation of compensation sufficient to create an employment relationship, as Chen suggests. And, most importantly for this action, the *Hallissey* court did not hold that the nominal items of "swag" that plaintiffs were provided – free AOL access, a CD case, discounts at the AOL employee store, expanded space for web pages, and free anti-virus software – could generate an expectation of compensation sufficient to create an employment relationship. *Id.* at *5.

Here, Chen does not allege that he or the putative class/collective members volunteered in exchange for cash wages, food, clothing, shelter, or the future promise of cash wages, or anything remotely close to that. Chen simply provides conclusory allegations that attempt to plead away the plain definition of the word "volunteer" and allegations of an expectation of nominal items of "swag" that are legally insufficient to allege an employment relationship.[5]

All of the cases on which Chen relies involved relationships that bore hallmarks of employment that are uniformly absent here, such as a lengthy relationship with the employer; working full-time for the employer; expecting to use the employer to further a career, either through training or the promise of a full-time job in the future; coercion by the employer's

---

[5] *See* FAC at ¶¶ 92, 100, 109, 112; *see also Todaro v. T'ship of Union*, 40 F. Supp. 2d 226, 231 (D.N.J. 1999) (in holding plaintiff to be a volunteer as a matter of law, stating that plaintiff "should not be permitted to satisfy the definition of 'volunteer' simply by unreasonably insisting that he ha[d] a subjective expectation of receiving wages….[T]here must be a point at which a person's subjective expectations and motivations are so unfounded and conjectural as to be insufficient to support a finding of reasonableness, and at this point the Court must rely on common-sense standards and objective indicia.")

superior bargaining power; or relying on the employer for wages, or for other in-kind benefits such as food, clothing or lodging.  The cases in Chen's Opposition contain one or more of these factors.[6]

For example, Chen relies on *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998), but that decision turns directly on factors not present here.  In *Archie*, in addition to examining the immediate advantage to defendants, the court found it "important" to determine "whether there was an expectation or contemplation of compensation."  *Id.* at 533.  Unlike here, the plaintiffs in *Archie* "participated in [defendants'] program because they thought it was a job" and "the defendants were well aware that [plaintiffs] were keenly interested in the compensation."  *Id.*  Furthermore, plaintiffs were required to work at least 700 hours, with some working indefinitely beyond that; plaintiffs were scheduled to work 40 hours per week; and, on at least one occasion, a plaintiff worked 81 hours in a week.  *Id.* at 511, 518, 519.  The facts of *Archie* plainly show how different the instant case is from a true employment relationship.

The instant case is distinguishable from *Archie* and the rest of the cases Chen cites to because, as alleged by Chen, he and the putative class/collective members volunteered for 14 hours over the course of three days or during the course of a three-hour baseball game, with no expectation of any further relationship with Defendants; no reliance on Defendants for wages, in-kind benefits or for a future paying job; and no allegations of coercion by MLB.  Chen submitted

---

[6] *See Alamo*, 471 U.S. at 301 (finding plaintiffs were employees and distinguishing *Walling*, because in *Walling* the "training course lasted a little over a week, [while] in this case the associates were entirely dependent upon the Foundation for long periods, in some cases several years."); *Wirtz v. Wardlaw*, 339 F.2d 785, 786 (4th Cir. 1964) (plaintiffs worked 43 regularly scheduled hours per week over the course of a summer); *Glatt v. Fox Searchlight Pictures, Inc.*, 294 F.R.D. 530 (S.D.N.Y. 2013) (plaintiffs worked between 16 and 24 hours per week, or 40 hours over the course of the summer and received career related benefits from their internship, such as "resume listings [and] job references"); *Okoro*, 2012 U.S. Dist. LEXIS 56277, at *24 (plaintiff expected to be paid $2,000 per month and worked for defendant for a "substantial length of time"); *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *21 (evidence that defendant "used its superior bargaining power to require a certain amount of 'volunteering' before an individual would be considered for a paid position."); *Bailey v. Pilots Ass'n for the Bay & River Del.*, 406 F. Supp. 1302, 1304 (E.D. Pa. 1976) (plaintiff worked weeklong 6 hour shifts every other week for three years).

