UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

JOHN CHEN,

                    Plaintiff,              13 Civ. 5494 (JGK)

        - against -                        OPINION AND ORDER

MAJOR LEAGUE BASEBALL, ET AL.,

                    Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

        Plaintiff John Chen brought suit against Defendants Major
League Baseball Properties, Inc. and the Office of the
Commissioner of Baseball (collectively, "defendants" or "MLB")
under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et
seq., and the New York Labor Law ("NYLL"), §§ 190 et seq. & 650
et seq., claiming violations of his right to receive a minimum
wage.  The plaintiff alleges that he worked for MLB as an unpaid
volunteer during the week of the July 2013 Baseball All Star
Game at an installation for fans at the Javits Center in New
York City, and that he is entitled to minimum wage compensation
for this work.  The plaintiff has moved this Court to grant
conditional certification of, and provide court-authorized
notice to, a proposed class of similarly situated plaintiffs
pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Also
before the Court is the defendants' motion to dismiss the

1

plaintiff's First Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  For the reasons explained below, the defendants' motion to dismiss is granted and the plaintiff's motion for collective certification and court-authorized notice is denied as moot.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

2

(2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012).

## II.

The following allegations are accepted as true for the purposes of these motions.  The July 2013 Baseball All Star Game took place at Citi Field in New York City.  (See Am. Compl. ¶ 25.)  In connection with the All Star Game, MLB put on a series of "All Star Week festivities" throughout New York City, including a race, a concert, a fantasy camp, a parade, and an event called "FanFest."  (Am. Compl. ¶¶ 1-3.)  FanFest took place at the Javits Center in New York City during the week of

the 2013 All Star Game, from July 12 to July 16, 2013.  (Am.
Compl. ¶¶ 18, 141; Decl. of Elise M. Bloom ("Bloom Decl."), Ex.
C[1] at 1.)  The event was described by MLB as "the largest
interactive baseball theme park in the world."  (Am. Compl.
¶ 2.)  Activities at FanFest included baseball video games, a
simulated baseball dugout, baseball clinics, batting cages,
music events, and autograph opportunities.  (Am. Compl. ¶ 123.)

All of the 2013 All Star Week festivities in New York City
were staffed generally with volunteers.  (Am. Compl. ¶¶ 1-4.)
These individuals were not paid any cash wages for their work,
but instead received "in-kind benefits," such as t-shirts, caps,
drawstring backpacks, water bottles, baseballs, lanyards, free
admission to FanFest for each volunteer and a guest, and a
chance to win a ticket to the All Star Game.  (Am. Compl. ¶¶ 6,
31, 158.)  Admission to FanFest in 2013 was worth approximately
$35, and the other in-kind compensation received by the
volunteers was worth at least $40.  (Am. Compl. ¶¶ 103-04.)  In

---

[1] Counsel for the defendants has affirmed in a sworn declaration
that this exhibit depicts the webpage available at
http://mlb.mlb.com/mlb/downloads/y2013/fanfest_map.pdf, (see
Bloom Decl. ¶ 4), which the plaintiff has explicitly relied upon
in his Complaint, (see Am. Compl. ¶ 27), and which may therefore
properly be taken into consideration in deciding this motion to
dismiss.  See Chambers, 282 F.3d at 152-53.

2013, approximately two thousand volunteers staffed the various All Star Week festivities in New York City.  (Am. Compl. ¶ 4.)

The plaintiff is an adult residing in New York who worked three shifts, totaling approximately seventeen hours, at FanFest during the 2013 All Star Week.  (Am. Compl. ¶¶ 49-50, 157, 162.) Prior to his shifts, the plaintiff attended a mandatory one-hour information session at Citi Field on June 1, 2013 and a mandatory two-hour orientation session at the Javits Center on July 10, 2013.  (Am. Compl. ¶¶ 159-160.)  During his first shift, on July 12, 2013, the plaintiff stamped the wrists of FanFest attendees after they had signed liability waivers.  (Am. Compl. ¶¶ 163, 165.)  At his second shift on the following day, the plaintiff handed out bags of paraphernalia to attendees at the entrance, placed paper flyers in bags, and redirected attendees who attempted to exit the event through the entrance. (Am. Compl. ¶¶ 166-69.)  During his third shift, on July 16, 2013, the plaintiff alphabetized liability waivers and worked at a "fielding station" instructing attendees to deposit the balls they fielded into buckets before moving to the next station. (Am. Compl. ¶¶ 170-73.)  The plaintiff received no cash wages for this work, but did receive in-kind benefits such as a t-shirt, a cap, a drawstring backpack, a water bottle, and a baseball.  (Am. Compl. ¶ 158.)