documentation stating that Green Team volunteers participated because of their devotion to "baseball and helping the environment" and that MLB solicited FanFest volunteers who were "baseball fans" and who wanted to "build local excitement and involvement for the All-Star Summer experience." (Bloom Decl. Exs. B, D.)[7] Chen specifically alleges that class members "were not provided rehabilitation, food, clothing, or shelter." (FAC at ¶ 105.) These facts are "objective indicia" that show, as a matter of law, that Chen and the putative class/collective members are not employees under the Act. *See Todaro*, 40 F. Supp. 2d at 231 (an analysis of whether plaintiffs were volunteers is based on "common-sense standards and objective indicia"); *see also Okoro*, 2012 U.S. Dist. LEXIS 56277, at *24 (courts examine "objective indicia" and apply "common sense" to determine if plaintiff is an employee).

### III. The Seasonal Amusement or Recreational Establishment Exemption Applies

It is clear that the Complaint should be dismissed because it demonstrates that Chen was not promised, and did not expect, cash or in-kind compensation for his time spent with MLB and thus was not a "volunteer" as a matter of law. Even if that were not the case, the FLSA claims still must be dismissed because seasonal amusement or recreational establishments that do not operate for more than seven months in a calendar year are exempt from the minimum wage requirements.[8] *See* 29 U.S.C. § 213(a)(3). The elements of Defendants' affirmative defense are presented on the face of the Complaint – through Chen's allegations in the Complaint, the documents referenced therein, and facts of which the court can take judicial notice.

---

[7]   In fact, Chen does not *once* mention the Green Team volunteers in his Opposition, apparently recognizing that the documentation on which he relied in the Complaint completely contradicts his conclusory allegations.

[8]   Chen does not dispute that the All-Star Week and World Series stadiums hosting games of each World Series constitute those that are for amusement or recreation as defined by the FLSA.

7

To evaluate the applicability of the exemption, the court must first define the scope of the "establishment." Chen rejects Defendants' proffered definitions of "establishment" – that, under applicable law, the "establishment" should be defined as the All-Star Week events, either individually or collectively, and the World Series stadium hosting games of each World Series. However, Chen fails to offer a viable alternative definition.

Chen suggests that MLB, as a whole, is not an "establishment" because "[a]n establishment is a 'distinct physical place of business.'" (Pl. Opp. at 20 *quoting* 29 C.F.R §779.23.) Defendants agree that MLB, as a whole, is not an "establishment" under the law. Chen also argues, albeit inconsistently to his prior position, that each individual event or stadium cannot be its own establishment "entitled to the exemption [because the events] are not separate entities that employed Class Members – they are part of an integrated operation coordinated and controlled by MLB from its corporate offices."[9] (Pl. Opp. at 19.) However, Chen's insistence that each event that engaged volunteers must be its own employing entity in order to be its own establishment misses the mark. As Chen acknowledges, the regulations clearly state that an "establishment" refers to "a distinct physical place of business rather than to an entire business or enterprise" and that a business may consist of one establishment or multiple establishments. 29 C.F.R. § 779.23; 779.303. The regulations thus contemplate that one business – or employing entity – may operate many establishments that employ employees, some of which may be exempt and some which may not be. *See* 29 C.F.R. §§ 779.302-311. That Chen alleges that MLB employed all of the putative class/collective members has nothing to do with defining the

---

[9] Chen also argues that the All-Star Week events combined cannot be one establishment. (Pl. Opp. at 19.) The exemption analysis is the same whether the events each constitute their own establishment or one combined establishment. What is significant is that the events (either combined or individually) and the World Series stadiums constitute establishments separate from MLB as a whole.

establishments that MLB operates and determining whether those establishments operated by MLB are exempt.[10]