5

On August 7, 2013, the plaintiff filed this lawsuit.  On August 15, 2013, the plaintiff filed the present motion for collective certification and court-authorized notice, requesting, among other things, that a proposed collective consisting of himself and similarly situated individuals who worked as volunteers at various All Star Week events since August 7, 2010 be conditionally certified, and that putative plaintiffs receive court-authorized notice of their right to join the lawsuit.  After the defendants file a motion to dismiss, the plaintiff filed the First Amended Class Action Complaint on November 25, 2013, and the initial motion to dismiss was denied without prejudice.

In the First Amended Class Action Complaint, the plaintiff alleges that the defendants failed to pay him the minimum wages required by the FLSA and the NYLL for his work at FanFest.  (See Am. Compl. ¶¶ 156-85, 188-96.)  The plaintiff also alleges that the defendants failed to comply with the recordkeeping requirements of the FLSA and the NYLL.  (See Am. Compl. ¶¶ 186-87, 197-203.)  The defendants have now moved to dismiss the First Amended Class Action Complaint (hereinafter "Complaint").

6

III.

The defendants proffer two bases upon which the plaintiff's claims should be dismissed.  First, the defendants argue that the plaintiff is not an "employee" as that term is defined in the FLSA because he worked for the defendants only as a volunteer, and he is therefore not entitled to minimum wages.  See 29 U.S.C. §§ 203(e)(1) (defining "employee") & 206(a) (requiring that "employees" receive a minimum wage).  Second, the defendants argue that even if the plaintiff is an "employee," he is still not entitled to minimum wages because he worked for an "amusement or recreational establishment" that is exempt from the FLSA's minimum wage requirement under Section 13(a)(3) of the FLSA, 29 U.S.C. § 213(a)(3).  As explained below, the plaintiff's claims under the FLSA must be dismissed because the "amusement or recreational establishment" exemption in Section 13(a)(3) applies in this case.  Accordingly, there is no occasion to reach the question of whether the plaintiff is properly classified as an "employee" under the FLSA.[2]

---

[2] Both parties agree that dismissal of the FLSA minimum wage claim would require the Court to dismiss the FLSA recordkeeping claim.  (See Oral Arg. Tr. at 3-4.)  They also agree that the applicability of the Section 13(a)(3) exemption has no effect on the NYLL claims.  Accordingly, the NYLL claims are addressed in Subsection III.C, below.

7

A.

Congress enacted the FLSA in order to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Id. § 202(a). To that end, Section 6 of the FLSA states that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, [certain minimum wages]." Id. § 206(a). The Second Circuit Court of Appeals has emphasized that the FLSA "is a remedial [statute], written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy." Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).

Nevertheless, Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement. See 29 U.S.C. § 213. These exemptions are affirmative defenses, for which employers have the burden of proof. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002). The exemptions must be "narrowly construed against the employers seeking to assert them and their application limited to those

8

establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).

At the motion-to-dismiss stage, an FLSA claim may be dismissed on the basis of an exemption only if the exemption "appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998); see also Hill v. Del. N. Cos. Sportservice, Inc., No. 11 Civ. 753S, 2012 WL 2405233, at *2 (W.D.N.Y. June 25, 2012) (noting that the Section 13 exemptions are affirmative defenses that permit dismissal under Rule 12(b)(6) only where they "appear[] on the face of the complaint"); Beaulieu v. Vermont, No. 10 Civ. 032, 2010 WL 3632460, at *6 (D. Vt. Aug. 5, 2010) ("Where the Complaint contains allegations that unequivocally qualify an employee as exempt from the overtime provisions, a 12(b)(6) motion will be granted.").