Furthermore, cases routinely find that one employing entity can operate multiple exempt establishments.  In *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1190 (10th Cir. 1999), the court held that the employer, Keystone Resorts Management, Inc., operated two separate ski resorts as separate exempt establishments.  The court rejected plaintiffs' focus on the fact that the two ski resorts "marketed their operations as one enterprise, exchanged some employees, and lacked separate accounting and management," noting that "[i]n focusing on administrative and economic integration, Plaintiffs misconstrue the meaning of 'establishment' under the FLSA….[T]he word 'establishment [means] a distinct physical place of business rather than an integrated business enterprise."  *Id.* at 1192.

In *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 290 (10th Cir. 1973), the court held that the hotels, inns, lodges, cabins and restaurants operated by Yellowstone Park Company at Yellowstone National Park were all separate establishments for purposes of the exemption.  The court ruled this way despite the fact that central management made all policy decisions for the various establishments.  *Id.* at 288.  Thus, the employees of Yellowstone Park Company at any of the various establishments were exempt, while "central employees who perform[ed] functions which serve[d] several, or all, of the company's establishments" were not exempt

---

10    Chen also argues that ruling on this issue at the Motion to Dismiss stage is premature because Defendants "will have to specifically identify the entity that employed Plaintiff and the Class Members in order to adequately plead the defense" so that Chen can "take discovery to determine what entity is the proper statutory employer." (Pl. Opp. at 21.)  Whether Chen and the putative class/collective members were employed by The Office of the Commissioner of Baseball d/b/a Major League Baseball or MLB Properties, Inc., is irrelevant to determining the applicability of the exemption.  Whether the exemption applies will depend on the scope of the "establishment" and the "character of the establishment," not the corporate structure of the employing entity.  *See* 29 C.F.R. §§ 779. 302; 29 C.F.R. § 779. 303.  Furthermore, Chen's argument to delay this decision until after discovery because he should have the "opportunity to prove [the] allegation that MLB was [the] employer" is nonsensical. (Pl. Opp. at 19.)  Defendants only need to assert the affirmative defense of the exemption if Defendants were, in fact, the employer, as Chen alleges.  The entire exemption analysis is based on taking this allegation as true.  Chen's claims fail either way.

because they were "not employed by any specific establishment, but rather by the entire enterprise." *Id.* at 290.

Similarly, in this case, the exemption applies to those who volunteered at the various All-Star Week events and the Green Team volunteers who volunteered at each World Series stadium hosting games of each World Series.  It is of no consequence that Chen pleads that the various establishments "are part of an integrated operation coordinated and controlled by MLB from its corporate offices." (Pl. Opp. at 19 *citing* FAC at ¶ 145.)  What is significant is that Chen pleads that MLB recruited volunteers for FanFest at the Javits Center and for "numerous other events at various locations throughout New York City and other All-Star host cities."  (FAC at ¶¶ 2-3.)  Chen also pleads that Green Team volunteers participated at World Series' stadiums located around the country.  (*Id.* at ¶ 144; Bloom Decl. Ex. D.)  Thus, each of those locations is a different establishment.

Since MLB, as a whole, is not the establishment, Chen's allegations regarding the extent of MLB's operation are irrelevant.  It does not matter that "MLB's business and operations are not seasonal" or that "MLB's revenue-producing operations are year-round." (FAC at ¶¶ 149-50.)  What are determinative are Chen's allegations in the Complaint, the documents attached to the Complaint, and facts over which the court can take judicial notice regarding the World Series during the relevant time period.  Chen's allegations, the documents attached to the Complaint showing that the All-Star Week events and FanFest operated for only five days and the judicially noticed fact that during the relevant time period the World Series operated for no more than 10 days clearly demonstrate, as a matter of law, that the All-Star Week events, including FanFest, and the World Series stadiums hosting games of each World Series are exempt from the FLSA's minimum wage requirements.. (*Id.* at ¶¶ 18, 62; Bloom Decl. Exs. A-C, E).