The defendants argue that they cannot be liable to the plaintiff for minimum wages because it is clear from the face of the Complaint that the "amusement or recreational establishment" exemption in Section 13(a) applies in this case. Section 13(a) provides in relevant part that the minimum wage provisions of "section 206 . . . shall not apply with respect to . . . any employee employed by an establishment which is an amusement or

recreational establishment . . . if . . . it does not operate for more than seven months in any calendar year . . . ." 29 U.S.C. § 213(a)(3). According to the defendants, this exemption applies because the plaintiff was employed by FanFest, which the pleadings show to have been an "amusement or recreational establishment" that operated for fewer than eight months during 2013. The plaintiff counters that the "amusement or recreational establishment" exemption does not apply in this case because he was employed not by FanFest, but by MLB, which operated for more than eight months in 2013. The plaintiff also argues that it would be inappropriate to dismiss his FLSA claims under Rule 12(b)(6) on the basis of a Section 13 exemption because he is not required to plead the absence of an affirmative defense, and he has not yet had the opportunity for discovery.

1.

There is no dispute between the parties that baseball constitutes "amusement or recreation[]" for purposes of the exemption. Rather, the disagreement between the parties as to the applicability of the Section 13(a)(3) exemption centers upon the meaning of the term "establishment" in the phrase "amusement or recreational establishment." 29 U.S.C. § 213(a)(3). The

10

FLSA does not explicitly define this term, and courts have generally concluded that the language of the Section 13(a)(3) exemption is ambiguous.  See, e.g., Chao v. Double JJ Resort Ranch, 375 F.3d 393, 396-97 (6th Cir. 2004); Ivanov v. Sunset Pools Mgmt. Inc., 567 F. Supp. 2d 189, 192 (D.D.C. 2008).

The legislative history is sparse.  Courts have noted that a House Committee Report on a proposed 1965 amendment to the FLSA stated that the "amusement or recreational establishment" exemption was meant to cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities."[3] Brock v. Louvers and Dampers, Inc., 817 F.2d 1255, 1258 (6th Cir. 1987) (quoting H.R. Rep. No. 89-871 (1965)).  During floor debates on the amendment that eventually became the Section 13(a)(3) exemption, Senator Yarborough stated that he believed the exemption was meant to

_____

[3] The proposed amendment to which the statement in this report pertains was not enacted in 1965, but the language is nevertheless relevant because Congress enacted the amendment the following year.  See Brennan v. Texas City Dike & Marina, Inc., 492 F.2d 1115, 1118 n.8 (5th Cir. 1974).  Indeed, during floor debates on the 1966 amendment, Representative Dent was asked whether the amendment under consideration "retain[ed] the existing exemption for amusement or recreational establishments, such as amusement parks, sports events, parimutuel racing, sport boating or fishing and similar activities," and he answered in the affirmative.  112 Cong. Rec. 11,293 (1966).

cover only amusement parks.  112 Cong. Rec. 20,594, 20,791 (1966); see also Texas City Dike & Marina, 492 F.2d at 1118. The purpose of the exemption is not immediately clear from its text or its legislative history, but the exemption is generally thought to have been "provided in the [FLSA] so as to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the [FLSA]."  Brennan v. Yellowstone Park Lines, Inc., 478 F.2d 285, 288 (10th Cir. 1973); see also Louvers, 817 F.2d at 1259 ("The logical purpose of the provision is to exempt . . . amusement and recreational enterprises . . . which by their nature, have very sharp peak and slack seasons. . . . Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards.").

Department of Labor ("DOL") regulations define "establishment" for the purposes of several provisions in the FLSA, including Section 13(a)(3), as "a 'distinct physical place of business,'" as opposed to "'an entire business or enterprise' which may include several separate places of business."  29 C.F.R. § 779.23; see also id. § 779.203 ("The term establishment means a distinct physical place of business rather than an entire business or enterprise.").  Elsewhere the regulations

12

provide that "[t]ypical examples of [amusement or recreational establishments] are the concessionaires at amusement parks and beaches." Id. § 779.385.

The Complaint alleges that FanFest was "a lucrative, for-profit commercial operation that MLB promoted as the largest interactive baseball theme park in the world, and described as baseball heaven on earth." (Am. Compl. ¶ 2 (internal quotation marks omitted).) Moreover, FanFest is alleged to have taken place at the Javits Center in New York City from July 12 to July 16, 2013. (Am. Compl. ¶¶ 18, 141; see also Bloom Decl., Ex. C at 1.) Taken in light of the statutory language, the legislative history, and the relevant administrative interpretations, these allegations establish that FanFest was an "amusement or recreational establishment" for purposes of the Section 13(a)(3) exemption.

First, it is not disputed that FanFest was a "sports event[]," which is among the core categories enumerated in the legislative history and widely recognized as covered by the exemption. See Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 595 (11th Cir. 1995) (adopting the opinion of the District Court); Louvers, 817 F.2d at 1258; Texas City Dike & Marina, 492 F.2d at 1118; Ivanov, 567 F. Supp. 2d at 192; Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 469 F. Supp. 2d 1086, 1089

(M.D. Fla. 2006); Bridewell v. Cincinnati Reds, No. C-1-93-203, 1994 WL 854075, at *3 (S.D. Ohio Feb. 14, 1994) (opinion of the Magistrate Judge), adopted with modifications by Bridewell v. Cincinnati Reds, No. C-1-93-203, 1994 WL 866091, at *1 (S.D. Ohio Mar. 24, 1994), rev'd on other grounds, 68 F.3d 136 (6th Cir. 1995).  Indeed, FanFest is alleged not only to have been a sports event, but also a "theme park," (Am. Compl. ¶ 2), which is an independent reason to conclude that it falls squarely within the coverage of the exemption.  See, e.g., Louvers, 817 F.2d at 1258 (listing "amusement parks" as the first example of an "amusement or recreational establishment" in the legislative history); 29 C.F.R. § 779.385 (listing "amusement parks" as an example of "amusement or recreational establishments" under the statute).  Moreover, FanFest is alleged to have taken place at a discrete location (the Javits Center) over a discrete period in time (All Star Week).  (Am. Compl. ¶¶ 18, 62, 141; Bloom Decl., Ex. C at 1.)  This makes it a "distinct physical place of business," which places it squarely within the administrative definition of an "establishment" for Section 13(a)(3) purposes. See 29 C.F.R. §§ 779.23, 779.203, 779.385.

The plaintiff alleges that FanFest lasted for fewer than five days.  (Am. Compl. ¶¶ 18, 62.)  Thus, by the plaintiff's own allegations, he was employed at an "amusement or

14

recreational establishment" which "d[id] not operate for more than seven months in any calendar year."  29 U.S.C. § 213(a)(3). The Complaint therefore contains facts establishing the defendants' affirmative defense.

2.

The plaintiff argues that the foregoing analysis proceeds at the wrong level of generality.  He asserts that he was employed not by FanFest but by MLB, which is not an amusement or recreational establishment that operates for fewer than eight months in a calendar year.  Thus, according to the plaintiff, the Section 13(a)(3) exemption does not apply.

This argument is contradicted by the clear import of the relevant DOL regulations, the validity of which has not been challenged, and which, in any event, are persuasive and therefore entitled to deference.[4]  The regulations draw a

_____

[4] The regulations relevant to the "amusement or recreational establishment" exemption were not promulgated pursuant to an express delegation of rulemaking authority by congress, see 29 U.S.C. § 13(a)(3); cf. English v. Ecolab, Inc., No. 06 Civ. 5672, 2008 WL 878456, at *6 (S.D.N.Y. Mar. 31, 2008); notice-and-comment procedures were not used, see 35 Fed. Reg. 5856, 5856 (Apr. 9, 1970); and the agency in promulgating them described them as "interpretive rules."  Id.  Accordingly, under the Supreme Court's guidelines in Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 172-74 (2007), they are most properly considered "interpretive rules," and therefore subject to

repeated distinction between "establishments," on the one hand, and "enterprises," on the other.  An "establishment" is defined as a "distinct physical place of business."  29 C.F.R. § 779.23. By contrast, an "enterprise . . . may include several separate places of business."[5]  Id. (internal quotation marks omitted). "[An] enterprise may consist of a single establishment which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers."  Id. § 779.203 (internal citations omitted).  Thus, in the case of a "multiunit" business, "one company conducts its

_____

Skidmore deference—meaning that the weight accorded to them depends upon "the thoroughness evident in [their] consideration, the validity of [their] reasoning, [their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade . . . ."  Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).  As demonstrated in the analysis that follows, the regulations relevant to the "amusement or recreational establishment" exemption are well-reasoned, internally consistent, and generally consistent with judicial interpretations of the exemption; they are therefore particularly instructive in this case.

[5] This interpretation draws support from the legislative history of a related exemption in Section 13 for a "retail or service establishment" (since repealed).  During Senate floor debates on the "retail or service establishment" exemption, Senator George, who had sponsored the amendment, stated, "I wish to say that the word 'establishment' has been very well defined in the Wage and Hour Act.  It means now a *single physically separate place of business . . . and it does not mean an entire business enterprise*."  Mitchell v. Birkett, 286 F.2d 474, 477 (8th Cir. 1961) (emphasis added) (quoting 95 Cong. Rec. 12,579 (1949)).

single business in a number of establishments."  Id. § 779.204.
The regulations provide an example:

> [A] manufacturer may operate a plant for production of its
> goods, a separate warehouse for storage and distribution,
> and several stores from which its products are sold.  Each
> such physically separate place of business is a separate
> establishment.  In the case of chain store systems, branch
> stores, groups of independent stores organized to carry on
> business in a manner similar to chain store systems, and
> retail outlets operated by manufacturing or distributing
> concerns, each separate place of business ordinarily is a
> separate establishment.

Id. § 779.303.

Here, the plaintiff alleges that MLB is "a single
integrated enterprise" with its corporate offices at 245 Park
Avenue in Manhattan, and that FanFest was a roughly week-long
event that took place at the Javits Center.  (Am. Compl. ¶¶ 18,
62, 74, 141; Bloom Decl., Ex. C at 1.)  Taken as true, these
allegations indicate that FanFest was the establishment that
employed the plaintiff for the purposes of Section 13(a)(3).  It
is of no consequence that MLB "coordinated and controlled" the
events of All Star Week from its corporate office, (Am. Compl.
¶ 145), because physical distinctness, rather than operation or
control, is what distinguishes an "enterprise" from an
"establishment" to which it may belong.  See 29 C.F.R.
§ 779.203; see also Chessin v. Keystone Resort Mgmt., Inc., 184
F.3d 1188, 1192 (10th Cir. 1999) ("In focusing on administrative
and economic integration, Plaintiffs misconstrue the meaning of

'establishment' under the FLSA. . . .  Congress used the word 'establishment' to mean a distinct physical place of business rather than an integrated business enterprise." (citations and internal quotation marks omitted)); <u>Yellowstone Park Lines</u>, 478 F.2d at 289 ("'[E]stablishment' . . . mean[s] . . . a single physically separate place of business.").[6]

It is also of no consequence that the plaintiff was employed by MLB rather than by FanFest; for the purposes of Section 13(a)(3), an individual is employed by the establishment at which he works, regardless of any enterprise that may operate or control the establishment.  <u>See</u> 29 U.S.C. § 213(a)(3) (exempting "any employee *employed by an establishment* which is an amusement or recreational establishment" (emphasis added)); 29 C.F.R. §§ 779.23, 779.203, 779.303 (distinguishing

---

[6] Courts have reached the same conclusion in construing the word "establishment" in the former "retail or service establishment" exemption previously contained in Section 13(a)(2) of the FLSA. <u>See</u> <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490, 496-97 (1945) ("Congress used the word 'establishment' [in the 'retail or service establishment exemption'] as it is normally used in business and in government—as meaning a distinct physical place of business. . . .  Moreover, it is quite apparent from the sparse legislative history of [the exemption] that Congress did not intend to exempt as a 'retail establishment' the . . . central office of an interstate chain store system."); <u>Birkett</u>, 286 F.2d at 478 ("Common ownership and close functional and economic relationship between physically separated units of a business are not sufficient to make such combined units a single [retail or service] establishment . . . .").

establishments from the enterprises that control them); cf.
Ecolab, 2008 WL 878456, at *9 ("Congress chose to use the
individual establishment, rather than the entire enterprise, as
the business unit for evaluating the applicability of the
exemption.  An 'establishment' is a distinct, physical place of
business, while an 'enterprise' is the largest unit of corporate
organization . . . .  Thus, the relevant inquiry is . . .
whether . . . Plaintiffs were employed by a qualifying
establishment at the local or regional level." (citing 29 C.F.R.
§§ 779.23, 779.303)).

The plaintiff relies on two cases that have found sports
franchises to constitute "establishments" for Section 13(a)(3)
purposes.  In Jeffery v. Sarasota White Sox, Inc., the Eleventh
Circuit Court of Appeals concluded that the Sarasota White Sox,
a minor league baseball team, was "an amusement or recreational
establishment pursuant to 29 U.S.C. § 213."  64 F.3d at 595.
The court found that the Sarasota White Sox qualified for the
exemption because of the seasonal use of the baseball complex in
Sarasota, Florida for minor league baseball games and for spring
training for the Chicago White Sox, the parent of the Sarasota
White Sox.  Id. at 593, 595.  The court did not factor into the
availability of the exemption the activities of the Chicago
White Sox during the other months of the year at other physical

locations.  In Bridewell v. Cincinnati Reds, the District Court
adopted the Magistrate Judge's conclusion that the Cincinnati
Reds, "as owner of a major league baseball franchise, [was] an
amusement or recreational establishment" for Section 13(a)(3)
purposes.  1994 WL 854075, at *4, adopted with modifications by
Bridewell v. Cincinnati Reds, 1994 WL 866091, at *1, rev'd on
other grounds, 68 F.3d 136.  On appeal, the Sixth Circuit Court
of Appeals assumed without deciding that the Cincinnati Reds was
an "amusement or recreational establishment," and concluded that
the Reds did not qualify for the Section 13(a)(3) exemption
because the team "operate[d] for more than seven months per
year."  68 F.3d at 138.  It was clear from the stipulated facts
that the activities of the Reds were conducted year-round at
Riverfront Stadium, where Reds employees performed cleaning and
maintenance work during the baseball season and the off-season.
Id. at 137-39.  The plaintiff argues that MLB is analogous to
the sports franchises in Jeffery and Bridewell,[7] both of which

---

[7] The plaintiff also relies on two District Court cases.  In
Liger v. New Orleans Hornets NBA Ltd. P'Ship, the court followed
the reasoning of Bridewell, rather than Jeffery, and concluded
that the New Orleans Hornets basketball franchise was an
"amusement or recreational establishment," but found that the
team operated "for at least eight months each year" and
therefore did not qualify for the exemption.  565 F. Supp. 2d
680, 683-84 (E.D. La. 2008).  In Adams v. Detroit Tigers, Inc.,
the court cited Jeffery for the proposition that "[m]ajor-league
baseball teams"—in this case, the Detroit Tigers—"may properly

were deemed "establishments" for Section 13(a)(3) purposes, and that because MLB is undisputedly a year-round operation, the exemption should not apply.

The plaintiff's reliance on these cases is misplaced.  In Jeffery and Bridewell, the plaintiffs were employed in physical locations where the defendants conducted the sporting events that satisfied the definition of an "amusement or recreational establishment."  Jeffery was a suit by a groundskeeper at the Sarasota baseball complex.  64 F.3d at 593.  Bridewell was a suit by maintenance employees at Cincinnati's Riverfront Stadium.  68 F.3d at 137.  Neither case involved a suit by employees who worked at an event or amusement area that was physically distinct from the location of the baseball franchise's central ballpark.  Here, by contrast, FanFest is alleged to have been a roughly week-long "sports event" that took place at the Javits Center—a location that was physically

---

be considered 'recreational' establishments"—and went on to address the separate issue of whether the plaintiff batboys could properly be considered a separate establishment within the Tigers.  961 F. Supp. 176, 179 (E.D. Mich. 1997).  There was no issue in either Liger or Adams about the proper treatment of a seasonal sporting event held at a separate physical place of business.

separate from the enterprise to which FanFest belonged—namely, MLB.[8]

Indeed, as one court recently noted, "[a]rguably, the only reason for defining 'establishment' as a distinct physical place of business [in 29 C.F.R. § 779.23] was so that it could be distinguished from an integrated business enterprise." Wright v. Adventures Rolling Cross Country, Inc., No. 12 Civ. 982, 2013 WL 1758815, at *5 (N.D. Cal. Apr. 24, 2013).  This conclusion flows from the repeated comparison between "enterprises" and "establishments" throughout the relevant regulations.  See 29 C.F.R. §§ 779.23, 779.203, 779.303.  In a case involving a multiunit enterprise, the physical location of a given establishment distinguishes it from the parent enterprise.[9]  See

---

[8] Notably, the relevant duration of operations in Jeffery was the time that the Sarasota White Sox and the parent Chicago White Sox operated at the baseball complex in Florida—not the duration of the Chicago White Sox's operations as a whole.  Similarly, what matters in this case is the duration of MLB's operations at the Javits Center—a physically distinct location where the plaintiff was employed—not MLB's operations as a whole.

[9] At oral argument, the plaintiff argued for the first time that the distinction throughout the regulations between "establishments" as "distinct physical place[s] of business" and the "enterprises" to which they belong should apply exclusively to the "retail or service establishment" exemption, and not to the "amusement or recreational establishment" exemption.  (See Oral Arg. Tr. at 29-30.)  This position finds no support in the regulations themselves, see 29 C.F.R. § 779.23 ("As used in the [FLSA], term establishment . . . refers to a 'distinct physical

29 C.F.R. §§ 779.23, 779.303; see also Chessin, 184 F.3d at 1192-93 (concluding that two ski areas operated by a single enterprise constituted distinct establishments by virtue of their physical separation); Yellowstone Park Lines, 478 F.2d at 289-90 (concluding that due to physical separation, various restaurants, hotels, and lodges in Yellowstone National Park were "separate establishment[s]").  This is just such a case: taking the facts alleged in the Complaint as true, they establish that FanFest was a sports event that was physically separate from the enterprise through which it was operated and controlled.  (See Am. Compl. ¶¶ 74, 141; see also Bloom Decl.,

---

place of business' rather than to 'an entire business or enterprise' which may include several separate places of business. . . .  [T]his is the meaning of the term as used in section[] . . . 13(a) . . . of the Act." (emphasis added)), and is contradicted by cases that focus on physical separation to define the boundaries of an establishment under the "amusement or recreational establishment" exemption.  See Chessin, 184 F.3d at 1192; Yellowstone Park Lines, 478 F.2d at 289.  The plaintiff also argued that the definition of an establishment as a physical place of business should apply only for the purposes of determining whether the establishment is for "amusement or recreational" purposes, and not for the purposes of determining whether it operated for more than seven months in the calendar year.  (See Oral Arg. Tr. at 26-28.)  This argument is similarly without support in the text of the statute, the regulations, or the relevant case law, all of which indicate that an "establishment" for Section 13(a)(3) purposes is something that must be both a) "amusement or recreational," and b) in operation for fewer than eight months in a calendar year.

Ex. C at 1.)    In other words, the "establishment" at issue here—as distinguished from the "enterprise" that operated and controlled it—is defined by its discrete physical location.

Given the legislative history of the Section 13(a)(3) exemption, the DOL's consistent interpretations of the statute, and the plaintiff's own allegations, FanFest is an "amusement or recreational establishment" that operated for fewer than eight months in 2013.[10]

### B.

For the foregoing reasons, the Complaint shows that the plaintiff worked for an "amusement or recreational establishment" that operated for fewer than eight months, and, therefore, that the Section 13(a)(3) exemption applies.  This defense has been established by the plaintiff's own pleadings, which show that FanFest was an "establishment" as that term is defined under the statute and the applicable regulations, and that it operated for only a handful of days.  It is therefore

---

[10] For this reason, none of the allegations in the Complaint as to the extent of MLB's year-round operations are of any consequence.  (See, e.g., Am. Compl. ¶¶ 1 ("MLB staffed its baseball operations throughout the year . . . ."), 147 ("MLB begins recruiting volunteers for the next summer's All Star Week events in October of the prior year."), 153 ("MLB's paid workforce consists of at least 435 employees, all of whom work year-round.").)

appropriate to grant the defendants' motion to dismiss the
plaintiff's FLSA claims even at this early stage in the
proceedings.[11]  Moreover, there is no occasion to reach the
question of whether the plaintiff is an "employee" as that term
is defined in Section 6 of the FLSA.


                                C.

     In addition to his FLSA claims, the plaintiff has claimed
that the defendants violated the NYLL by failing to pay him the
appropriate minimum wage, failing to keep appropriate records

---

[11] In addition to a minimum wage claim under the FLSA, the
plaintiff has brought a claim under FLSA § 11(c), 29 U.S.C.
§ 211(c), alleging MLB's failure to maintain records relating to
his employment during All Star Week.  Section 11(c) requires
employers to "make, keep, and preserve" certain employment
records, as prescribed by DOL regulations.  29 U.S.C. § 211(c).
In turn, DOL regulations require certain records to be kept even
with respect to exempt employees.  See 29 C.F.R. § 516.11
(requiring records to be maintained regarding exempt employees'
names, addresses, dates of birth, and sex).  However, the
general consensus is that the FLSA provides no private right of
action for recordkeeping violations.  See Elwell v. Univ. Hosps.
Home Care Servs., 276 F.3d 832, 843 (6th Cir. 2002); Lopez v.
Tri-State Drywall, Inc., 861 F. Supp. 2d 533, 536-37 (E.D. Pa.
2012) (collecting cases).  The parties did not provide their
positions as to whether the FLSA contains a private right of
action for recordkeeping violations, but, at oral argument, the
plaintiff conceded that if his FLSA minimum wage claim is
dismissed, he will no longer have a federal cause of action in
this lawsuit.  (See Oral Arg. Tr. at 3-4.)  Accordingly, the
FLSA recordkeeping claim must be dismissed.

related to his employment, and failing to provide him with the wage information that is required under New York law.  (See Am. Compl. ¶¶ 188-203.)

A district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  When all federal claims are eliminated before trial, the balance of factors to be considered—including judicial economy, convenience, fairness, and comity—typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims.  Kolari v. N.Y.— Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  Having dismissed all of the claims over which this Court has original jurisdiction,[12] declining to exercise supplemental jurisdiction over the state-law claims is appropriate at this early stage in the litigation.  See, e.g., Elgendy v. City of New York, No. 99 Civ. 5196, 2000 WL 1119080, at *6 (S.D.N.Y. Aug. 7, 2000) (declining to exercise supplemental jurisdiction over state- and

---

[12] This Court had subject-matter jurisdiction over the plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).  There is no allegation in, or inference from, the Complaint that diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) exists in this action.  Accordingly, this Court does not have original jurisdiction over the NYLL claim.

city-law claims after granting the defendant's motion to dismiss
the federal claims).  The Court therefore dismisses the
plaintiff's NYLL claims without prejudice.


IV.

The plaintiff has moved for collective certification and
court-authorized notice under FLSA Section 16(b).  Given that
the plaintiff's claims are dismissed, the plaintiff's motion
under Section 16(b) is denied as moot.


CONCLUSION

The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
foregoing reasons, the defendants' motion to dismiss the FLSA
claims is **granted**.  The plaintiff's New York state-law claims
are **dismissed without prejudice**.  The plaintiff's motion for
collective certification and court-authorized notice is **denied**
**as moot**.  The Clerk is directed to **close Docket Nos. 2 and 35**,
to **enter judgment**, and to **close this case.**

**SO ORDERED.**

**Dated:      New York, New York**
**            March 25, 2014           _____/s/_____**
                                          **John G. Koeltl**
                                **United States District Judge**

27